JENNIFER M. SCHERMERHORN, SBN 225070
EMAIL: jennifer@sfcos.com
**SCARONI FAMILY OF COMPANIES**
101 EAST MAIN STREET
HEBER, CALIFORNIA 92249
TELEPHONE: (760) 592-2258

CHAD T. WISHCHUK, SBN 214779
EMAIL: cwishchuk@ftblaw.com
MARLENE C. NOWLIN, SBN 156457
EMAIL: mnowlin@ftblaw.com
**FINCH, THORNTON & BAIRD, LLP**
ATTORNEYS AT LAW
4747 EXECUTIVE DRIVE – SUITE 700
SAN DIEGO, CALIFORNIA 92121-3107
TELEPHONE: (858) 737-3100
FACSIMILE: (858) 737-3101

Attorneys for Defendants Fresh Harvest, Inc., Farm Labor Association For Growers, Inc., and SMD Logistics, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANTONIO RUBIO-LEON, ANGEL DE JESUS ROCHA-RIVERA, DIEGO MARTINEZ-JIMENEZ, GERARDO LEDESMA-DELGADO and others similarly situated,

Plaintiff,

v.

FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., and SMD LOGISTICS, INC.,

Defendant.

CASE NO: 5:24-cv-03375-EKL

REPLY IN SUPPORT OF DEFENDANTS FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., AND SMD LOGISTICS, INC.'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY PAGA REPRESENTATIVE CLAIMS, AND FOR AN IMMEDIATE STAY PENDING THE RULING ON THIS MOTION

Assigned to:
District Judge:
Hon. Eumi K. Lee, Courtroom 7
Magistrate Judge:
Hon. Nathanael M. Cousins, Courtroom 5

Date: January 8, 2025
Time: 10:00 a.m.
Dept.: Courtroom 7

Complaint Filed: June 4, 2024
Trial Date: Not Set

/ / / / /

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... 3

I INTRODUCTION ..... 5

II PLAINTIFFS WERE NOT TRANSPORTATION WORKERS ENGAGED IN INTERSTATE COMMERCE THEREFORE THE ARBITRATION PROVISION IS GOVERNED BY THE FAA ..... 6

A. Plaintiffs' Own Exhibits Establish They were Not "Transportation Workers" ..... 6

B. Plaintiffs' Declarations Completely Fail to Establish They Were Transportation Workers Within the Meaning of Section 1 of the FAA ..... 6

C. The Purported Exemption Fails As Matter Of Law Because It Violates The H-2A Program's Implementing Regulations ..... 9

D. Plaintiffs Are Equitably Estopped From Claiming They Are Exempt "Transportation Workers" ..... 11

III PLAINTIFFS' ARBITRATION AGREEMENTS ARE ENFORCEABLE UNDER CALIFORNIA LAW ..... 12

IV THE CLASS ACTION WAIVER IS ENFORCEABLE PURSUANT TO U.S. SUPREME COURT AND CALIFORNIA PRECEDENT ..... 13

IV CONCLUSION ..... 15



FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

TABLE OF AUTHORITIES

Page

**Cases**

*Asplundh Tree Expert Co. v. Bates*
71 F.3d 592 (6th Cir. 1995) ........ 8

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) ........ 14

*Bissonnette v. LePage Bakeries Park St., LLC*
601 U.S. 246 ........ 7, 8, 9

*State ex rel. Cisneros v. Alco Harvest*
97 Cal.App.5th 456 ........ 11, 12

*Epic Systems Corp. v. Lewis*
138 S. Ct. 1612 ........ 14

*Fujian Pac. Elec. Co. v. Bechtel Power Corp.*
2004 U.S. Dist. LEXIS 23472 (N.D. Cal. Nov. 19, 2004) ........ 11

*Gentry v. Superior Court*
42 Cal.4th 443 (2007) ........ 14

*Green Tree Fin. Corp. Ala. v. Randolph*
531 U.S. 79 (2000) ........ 6

*Grigson v. Creative Artists Agency, L.L.C.*
210 F.3d 524 (9th Cir. 2000) ........ 11

*Moncharsh v. Heily & Blasé*
3 Cal.4th 1 (1992) ........ 13

*Rittmann v. Amazon.com, Inc.*
971 F.3d 904 (9th Cir. 2020) ........ 7, 8, 9

*Valdes v. Swift Transp. Co.*
292 F. Supp. 2d 524 (S.D.N.Y. 2003) ........ 12

*Viking River Cruises, Inc. v. Moriana*
596 U.S. 639 (2022) ........ 14

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

*Webb v. Rejoice Delivers LLC*
2023 U.S. Dist. LEXIS 216335 (N.D. Cal. Dec. 5, 2023) .............................. 14

**Statutes**

United States Code, section 1188 .............................................................. 9

United States Code, section 1188, subdivision (a)(1) ......................................... 10

California Code of Civil Procedure, sections 1280. ........................................... 13

California Code of Civil Procedure, section 1281 .............................................. 13

California Evidence Code section 623 ................................................................. 11

Federal Arbitration Act, 9 U.S.C., section 1 ........................ 5, 6, 7, 8, 9, 12, 13, 15

**Other Authorities**

Code of Federal Regulations, section 655 .................................................... 10, 12

Code of Federal Regulations, sections 655.0-655.185 ............................... 9, 10, 11

Code of Federal Regulations, section 655.100 .................................................. 10

Code of Federal Regulations, section 655.122 .................................................. 10

Code of Federal Regulations, section 655.175, subdivision (a) .......................... 10

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

# I

# INTRODUCTION

Plaintiffs do not dispute they each signed the Arbitration Agreement and class action waiver which requires them to submit all claims in this action to individual arbitration. Nor is there any dispute this case is an H-2A contract enforcement action premised on the express terms and conditions of plaintiffs' and Defendants' DOL certified H-2A contracts which set forth the Arbitration Agreement. The H-2A contracts: (a) were certified by the DOL; (b) granted plaintiffs the right to enter the U.S. on H2-A visas; and (c) set forth the Arbitration Agreement as a material term and condition of plaintiffs' H-2A visas and employment. In fact, pursuant to the H-2A program's implementing regulations, the H-2A contracts are final and must be enforced as written.

Nevertheless, and after having entered the U.S. on H-2A visas as farm workers with multiple agricultural harvesting duties, plaintiffs suddenly dispute their H-2A obligations and contend they should not be held to their agreements because they are "transportation workers" The Court should reject plaintiffs' specious contentions for 4 independent reasons: (a) plaintiffs completely fail to establish they belong to a class of "transportation workers" engaged in interstate commerce within the meaning of the Section 1 of the Federal Arbitration Act ("FAA"); (b) the contention plaintiffs are "transportation workers" is an unauthorized attempt to change DOL certified H-2A contracts in violation of the H2A program's implementing regulations; (c) plaintiffs are equitably estopped from denying their obligation to arbitrate; and (d) the Arbitration Agreement is enforceable under California law. Moreover, the class action waiver is enforceable pursuant to binding U.S. Supreme Court and California precedent which the Opposition ignores. Therefore, the Court should grant Defendant's Motion to Compel Arbitration in its entirety and dismiss all class and representative claims.

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

II

PLAINTIFFS WERE NOT TRANSPORTATION WORKERS ENGAGED IN INTERSTATE COMMERCE THEREFORE THE ARBITRATION PROVISION IS GOVERNED BY THE FAA

A. Plaintiffs' Own Exhibits Establish They were Not "Transportation Workers"

Having conceded they signed the Arbitration Agreement, plaintiffs "bear the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Plaintiffs cannot meet that burden. First, the H-2A Job Orders attached as Exs. A and B to plaintiffs' Opposition establish plaintiffs were not "transportation workers" as they falsely contend. Rather, plaintiffs own Exhibit A lists numerous non-transportation vegetable harvest duties as material terms and conditions of employment with Defendants, including crop cleaning, cleaning out unwanted weeds, thinning, general labor, and numerous other duties. (See, e.g., Opposition Ex. A at p. C.1 through C.14 of C.19.) Moreover, plaintiffs' Ex. A provides:

> The hauling/truck driving activities are performed directly in connection with and as an integral part of the harvest and farming operations. The hauling/truck driving activities are not a separate job. Truck driving activities constitute less than 10% of the total duties performed. Vegetable haulers/truck drivers must be available to perform each of the crop activities described in this job order . . . . (Emphasis added.) (Id. at C.16 of C.19.). (Id.).

Thus, it is obvious from plaintiffs' own exhibits they were not "transportation workers." On this basis alone, the Court should disregard plaintiffs' attempt to fabricate a "transportation worker" exemption, and grant Defendants' Motion to Compel Arbitration in its entirety.

B. Plaintiffs' Declarations Completely Fail to Establish They Were Transportation Workers Within the Meaning of Section 1 of the FAA

In addition, plaintiffs' deficient and inaccurate "declarations" completely fail to establish the crucial foundational facts required for the Court to determine

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

they are "transportation workers engaged in interstate commerce" as required by Section 1 of the FAA and plaintiffs' own cases. See, e.g. *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 247 ("*Bissonnette*") ("the relevant question was what the employee does at the [employer], not what the [employer] does generally"); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916-917 (9th Cir. 2020) ("*Amazon*") ("Put differently, a class of workers must themselves be 'engaged *in the channels* of foreign or interstate commerce." (Emphasis in original.)

For example, in *Amazon*, the Ninth Circuit ruled in favor of the exemption based on a detailed and extensive record proving Amazon's Amflex drivers made "last mile" deliveries of products from warehouses to the products' destinations, Amazon shipped packages across state lines, and Amazon specifically hired its Amflex drivers to complete those "last mile" deliveries. *Id*. at 907. Based on detailed evidence, Amflex delivery drivers established they are "a class of workers that transport packages through to the conclusion of their journeys in interstate and foreign commerce." (*Id*. at 909, 916.) Amflex drivers included evidence that they were hired to pick up assigned packages from an Amazon warehouse, drove to an assigned route to deliver the packages, occasionally crossed state lines to make deliveries, and at the end of each shift, returned undelivered packages to Amazon's warehouses. (*Id*. at 916.) The record in *Amazon* that was replete with evidence including proof that:

> Amazon is "one of the world's largest online retailers" that "work[s] closely with freight and transport companies on a massive scale to ensure that every individual shipment gets where it needs to go." Amazon Logistics, with an aim to "expand transportation capabilities worldwide," seeks to achieve its goal of "provid[ing] customers with an incredible package delivery experience through the last mile of the order" by partnering with independent delivery businesses and AmFlex delivery providers.

(*Id*. at 915.)

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

AmFlex workers demonstrated they "pick up packages that have been distributed to Amazon warehouses, certainly across state lines, and transport them for the last leg of the shipment to their destination." (*Id*.) Therefore, the Ninth Circuit held AmFlex delivery drivers are a class of transportation workers engaged in the movement of interstate commerce and exempt from the FAA's application. (*Id*.) Based on *Amazon* and *Bissonnette*, any worker claiming he is exempt must demonstrate he "at least plays a direct and 'necessary role in the free flow of goods' across borders." *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256. These requirements "undermine any attempt to give the provision a sweeping, open-ended construction," instead limiting §1 to its appropriately "narrow" scope. (*Id*.)[1]

In stark contrast, to the record in *Amazon* and the reasoning in *Bissonnette*, plaintiffs' "evidence" here falls woefully short of meeting the "transportation worker" exemption requirements. (See Rocha, Leon, and Ledesma Decls., generally.) Plaintiffs' declarations do not identify the alleged items they delivered, where they picked them, or where those items ultimately ended up. (*Id*.) In fact, none of plaintiffs' declarations answer the following critical foundational questions: (1) What products did plaintiffs allegedly deliver"? (2) From which location to which location did plaintiffs allegedly deliver something? (3) For which employer did plaintiffs make those deliveries? (4) How were plaintiffs and each Defendant "engaged in interstate commerce" during the relevant timeframes? *Amazon* and *Bissonette* require answers to each of these

---

[1] See also *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 600-01 (6th Cir. 1995) ("We conclude that the exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." (emphasis added)). Further, there is an obvious difference between the wording of § 2 of the Act, which defines what the Act covers, and the exclusionary clause of § 1. (*Id*. at 601.) Section 2 extends the coverage of the Act to "any maritime transaction or a contract evidencing a transaction involving commerce." (*Id*.) "The exclusionary clause does not employ the same broad language of § 2. If Congress had intended the exclusion to be as broad as the coverage, it would have used the same language in the exclusion clause.")



FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

questions for a plaintiff to show he is a transportation worker engaged in interstate commerce within the meaning of Section 1 of the FAA.

Rather than answer these critical questions, plaintiffs concede they never crossed state lines and attach irrelevant, unauthenticated photos, and other hearsay including an unauthenticated Facebook "advertisement" for a non-party, HarvesTek. (See, e.g., Rocha Decl., Ex. 1.) No intelligible or admissible explanation is provided regarding what, if anything, the HarvesTek advertisement has to do with any Defendant. Similarly, plaintiffs submit one 2023 paystub for Rocha showing only 4.5 hours of truck driver time for the entire 70.5 hour pay period with no explanation whatsoever as to what the 4.5 hours entailed. Rocha Decl., Ex. 3.) Plaintiffs similarly submit one 2020 paystub for Ledesma showing 12.25 hours of trucking-related time, again, with no explanation regarding what that time entailed. (Ledesma Decl., Ex. 3.) Plaintiffs make no attempt to identify what they transported, where they picked up and delivered, for which employer they allegedly transported, or when they did so. This is the absolute minimum showing required to establish a "transportation worker" exemption pursuant to plaintiffs' own cases, *Amazon* and *Bissonnette*. Thus, it is obvious plaintiffs cannot demonstrate they are exempt "transportation workers engaged in interstate commerce" within the meaning of Section 1 of the FAA. Instead, plaintiffs' FAC and Opposition prove plaintiffs must arbitrate pursuant to the FAA, California law, and their DOL certified H-2A contracts. For each of these reasons, the Court should grant the Motion to Compel Arbitration in its entirety.

### C. The Purported Exemption Fails As Matter Of Law Because It Violates The H-2A Program's Implementing Regulations

Plaintiffs admit they received the benefit of H-2A visas to enter the U.S. through the DOL H-2A program created by 8 U.S.C. § 1188 and implemented pursuant to regulations found at 20 C.F.R. §§ 655.0-655.185. (FAC ¶ 40.) Plaintiffs were granted the benefit of H-2A visas because Defendants offered

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

them agricultural work through the H-2A program. *Id*. Plaintiffs' H-2A visas and U.S. employment benefits were certified by the DOL via its Employment and Training Administration. (FAC ¶ 41 citing 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).) Defendants' DOL certified H-2A application including job offers known as "job orders" which complied with the requirements of 20 C.F.R. §655.122 and contain the terms of plaintiffs' employment as H-2A workers for Defendants. (FAC ¶ 41 citing 20 C.F.R. § 655.121(a)(2), FAC ¶¶ 46, 47, and Opposition at 3:11-13 and Exs. A and B.) The material terms of plaintiffs' employment included the Arbitration Agreement and listed numerous vegetable harvesting duties. (*Id*.) Moreover, the DOL certified job orders attached as plaintiffs' Exs. A and B establish plaintiffs were not exempt "transportation workers" as they falsely contend.

In sum, the terms and conditions of Defendants' job orders, together with the requirements of 20 C.F.R. part 655, constitute employment contracts for workers on H-2A visas, such as plaintiffs and all others similarly situated. (FAC ¶ 43 citing 20 C.F.R. § 655.103(b)'s definition of "work contract." (FAC ¶ 43 citing 20 C.F.R. § 655.121(a).) The H-2A programs' implementing regulations govern plaintiffs' H-2A contracts and establish the standards and obligations with which Defendants and plaintiffs must comply. 20 CFR 655.100. (FAC ¶¶ 40-44.)

Post-certification, changes to plaintiffs' certified H-2A work contracts are prohibited unless authorized by the implementing regulations. 20 CFR 655.175(a). Nonetheless, plaintiffs contend they are "transportation workers" exempt from the Arbitration Agreement in directly conflict with their DOL certified H-2A contracts. (See Opposition generally.) Plaintiffs' contentions constitute material unauthorized changes in violation of the H2A program's implementing regulations. *Id*. There is no implementing regulation which permits such material changes to H-2A contracts. 20 C.F.R. §§ 655.0-655.185.

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

Moreover, contrary to their Opposition, plaintiffs' FAC seeks to enforce the H-2A contracts, as written, pursuant to the H-2A program's implementing regulations at 20 C.F.R. §§ 655.0-655.185. (FAC ¶¶ 40-49.) The California Court of Appeal recently held that H-2A certified contracts that do not set forth employers' arbitration agreements, or other material terms, must be enforced, as is. *State ex rel. Cisneros v. Alco Harvest*, 97 Cal.App.5th 456. By the same token, DOL certified H-2A contracts setting forth arbitration agreements must also be enforced, as is. (*Id*.) For these reasons, the Court should enforce the Arbitration Agreement, as written, and grant Defendants' Motion to Compel in its entirety.

D. Plaintiffs Are Equitably Estopped From Claiming They Are Exempt "Transportation Workers"

The doctrine of equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Alliance Bank of Arizona*, 2013 WL 2432313, at *3 (quoting *Mundi*, 555 F.3d at 1045–46). A party to an agreement "cannot . . . have it both ways," he cannot on the one hand, seek to enforce duties imposed by the agreement, which contains an arbitration provision, but on the other hand, deny the arbitration provision's applicability. *Fujian Pac. Elec. Co. v. Bechtel Power Corp.*, 2004 U.S. Dist. LEXIS 23472 at *16 (N.D. Cal. Nov. 19, 2004) ("[T]o allow such inconsistent positions would be inequitable to say the least"); see also *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (9th Cir. 2000) ("The linchpin for equitable estoppel is equity -- fairness"); and California Evidence Code section 623 ("Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.)

/ / / / /



FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

As established previously, plaintiffs accepted the terms and conditions of their employment, including the Arbitration Agreement and job duties set forth in job orders which together with the requirements of 20 C.F.R. part 655, constitute employment contracts approved by the DOL. (See Opposition, Exs. A and B.) Pursuant to the H-2A contracts setting forth the Arbitration Agreement, plaintiffs received the benefits of H-2A visas, including U.S. employment as H-2A workers. In addition, plaintiffs' FAC seeks to enforce their H-2A contracts against Defendants while simultaneously claiming they are exempt from the Arbitration Agreements set forth as material conditions of those contracts. (FAC ¶ 41 citing 20 C.F.R. § 655.121(a)(2).) As stated previously stated, H-2A workers (represented by plaintiffs' counsel here) have successfully argued H2-A contracts must be enforced, as is. *State ex rel. Cisneros v. Alco Harvest*, 97 Cal. App. 5th 456. To do otherwise would be inequitable here. *Id*.

For each of the above reasons the Court should equitably estop plaintiffs from attempting to evade their Arbitration Agreement and grant the Motion to Compel in its entirety.

## III

## PLAINTIFFS' ARBITRATION AGREEMENTS ARE ENFORCEABLE UNDER CALIFORNIA LAW

If a contract falls within Section 1 of the FAA, that does not mean it is unenforceable; it means state law, rather than federal law, governs its enforceability. See *Valdes v. Swift Transp. Co*., 292 F. Supp. 2d 524, 528-29 (S.D.N.Y. 2003) ("any inapplicability of the FAA would not preclude enforcing the arbitration agreement under state law". ) California law controls here because: "Plaintiffs "claims arose in the Northern District of California" . . . and "Defendants, for work in California, paid Plaintiffs. . . and others similarly situated $18.65 per hour in 2023, the then current Adverse Effect Wage Rate for California. . . ." but " . . . did not pay wages in keeping with California wage

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

statutes . . . and paid wages below those required by California law . . . . (See e.g., FAC ¶¶ 2, 7, 42, 91-93.). Moreover, the Arbitration Agreement attached to the Scaroni Declaration provides:

> If the employment exists in California, California Code of Civil Procedure Sections 1280, et seq. will also govern such arbitration to the extent that the California law does not contradict or is preempted by the applicable Federal law.
>
> . . . .
>
> The arbitrator's decision shall be final and subject to judicial review only as provided by the California Arbitration Act (Code of Civil Procedure Section 1285, et. seq.)

As established in Defendants' Motion, in deciding whether parties are required to arbitrate disputes, the state statutory schemes relating to arbitration and the policies they were designed to further must be considered. The California Arbitration Act ("CAA"), California Code of Civil Procedure, sections 1280, et seq., so states. "[T]he Legislature expresses a 'strong public in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' Courts 'indulge every intendment to give effect to such proceedings.'" *Moncharsh v. Heily & Blasé*, 3 Cal.4th 1, 9 (1992). In particular, California Code of Civil Procedure, section 1281, like section two of the FAA, provides that arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Accordingly, the Arbitration Agreement is enforceable under California law. On that basis alone, the Motion to Compel Arbitration should be granted in its entirety.

## IV

## THE CLASS ACTION WAIVER IS ENFORCEABLE PURSUANT TO U.S. SUPREME COURT AND CALIFORNIA PRECEDENT

The Court should reject plaintiffs specious attempt to escape their enforceable class and representative action waiver. As is established in the Motion, binding U.S. Supreme Court and California precedent is clear: Class

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

action waivers contained in arbitration agreements must be enforced as written. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011); 234 Cal.App.4th 947, 955-56 (2d Dist. 2015). Rather than address this applicable and binding precedent, plaintiffs mislead by misconstruing and misapplying irrelevant, nonbinding cases including *Webb v. Rejoice Delivers LLC,*2023 U.S. Dist. LEXIS 216335, *38 (N.D. Cal. Dec. 5, 2023) ("*Webb*") which is based on the inapplicable California Supreme Court decision in *Gentry v. Superior Court*, 42 Cal.4th 443, 464 (2007) ("*Gentry*"). Plaintiffs' evidence and circumstances here bear no resemblance whatsoever to *Gentry* or *Webb*. In *Gentry*, the California Supreme Court observed that "some individual employees may not sue because they are unaware that their legal rights have been violated," and that "it may often be the case that the illegal employer conduct escapes the attention of employees." *Gentry*, *supra*, 42 Cal. 4th at 461. The issues in *Gentry* do not apply here. Similarly, in *Webb*, the plaintiff provided detailed evidence and "made a strong showing as to the "*Gentry* factors" such that "based on the totality of the evidence before the Court", the Court concluded that the class action waiver "will likely lead to a less comprehensive enforcement of overtime laws," and that class proceedings would be "a significantly more effective practical means of vindicating the rights of the affected employees." *Webb* citing *Gentry*, 42 Cal. 4th at 463. The evidence in *Webb* included plaintiff's testimony under oath that "he was not aware of his rights as an employee, including that he was entitled to regular meal and rest breaks to be taken within certain time periods, and that he was entitled to penalties if his employer failed to pay all wages owed at the termination of his employment. . . ." Plaintiffs make no mention of such issues here, much less offer evidence to support them.

Further, the opposition ignores binding precedent such as the U.S. Supreme Court holding in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639,



FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

659-62 (2022), that FAA agreements to arbitrate claims on an individual basis require arbitration of individual PAGA claims and dismissal of representative PAGA claims. In sum, plaintiffs provide no applicable authority or valid reason why this Court should not dismiss plaintiffs' putative class and PAGA representative claims and compel arbitration of all claims alleged in the FAC on an individual basis and as requested in Defendants' Motion to Compel Arbitration.

IV

CONCLUSION

Plaintiffs do not dispute they signed a broad Arbitration Agreement with an express class actions waiver and provide no admissible evidence, authority, or valid reason supporting their claim they are exempt from arbitration. Consequently, Defendants have established they are entitled to an order: (a) compelling plaintiffs to arbitrate all claims alleged in this action on an individual basis; (b) dismissing class claims; and (c) dismissing representative claims under PAGA or, alternatively, and without waiving Defendants' right to dismissal of PAGA claims, staying the remaining action, including Plaintiff's representative PAGA claims, pending completion of plaintiffs' individual arbitrations.

DATED: October 15, 2024

Respectfully submitted,

FINCH, THORNTON & BAIRD, LLP

By: */s/ Marlene C. Nowlin*
CHAD T. WISHCHUK
MARLENE C. NOWLIN
Attorneys for Defendants Fresh Harvest, Inc., Farm Labor Association For Growers, Inc., and SMD Logistics, Inc.
E-mail: mnowlin@ftblaw.com

2695.003/3RX1879.axm