CHAD T. WISHCHUK, SBN 214779
EMAIL: cwishchuk@ftblaw.com
MARLENE C. NOWLIN, SBN 156457
EMAIL: mnowlin@ftblaw.com
**FINCH, THORNTON & BAIRD, LLP**
ATTORNEYS AT LAW
4747 EXECUTIVE DRIVE – SUITE 700
SAN DIEGO, CALIFORNIA 92121-3107
TELEPHONE: (858) 737-3100
FACSIMILE: (858) 737-3101

Attorneys for Defendants Fresh Harvest, Inc., Farm Labor Association For Growers, Inc., and SMD Logistics, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTONIO RUBIO-LEON, ANGEL DE JESUS ROCHA-RIVERA, DIEGO MARTINEZ-JIMENEZ, GERARDO LEDESMA-DELGADO and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., and SMD LOGISTICS, INC.,<br><br>Defendant. | CASE NO: 5:24-cv-03375-EKL<br><br>DEFENDANTS' MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFFS' AND NONPARTIES MOTION TO LIFT ARBITRATION STAY OR, ALTERNATIVELY, ORDER ARBITRATIONS TO PROCEED BEFORE JAMS ADR<br><br>Assigned to:<br>District Judge: Hon. Eumi K. Lee, Courtroom 7<br>Magistrate Judge: Hon. Nathanael M. Cousins, Courtroom 5<br><br>Hearing: December 9, 2026<br>Time: 10:00 a.m.<br>Dept.: Courtroom 7<br><br>Complaint Filed: June 4, 2024<br>Trial Date: Not Set |

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

TABLE OF CONTENTS


Page

I INTRODUCTION AND SUMMARY OF ARGUMENT ....................5

II STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY ....................7

A. Contrary to Plaintiffs' Misrepresentations, The Arbitrator Selection Provisions Require Mutual6 Agreement To An Arbitrator and Do Not Designate JAMS....................7

B. Beginning April 2024, Plaintiffs Repeatedly Breached The Arbitration Agreement Despite Defendants' Repeated Requests That They Comply ....................8

C. Plaintiffs Breached The Arbitration Agreement by Filing This Lawsuit ....................8

D. In September 2025, the Court Compelled Plaintiffs to Arbitration and Issued The Stay Order....................9

E. Plaintiffs, Again, Breached the Arbitration Agreement and Violated the Stay Order By Unilaterally Filing 18 Unauthorized JAMS Arbitrations....10

F. Plaintiffs Conceal Their 9-Month Delay of Arbitration and Refusal to Comply with the Arbitration Selection Provisions....................11

G. Plaintiffs Conceal Meet and Confer Discussions in August 2026 Regarding Mediation, Arbitrator Proposals, and Defendants' Motion Appoint Arbitrator12

H. Plaintiffs Refused to Withdraw Their Motion; Therefore, Defendants Will File a Motion to Appoint Judge Gallo as Arbitrator....................12

III PLAINTIFFS REPEATEDLY VIOLATED THE ARBITRATOR SELECTION PROVISIONS; THEREFORE, THE MOTION IS SPECIOUS AND MUST BE DENIED ....................13

A. Plaintiffs Caused a Complete Lapse Under Section 5 of the FAA Which Requires Judicial Appointment of an Arbitration....................13

B. Plaintiffs Cannot Establish Waiver of Arbitration....................15

IV THE TERMS OF THE AGREEMENT GOVERN; THEREFORE, THE COURT SHOULD REJECT PLAINTIFFS' DEMAND TO APPOINT JAMS....................17

V NONPARTIES HAVE NO STANDING AND THEIR CLAIMS ARE TIME-BARRED; THEREFORE, THE COURT SHOULD DISREGARDED THEM....................19

A. Nonparties Have No Stake In Plaintiffs' Individual Arbitrations; Therefore, All Contentions Regarding Nonparties Should Be Disregarded....................20

B. Nonparties "Consent" Forms Are Fatally Defective; Therefore, Their Claims Are Time-Barred ....................20

VI CONCLUSION....................22

VI CERTIFICATE OF SERVICE ....................23




FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alexander* v. *Gardner-Denver Co.*
415 U.S. 36, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974) .......... 18

*AT&T Technologies, Inc. v. Communications Workers*
475 U.S. 643 (1986) .......... 18

*Belyea v. GreenSky, Inc.*
637 F. Supp. 3d 745 (N.D. Cal. 2022) (motion to set aside judgment against borrower denied where JAMS or AAA unequivocally designated even though lender had not paid fees) .......... 16

*Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*
128 F.3d 504 (7 Cir., 1997) .......... 19

*Britton v. Co-op Banking Group*
916 F.2d 1405 (9th Cir.1990) .......... 17

*Brown v. Dillard's, Inc.*
430 F.3d 1004 (9th Cir. 2005) .......... 11

*Campbell v. City of Los Angeles*
903 F.3d 1090 (9th Cir. 2018) .......... 20, 21

*Coinbase, Inc. v. Bielski*
599 U.S. 736 (2023) .......... 16

*EEOC v. Waffle House, Inc.*
534 U.S. 279 (2002) .......... 18

*First Options of Chicago, Inc. v. Kaplan*
514 U.S. 938 (1995) .......... 19

*Gaul v. Chrysler Fin. Servs. Ams. LLC*
657 Fed. Appx. 16 .......... 15

*Hamilton v. Wal-Mart Stores, Inc.*
39 F.4th 575 (9th Cir. 2022) .......... 20

*Heitmann v. City of Chicago*
2004 U.S. Dist. LEXIS 14669 (2004) .......... 21

*Hill v. Xerox Bus. Servs., LLC*
59 F.4th 457 (9th Cir. 2023) .......... 16

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

*Hohenshelt v. Superior Court*
(2025),18 Cal. 5th 310 ........ 13, 16

*International Produce, Inc.* v. *A/S Rosshavet*
638 F.2d 548 (1981)........ 18

*Lee v. Citigroup Corp. Holdings, Inc.*
691 F. Supp. 3d 1157 (N.D. Cal. 2023) ........ 16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
473 U.S. 614 (1985)........ 18

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*
460 U.S. 1 (1983)........ 19

*Motorola Credit Corp. v. Uzan*
561 F.3d 123 (2d Cir. 2009)........ 15

*Rapaport v. Soffer*
No. 2:10-CV-00935-KJD-RJJ, 2011 U.S. Dist. LEXIS 51257 (D. Nev. May 12, 2011) ........ 16

*Reloj v. Gov't Emps. Ins. Co.*
2026 U.S. Dist. LEXIS 11250 ........ 20

*In re Salomon Inc. S'holders' Derivative Litig.*
68 F.3d 554 (2d Cir. 1995)........ 14

*Stolt-Nielsen, SA v. AnimalFeeds International Corp.*
559 U.S. 662 (2010)........ 18

*Volt v. Board of Trustees of Leland Stanford Junior Univ.*
489 U.S. 468 (1989)........ 18

**Statutes**

9 United States Code, section 2 ........ 8

29 United States Code, section 216(b)........ 20, 21

29 United States Code, section 255(a)........ 20

29 United States Code, section 256 ........ 20

California Labor Code, section 98.6........ 9

California Labor Code, section 203 ........ 8

California Labor Code, section 226........ 8

California Labor Code, section 1194........ 8

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

California Labor Code, section 2698 ........ 8

California Labor Code, section 2802 ........ 8

California's Unfair Competition Law (Cal. Bus. & Prof. Code sections 17200 *et seq.*) ........ 8

Federal Arbitration Act, section 5 ........ 8

Fair Labor Standards Act (29 U.S.C. sections 206 *et seq.*) ........ 4

Fair Labor Standards Act ........ 8

**Court Rules**

Federal Rule of Civil Procedure, section 23 ........ 20

Defendants Farm Labor Association for Growers, Inc. ("FLAG"), Fresh Harvest, Inc. ("Fresh Harvest"), and SMD Logistics, Inc. ("SMD") (collectively "Defendants") respectfully submit this Memorandum in Opposition to plaintiffs' Antonio Rubio-Leon, Angel De Jesus Rocha-Rivera, Diego Martinez-Jimenez, and Gerardo Ledesma-Delgado's (collectively "plaintiffs") and nonparties' Jesus Ceballos-Espinoza, Manuel Sigala-Duarte, and Francisco Diaz-Garcia (collectively "nonparties") Motion to Lift Stay Or, In The Alternative, Order Arbitrations To Proceed Before JAMS ADR ("Motion").

## I

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' Motion fabricates a claim of waiver by concealing their repeated violations of the arbitrator selection process required by the arbitration agreement which was enforced by the Court on September 16, 2025 ("Arbitration Agreement"). By concealing crucial facts, plaintiffs seek to lift the Court's validly entered arbitration stay or force Defendants into JAMS arbitrations—a premium forum – not designated by the parties. The Motion conceals that plaintiffs' counsel: (a) ran an unauthorized, deceptive mass JAMS filing scheme; (b) sat idle for nine months by refusing to propose a single arbitrator until August 20, 2026; (c) disregarded Defendants' arbitrator proposals; and (d) ignored Defendants' request to comply with mutual arbitrator selection provisions in the Arbitration Agreement. By repeatedly bypassing and violating the Arbitration Agreement, plaintiffs' counsel wasted a staggering 12 months. In sum, plaintiffs' extrajudicial attempt to bypass the mutual arbitrator selection process failed, so they are now attempting to retroactively rewrite the contract to appoint JAMS by hiding facts from the Court.

Specifically, beginning in April 2024, Defendants repeatedly demanded plaintiffs comply with their obligations to arbitrate pursuant to their arbitration agreements. Plaintiffs repeatedly refused, forcing Defendants to file a Motion To Compel Arbitration, Dismiss Class Claims, and for an Immediate Stay Pending the Ruling ("Motion to Compel Arbitration"). On September 16, 2025, the Court granted the Motion to Compel Arbitration, dismissed class claims, and stayed remaining PAGA claims until completion of plaintiffs' individual

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

arbitrations (the "Stay Order"). Rather than comply with the parties' arbitrator selection provisions and the Stay Order, in October 2026, plaintiffs' counsel unilaterally commenced 18 unauthorized arbitrations with JAMS. They did so by: (a) bundling plaintiffs' 4 arbitration demands with 14 nonparties whose time- barred claims were explicitly frozen by the Stay Order; and (b) misrepresenting to JAMS that is the designated forum. When JAMS dismissed plaintiffs' proceedings precisely because it is not designated, plaintiffs still refused to comply with the arbitrator selection provisions.

Instead, from October 2025 to January 2026 plaintiffs continued violating the Arbitration Agreement by: (a) repeatedly demanding JAMS; (b) refusing to propose a single arbitrator; (b) disregarding Defendants' repeated arbitrator proposals without explanation; and (c) demanding irrelevant agreements for time-barred nonparties with no standing. In January, Defendants proposed Hon. William V. Gallo, Ret., an arbitrator with specific familiarity with agriculture, transportation, and wage and hour cases. Defendants received no response to this second request nor any communication whatsoever from plaintiffs until August 7, 2026.

Plaintiffs finally proposed arbitrators on August 20 – exactly 5 days prior to moving to lift the stay. Defendant's counsel immediately responded they would review the names in good faith. Instead of proceeding with the selection process, plaintiffs' counsel engaged in a profound breach of civility and candor to the Court: On the same day defense counsel notified plaintiffs they were experiencing medical emergencies, plaintiffs' counsel rushed to file plaintiffs' Motion, omitting these and numerous material facts.

Plaintiffs' conduct alone caused the lapse in naming an arbitrator. Ninth Circuit precedent makes clear that plaintiffs cannot rely on their own contractual violations, repeated refusals to mutually select an arbitrator, lack of candor with the Court, inaction, and sharp practices to claim waiver of arbitration. Because the lapse in naming an arbitrator is solely the result of plaintiffs' intransigence, their Motion is nothing more than a new device to avoid arbitration. For these and the following reasons, plaintiffs' Motion must be denied, and a court-appointed arbitrator is required pursuant to section 5 of the FAA. (9 U.S.C. § 5.)

/ / / / /

II

## STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

### A. Contrary to Plaintiffs' Misrepresentations, The Arbitrator Selection Provisions Require Mutual Agreement To An Arbitrator and Do Not Designate JAMS

Plaintiffs are former seasonal workers with H-2A visa employment status who worked for one or more of the Defendants as "Vegetable/Harvest Workers, Haulers/Truck Drivers.[1] During their employment, each plaintiff signed the Arbitration Agreement which is governed by the FAA and provides:

(1) "[a]ny and all disputes, controversies or claims . . . arising out of or relating to this employment handbook, your employment or the termination of your employment may be settled by binding arbitration before an impartial arbitrator, unless otherwise prohibited by applicable law."

(2) arbitration "provide[s] the exclusive remedy and, by reading and signing [the] Agreement, each [Plaintiff] expressly waive[d] any right they might have to seek redress in any other forum, including a trial by jury."

(3) plaintiffs "are expressly precluded from filing or participating in any joint, class, representative or collective claims addressing their wages, hours or other terms or conditions of their employment against the employer in any forum, whether arbitral or judicial. This waiver includes PAGA claims to the extent permitted by law."[2]

/ / / / /

/ / / / /

/ / / / /

---

[1] ECF No. 64, 1:23-25, 7:7 citing plaintiffs' Compl. ¶¶ 8-11, ECF No. 15, ECF Nos. 45-15, 45-17, 45-19, and 45-21; ECF Nos. 45-22 through 45-30 (Scaroni Decl.); Declaration of Marlene C. Nowlin ("Nowlin Decl"), Exs. 1 through 4.

[2] ECF No. 64, 2:17-3:2; Declaration of Dawson Morton in support of plaintiffs' Motion ("Morton Decl."), ¶ 4 citing Arbitration Agreement at ECF Nos. 45-15, 45-17, 45-19, and 45-21; ECF Nos. 45-22 through 45-30 (Scaroni Decl.); ECF Nos. 45-13 through 45-21 (Translator Garcia Decl.), Nowlin Decl., Exs. 3 and 4.)



FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

The Arbitration Agreement governs arbitrator selection as follows:

> Such arbitration shall be conducted in accordance with the rules of the arbitration association or service from which the arbitrator is selected (e.g., American Arbitration Association, JAMS, ARS, etc.) and will be governed by the Federal Arbitration Act [9 U.S.C. Section 2, et. al.] If the employment exists in California, California Code of Civil Procedure Sections1280, et seq. will govern such arbitration to the extent that California law is not contradictory or pre-empted by applicable Federal law.
>
> . . . .
>
> If the parties are not able to agree upon a neutral arbitrator within 10 days, the National Office of the Federal Mediation and Conciliation Service is authorized to select a neutral arbitrator who shall hold a hearing within 10 days of his/her selection. (*Id.* at ECF Nos. 45-15, 45-17, 45-19, and 45-21)

Plaintiff Gerardo Ledesma Delgado's Agreement also provides:

> The arbitrator shall be selected from a list of seven arbitrators provided by the National Office of the Federal Mediation and Conciliation Service. The parties shall take turns to eliminate the names that are on the list, the first party to begin eliminating names from the list shall be chosen by tossing a coin. The arbitration shall be held in a location to be mutually agreed upon by the parties. In the absence of agreement, the arbitrator shall determine the location. (*Id.* at ECF No. 45-15.)

B. Beginning In April 2024, Plaintiffs Repeatedly Breached The Arbitration Agreement Despite Defendants' Repeated Requests That They Comply

As established in the Motion to Compel, immediately upon becoming aware of plaintiffs' claims in April 2024, Defendants informed plaintiffs' counsel of plaintiffs' signed Arbitration Agreement and class action waiver and requested plaintiffs stipulate to submit their claims to binding arbitration. (ECF Nos. 45-6, 45-7 (Schermerhorn Decl., ¶ 2-8, Exs. 1-6), Nowlin Decl. Ex. 26.)

C. Plaintiffs Breached The Arbitration Agreement by Filing This Lawsuit

In violation of the plain language of their Arbitration Agreement and despite Defendants demands that plaintiffs arbitrate, plaintiffs filed a class action complaint against Defendants asserting claims for: (1) Violation of the Fair Labor Standards Act (29 U.S.C. §§ 206 *et seq.*); (2) Failure to Pay California Minimum Wage (Cal. Lab. Code § 1194); (3) Failure to Pay Overtime Wages (Cal. Lab. Code § 1194); (4) Failure to Reimburse Business Expenses (Cal. Lab. Code § 2802); (5) Breach of Employment Contract; () Failure to Furnish Accurate Itemized Wage Statements (Cal. Lab. Code § 226); (7) Violation of California's Unfair

Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); (8) Waiting Time Penalties for Failure to Pay All Wages Due (Cal. Lab. Code § 203); (9) Civil Penalties under the Private Attorneys General Act (Cal. Lab. Code § 2698); and (10) Retaliation (Cal. Lab. Code § 98.6). (ECF Nos. 1, 15 and 64, Nowlin Decl., ¶¶ 1, 8, Ex. 1.)

Defendants were not served with the complaint until they received the First Amended Complaint ("FAC") on July 31, 2024. (ECF No. 45-6, ¶ 4.) Defendants again demanded arbitration multiple times including on September 16, 2024, when Defendants notified plaintiffs' counsel as follows:

> This case does not belong in this Court pursuant to valid and enforceable arbitration agreements containing class action waivers. Plaintiffs have acknowledged the existence of the arbitration agreements. Accordingly, Defendants will file a motion to compel arbitration, dismiss class claims, and stay this case in lieu of an amended and initial disclosures ("Motion to Compel Arbitration"). Defendants' Motion to Compel Arbitration will establish plaintiffs must be ordered to arbitration, class claims must be dismissed, and any remaining aspect of this case must be stayed. Defendants reserve their right to assert all additional defenses and arguments establishing this Court's lack of jurisdiction and plaintiffs' lack of factual and legal support for their claims pending the Court's ruling on the Motion to Compel Arbitration.

(Nowlin Decl., ¶ 5 Exs. 5 and 6.)

On September 20, 2024, Defendants, again, demanded plaintiffs submit their claims to binding arbitration and dismiss class and representative action claims. (Nowlin Decl., ¶ 6, Ex. 7.) Plaintiffs continued to disregard their obligations under the Arbitration Agreement. (*Id.* ¶ 7, Ex. 8.) Consequently, on September 24, 2024, Defendants filed their Motion to Compel Arbitration. (ECF Nos. 45 through 45-31; Nowlin Decl., ¶ 8.)

D. In September 2025, the Court Compelled <u>Plaintiffs to Arbitration and Issued the Stay Order</u>

On September 16, 2025, the Court issued the Stay Order granting Defendants' Motion to Compel Arbitration as to all claims except representative PAGA claims, dismissing all claims brought as putative class or collective action claims, and staying remaining PAGA representative claims until arbitration concludes pursuant to the Agreement. (ECF No. 64, Nowlin Decl. ¶ 9, Ex. 2.) Pursuant to the Stay Order, all collective FLSA claims were dismissed. (*Id.*)

/ / / / /



FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

In addition, nonparties' individual FLSA claims, if any, are time-barred because their employment ended more than 3 years ago. (Declaration of Cynthia Quintero ("Quintero Decl."), ¶¶ 2-3.) Specifically, although plaintiffs' counsel purports to have filed identical, vague "consent" forms for nonparties, all such forms are fatally defective because merely state:

> THROUGH THIS DOCUMENT I give my consent to be a plaintiff in a lawsuit about my work during the year(s): 2021.
> Date signed: 6/12/2024 (ECF No. 13-1.)

> THROUGH THIS DOCUMENT I give my consent to be a plaintiff in a lawsuit about my work during the year(s): 2021, 2022.
> Date signed: 6/12/2024 (ECF No. 13-2.)

> THROUGH THIS DOCUMENT I give my consent to be a plaintiff in a lawsuit about my work during the year(s): 2022, 2023.
> Date signed: 8/22/2024. (ECF No. 32-2)

(Nowlin Decl., ¶ 10, Exs. 9 through 11; Plaintiffs' Memorandum in Support of Motion ("Plaintiffs' Memo") at 2:11-13 citing ECF Nos. 13-1, 13 -2, and 32;).

For each of the above reasons, and as discussed at Section V. below, nonparties lack standing to seek any order from this Court.

E. Plaintiffs, Again, Breached the Arbitration Agreement and Violated the Stay Order By Unilaterally Filing 18 Unauthorized JAMS Arbitrations

Plaintiffs' counsel admits that, despite the Stay Order, they refused to engage in the arbitrator selection process set forth in Arbitration Agreement. (Morton Decl., ¶¶ 5-9.) Instead, in October 2025, they unilaterally filed 18 unauthorized cases with JAMS. (Morton Decl., ¶¶ 6-8, Exs. A to G; Plaintiffs' Memo., 2:4-3:7; Nowlin Decl., ¶¶ 11-12, collective Exs. 12-14.) Moreover, plaintiffs' counsel misrepresented to JAMS that it was the designated forum for the 18 filings, even for 14 nonparties whose FLSA claims are time-barred and whose PAGA claims are explicitly stayed. (Nowlin Decl. ¶¶ 11, Exs. 12-13; Morton Decl., ¶¶ 8-14, Exs. B-G; Quintero Decl. ¶¶ 2-3.)

From October to November 2025, plaintiffs' counsel continued to repeatedly demand JAMS serve as forum for all 18 unauthorized cases and that Defendants produce irrelevant arbitration agreements for nonparties with stayed and time-barred claims and who have no standing in this action to make any demands. (Nowlin Decl. ¶12, collective Ex. 14.)

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

On October 30, 2025, Defendants advised JAMS that it objects to counsels' unilateral mass filing based on the plain language of the Arbitration Agreements and provided JAMS copies of the Arbitration Agreement and Stay Order. (Nowlin Decl. ¶13, Ex. 15; Morton Decl. ¶10, Ex. C.) In response, plaintiffs' counsel still insisted JAMS proceed despite the plain language of the Arbitration Agreement. (*Id.*)

As expected, JAMS dismissed plaintiffs' 4 unilateral arbitration demands on November 13, 2025, stating "[i]n light of the Parties' agreement and Respondent's objection, JAMS is unable to proceed . . . ." (Nowlin Decl., ¶ 14, collective Ex. 16; Morton Decl. ¶11, Ex. D.) On February 12, 2026, JAMS summarily dismissed all 14 nonparty demands. (Nowlin Decl. ¶ 15, Ex. 17; Morton Decl. ¶14, Ex. G.)

F. Plaintiffs Conceal Their 9-Month Delay of Arbitration and Refusal to Comply with the Arbitration Selection Provisions

Plaintiffs' Motion conceals material facts and communications regarding their continued refusal to comply with the Arbitration Agreement and their staggering 9-month delay after JAMS dismissed their unauthorized arbitrations. (Nowlin Decl. ¶ 16, Exs. 18-20.) Specifically, after JAMS dismissed their cases, plaintiffs still did not propose any arbitrators or take any other action to comply with the arbitrator selection provisions until August 20, 2026. (*Id.* at Ex. 20.) Instead, from November 2025 to January 2026, plaintiff continued their demand that JAMS serve as forum and Defendants repeatedly responded that: (a) the arbitration agreements do not designate JAMS nor permit plaintiffs to unilaterally select JAMS; (b) per the Arbitration Agreements, the parties must mutually agree to an arbitrator; and (c) once selected, the arbitrator's rules apply. (*Id.* at Exs. 18 and 19.)

Plaintiffs' Motion also conceals that from November 2025 to January 2026, Defendants proposed arbitrators including Judge Sabraw and Hon. William V. Gallo, Ret., an arbitrator with specific familiarity with agriculture, transportation, and wage and hour cases. (*Id.* at ¶ 17, Exs. 18-19) Unfortunately, Judge Sabraw no longer handles arbitration, and plaintiffs rejected Judge Gallo, without explanation and without proposing alternative arbitrators. (*Id.*)

/ / / / /

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

On January 9, 2026, Defendants made a second request to proceed before Judge Gallo. Defendants received no response to their request nor any communication whatsoever from plaintiffs until August 7, 2026. (*Id.* at ¶ 18, Exs. 19-20.)

G. Plaintiffs Conceal Meet and Confer Discussions in August 2026 Regarding Mediation, Arbitrator Proposals, and Defendants' Motion Appoint Arbitrator

From August 7 to August 21, 2026, Defendants attempted to resolve arbitrator selection issues, met and conferred with plaintiffs' counsel regarding mediation, and notified plaintiffs Defendants intended to file a motion to appoint Judge Gallo as arbitrator unless plaintiffs complied with the Arbitration Agreement. (*Id.* at ¶ 19 Ex. 20-22.) On August 20, 2026, Plaintiffs' counsel finally proposed arbitrators. (*Id.* at Ex. 22.)

Defendants were actively reviewing and considering plaintiffs' proposed arbitrators when both lead defense counsel experienced medical emergencies. (*Id.* at ¶ 20, Ex. 21-22.) On the morning of August 25, Defendant's counsel formally notified plaintiffs of their medical emergencies. (*Id.* at ¶ 20, Ex. 23 and 24.) That afternoon, plaintiffs' counsel, Dawson Morton, filed plaintiffs' Motion. (*Id.* at ¶ 21; ECF No. 66.) Based on the August 25 filing date, Defendants' response deadline was the day after Labor Day, September 8, 2026. (*Id.*; ECF No. 67.) Due to defense counsel's medical emergencies and opposing counsel's delay in signing a stipulation granting an extension, Defendants were forced to file a motion to enlarge time which was granted by the Court on September 3, 2026. (*Id.*; ECF No. 68 through 70.)

H. Plaintiffs Refused to Withdraw Their Motion; Therefore, Defendants Will File a Motion to Appoint Judge Gallo as Arbitrator

Due to plaintiffs' continued refusal to comply with the arbitrator selection provisions and to protect Defendants' right to arbitration, on September 18, 2026, defense counsel, again, met and conferred with opposing counsel regarding Defendants' motion to appoint Judge Gallo or other qualified arbitrator unless plaintiffs withdraw their Motion. ("Motion to Appoint Arbitrator"). (*Id.* at ¶ 21, Ex. 25.) Plaintiffs' counsel refused to withdraw plaintiffs' Motion; therefore, Defendants will proceed with a Motion to Appoint Arbitrator. (*Id.*)

/ / / / /

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

III

PLAINTIFFS REPEATEDLY VIOLATED THE ARBITRATOR SELECTION PROVISIONS; THEREFORE, THE MOTION IS SPECIOUS AND MUST BE DENIED

Contrary to plaintiffs' false contentions, the Arbitration Agreement contains arbitrator selection provisions which do not designate JAMS. Hence, all of plaintiffs' inapplicable authorities and specious contentions to the contrary should be disregarded. (See, e.g., Plaintiffs' Memo, 3:8-4:7.) The plain terms of the Arbitration Agreement, which plaintiffs repeatedly violated, required meet and confer discussions to reach mutual agreement to an arbitrator. Once an arbitrator is chosen, his/her rules and procedures govern. If the parties fail to agree to an arbitrator, the National Office of the Federal Mediation and Conciliation Service is authorized to select a neutral arbitrator. JAMS acknowledged these provisions and properly dismissed all 18 unauthorized arbitrations. Under governing Ninth Circuit authority, plaintiffs' blatant contractual breaches and Defendants' repeated demands for compliance eliminate any claim of waiver of arbitration. Instead, because plaintiffs caused a lapse in naming an arbitrator, their Motion must be denied and a court-appointed arbitrator is required pursuant to section 5 of the FAA. (9 U.S.C. § 5.)

A. Plaintiffs' Caused a Complete Lapse Under Section 5 of the FAA Which Requires Judicial Appointment of an Arbitration

Following the Stay Order, Defendants repeatedly demanded plaintiffs comply with the Arbitration Agreement's selection provisions and proposed arbitrators. In response, plaintiffs repeatedly demanded an undesignated forum, rejected Defendants' proposals, and refused to propose a single arbitrator until August 20, 2026 – a staggering 11 months after the Court's order compelling arbitration. Then, on August 25, 2026, while Defendants were considering plaintiffs' proposed arbitrators and experiencing medical emergencies, plaintiffs' counsel ambushed Defendants by filing their specious motion seeking to lift the stay or appoint JAMS in further violation of the Arbitration Agreement.

/ / / / /

/ / / / /

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

Thus, plaintiffs caused a complete lapse in the naming of an arbitrator under Section 5 of the FAA. The Motion exacerbates the lapse by further delaying arbitration and demanding the Court lift the stay or appoint an undesignated forum. The Court must deny the Motion and grant Defendants relief under Section 5 of the FAA which provides that where an arbitration agreement provides "a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." 9 U.S.C. § 5. But "if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator . . . or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . ., as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein." *Id.* (emphasis added.)

As is the case here, parties "fail to avail" themselves "when an arbitration agreement designates an arbitrator, or specifies a procedure for selecting an arbitrator, and one of the parties refuses to comply, thereby delaying arbitration indefinitely." *In re Salomon Inc. S'holders' Derivative Litig*., 68 F.3d 554, 560 (2d Cir. 1995) (quoting 9 U.S.C. § 5 and citing *Pac. Reinsurance*, 814 F.2d at 1327–29). "[T]he 'lapse' referred to in § 5 means 'a lapse in time in the naming of the' arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process[.]" *Id.* (quoting *Pac. Reinsurance*, 814 F.2d at 1327).

The Ninth Circuit's decision in *Pacific Reinsurance*, 814 F.2d 1324, is instructive. There, the parties agreed to arbitrate and attempted to implement a contractual arbitrator-selection method. *Id.* at 1325–26. They succeeded in appointing party arbitrators but were unable to agree on the selection of a neutral umpire. *Id.* The resulting stalemate lasted five months. *Id.* at 1326. The Ninth Circuit held that even this short impasse constituted both a failure to avail and a lapse within the meaning of Section 5, authorizing the district court to appoint the umpire and move the arbitration forward. *Id.* at 1327–29.

/ / / / /

/ / / / /

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

Here, plaintiffs' self-created year-long lapse is significantly more pronounced and egregious than in *Pacific Reinsurance* and is further exacerbated by the additional delay imposed by their specious Motion. *Id.* at 1327. For these reasons alone, the Court should deny the Motion and appoint Judge Gallo pursuant to the FAA Section 5.

B. Plaintiffs Cannot Establish Waiver of Arbitration

Plaintiffs fail to cite a single case which holds a party that obtains an order compelling arbitration, waives that right by: (a) refusing to be forced into a forum not designated by their arbitration agreement; or (b) demanding compliance with arbitrator selection provisions in that agreement. No such case exists. In fact, the law is exactly the opposite. Litigants may not obtain the result they prefer by sabotaging the process the law requires. *Gaul v. Chrysler Fin. Servs. Ams. LLC*, 657 Fed. Appx. 16, 18 (affirming the district court's denial of plaintiff's motion to lift the arbitration stay) (citing *Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S.A.*, 284 F.2d 419, 421 (2d Cir. 1960) (a party who has agreed to arbitration "should not be permitted to avoid it" by "merely running to the judge with charges so futile that they may reasonably appear to the court only a device for getting delay"); *Motorola Credit Corp. v. Uzan,* 561 F.3d 123, 129 (2d Cir. 2009) (the unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief) quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Based on these authorities, where a plaintiff's claim of delay of arbitration is due to its own repeated delays and attempts to avoid arbitration, as is the case here, plaintiff may not then use that delay as a basis to return a dispute that was compelled to arbitration back to court. *Id.*

Because there is no authority which supports a claim waiver based on the record here, plaintiffs resort to misconstruing and misapplying irrelevant cases. For example, plaintiffs rely on the inapplicable decision in *Brown v. Dillard's, Inc.* 430 F.3d 1004, 1012 (9th Cir. 2005) ("*Dillard's*") which is undermined by *Hohenshelt v. Superior Court* (2025),18 Cal. 5th 310, 335 ("*Hohenshelt*"). First, even ignoring *Hohenshelt*, *Dillard's* is inapplicable because, unlike here, the employer there did not successfully move to compel arbitration. Instead, the employer

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

refused to participate in the employee's properly initiated arbitration, forced the employee to file a lawsuit, removed the case to federal court, and then filed a motion to compel arbitration. *Dillard's, supra* at 1013. Under those inapplicable circumstances, the Ninth Circuit had "no trouble concluding that the delay and costs incurred by [the employee] are prejudicial for the purpose of waiver analysis" and affirmed denial of the employer's motion to compel arbitration. *Id.*

Not only are *Dillard's'* facts and procedural posture inapposite, its finding of waiver is undermined by *Hohenshelt* in which the California Supreme Court directed remand to the trial court for consideration of whether the employer "may be excused" and "the stay of litigation should not be lifted and the parties should be returned to arbitration, and whether the delay resulted in compensable harm to [the employee]." *Id.* at 349. The rest of plaintiffs' cases are similarly inapplicable and do not support waiver because they: (a) relate to inapplicable motions to compel arbitration; (b) have nothing to do with a Court-imposed stay pending arbitration; (c) involve unequivocal designations of arbitration forums such as the American Arbitration Association ("AAA"); (d) were overruled by the U.S. Supreme Court in favor of a stay pending arbitration; and/or (e) their waiver holding is undermined by *Hohenshelt*. See, e.g., *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023) (denial of motion to compel arbitration affirmed where employer over the course of 6 years, engaged in discovery, opposed class certification, and sought partial summary judgment before moving to compel arbitration); *Lee v. Citigroup Corp. Holdings, Inc.*, 691 F. Supp. 3d 1157, 1162 (N.D. Cal. 2023) (arbitration stay lifted based on AAA's unequivocal designation in the agreement, multiple reminders to the employer to pay AAA's fees, and closure of AAA's file per AAA rules due to the employer's failure to pay); *Rapaport v. Soffer*, No. 2:10-CV-00935-KJD-RJJ, 2011 U.S. Dist. LEXIS 51257, at *4 (D. Nev. May 12, 2011) (motion to compel arbitration denied for similar reasons); *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 760 (N.D. Cal. 2022) (motion to set aside judgment against borrower denied where JAMS or AAA

/ / / / /

/ / / / /

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

unequivocally designated even though lender had not paid fees); *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir.1990) overruled in part by *Coinbase, Inc. v. Bielski*,599 U.S. 736 (2023) (finder of waiver of arbitration reversed and case remanded to the district court to determine standing to assert right to arbitration.)

The record here establishes plaintiffs engineered delay by impermissibly initiating unauthorized arbitrations with JAMS and repeatedly bypassing the contractually mandated arbitrator selection provisions. Then, after JAMS dismissed due to the lack of contractual designation, plaintiffs did nothing for months. Despite these facts, plaintiffs now claim JAMS' predictable dismissals somehow constitute a wholesale waiver by Defendants. Plaintiffs' contentions are specious. The record concealed by plaintiffs shows Defendants proactively sought to advance arbitration by proposing neutral arbitrators and demanding the plaintiffs comply with the Arbitration Agreement. By categorically rejecting Defendants' proposals without making a single counter proposal until August 20, 2026, plaintiffs caused a complete lapse. They now ask this Court to reward them for it by lifting the stay or appointing JAMS. Given the facts, evidence, and applicable law, there is no basis for the Court to hold Defendants' conduct was inconsistent with their arbitration rights or that they waived those rights by invoking the arbitrator selection provisions. For each of the above reasons, plaintiffs' Motion should be denied.

## IV

## THE TERMS OF THE AGREEMENT GOVERN; THEREFORE, THE COURT SHOULD REJECT PLAINTIFFS' DEMAND TO APPOINT JAMS

Under the FAA and Supreme Court precedent discussed below, arbitration is strictly a matter of consent and contract. Defendants cannot be forced to arbitrate a dispute before a forum such as JAMS unless they have explicitly agreed to do so. The Arbitration Agreements here clearly contemplate mutual selection of an arbitrator. Therefore, pursuant to the FAA, the Court cannot compel Defendants to submit their dispute to JAMS and should, instead, exercise its authority to appoint Judge Gall as arbitrator.

/ / / / /

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

The FAA imposes the basic precept that arbitration is a matter of consent, not coercion. *Volt v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Therefore, the district court may not impose an arbitral forum contrary to the terms of Defendants' Arbitration Agreement, even if poorly drafted. *Id.* Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the parties' contractual rights and expectations. *Id.* The parties' intention controls, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Underscoring the consensual nature of arbitration, the Supreme Court held parties are free to structure their arbitration agreements as they see fit. *Stolt-Nielsen, SA v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010) citing *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 58 (1995); *see also AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648-649 (1986).

The Supreme Court has also held that parties may agree on rules under which any arbitration will proceed, *Volt*, *supra,* at 479. This includes choosing *who* will resolve specific disputes. *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 57, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974); *see also International Produce, Inc.* v. *A/S Rosshavet*, 638 F.2d 548, 552 (1981) ("The most sought-after arbitrators are those who are prominent and experienced members of the specific business community in which the dispute to be arbitrated arose"). Thus, it is also clear from Supreme Court precedent and the contractual nature of arbitration that parties may specify *with whom* they choose to arbitrate their disputes. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Because Arbitration Agreement clearly contemplates mutual selection of an arbitrator and does not designate JAMS as forum, plaintiffs' demand for JAMS directly contradicts the Arbitration Agreement and FAA and must be denied.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

V

NONPARTIES HAVE NO STANDING AND THEIR CLAIMS ARE TIME-BARRED; THEREFORE, THE COURT MUST DISREGARDED THEM

Plaintiffs' Motion repeatedly refers to nonparties as "FLSA opt ins" and "putative class members." Thus, plaintiffs use nonparties who did not sign the Arbitration Agreement as mechanisms to lift the arbitration stay and appoint JAMS. The Court should disregard all contentions regarding nonparties. The Court dismissed all class and collective claims, stayed the action, and compelled only the named PAGA representatives to individual arbitration. Therefore, nonparties have no standing, contractual or otherwise, to seek an order from this Court—let alone an order altering the arbitral status of named plaintiffs' individual claims. "[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, *or by any parties, that are not already covered in the agreement*" (emphasis added)); *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983). ("[A]n arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement")[3]; *Steelworkers*, *supra,* at 581 (an arbitrator has no general charter to administer justice for a community which transcends the parties agreement); accord, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, (1995) ("arbitration is simply a matter of contract *between the parties*; it is a way to resolve those disputes—but only those disputes—that the *parties* have agreed to submit to arbitration" (emphasis added)). Therefore, it falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: *to give effect to the intent of the parties*. *Volt*, 489 U.S., at 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488. (Emphasis added.)

For these and the following reasons, all contentions regarding nonparties must be disregarded.

/ / / / /

/ / / / /

[3] Superseded by statute on different grounds as stated in *Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*, 128 F.3d 504 (7 Cir., 1997).



FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

A. Nonparties Have No Stake In Plaintiffs' Individual Arbitrations; Therefore, All Contentions Regarding Nonparties Should Be Disregarded

Nonparties allegedly filed forms purporting to join a FLSA "lawsuit" about "work". However, because this Court has already dismissed all non-PAGA collective claims and ordered plaintiffs, to individual arbitration, there is nothing for nonparties to join. Moreover, nonparties did not sign the Arbitration Agreement, are not the PAGA representatives, have not satisfied PAGA's strict administrative exhaustion requirements, and their purported FLSA claims, if any, are entirely separate claims with distinct standing requirements. *See Reloj v. Gov't Emps. Ins. Co.* 2026 U.S. Dist. LEXIS 11250 **4-8 citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108 (9th Cir. 2018) and *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 583-584, 588 (9th Cir. 2022).

Thus, even ignoring that the purported "consent" forms are fatally defective as discussed at section B. below, nonparties, have no stake in the outcome of plaintiffs' individual arbitrations or standing to seek an order. In sum, pursuant to Article III standing principles routinely enforced by the Ninth Circuit, a litigant must assert their own legal rights and interests and cannot rest their claim on the legal rights or interests of third parties. *Id.* Here, nonparties have no rights or interests to assert and no standing to ask this Court for any relief, much less an order lifting the stay or appointing JAMS. For these reasons alone, nonparties are irrelevant must be disregarded.

B. Nonparties "Consent" Forms Are Fatally Defective; Therefore, Their Claims Are Time-Barred

Unlike class actions under Federal Rule of Civil Procedure 23, where unnamed individuals are passively included unless they manually opt out, the FLSA operates under a strict, statutory "opt-in" regime. Under 29 U.S.C. § 216(b):

> No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. Id. (emphasis added.)

Furthermore, 29 U.S.C. § 256 dictates that a FLSA collective action is not considered "commenced" for an individual opt-in plaintiff until a legally sufficient, signed written consent is physically filed with the court. *Campbell v. City of Los Angeles,* 903 F.3d 1090, 1100 (9th

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

Cir. 2018) *(citing* 29 U.S.C. § 216(b).) The Ninth Circuit has robustly policed this boundary, drawing a bright line between Rule 23 actions and FLSA actions. *Id.* The Ninth Circuit emphasized that an opt-in employee is an independent, standalone **"**party-plaintiff" pursuing their own separate claim. *Id.* Consequently, because an opt-in plaintiff assumes literal party status, the document establishing that status must explicitly manifest an intentional, unambiguous, legal binding intent to be a party to the exact case at hand. *Id.* For example, in *Heitmann v. City of Chicago*, the Court in granting a defense motion to strike several opt-in consent forms, stated a consent form should "clearly express the individual's consent to be a plaintiff in the lawsuit" and held that the consent forms were insufficient because they did not mention the particular lawsuit by name or number. *Heitmann v. City of Chicago* 2004 U.S. Dist. LEXIS 14669 **4-8 (2004) ("*Heitmann*"). Therefore, vague statements of generalized intent are legally meaningless. *Id.*

Here, nonparties' forms merely express consent to join *"a lawsuit about my work during the year 2021. . . ."* The forms fail to mention any Defendant, case name, number, or caption. Blank check forms like these cannot transform a legal stranger into a party to this specific case when the form does not even identify this litigation or target of the claims. *Id.* Another core procedural requirement of a collective action consent form is that the opt-in plaintiff must explicitly designate and authorize named counsel to act as their legal agents in the litigation. *Id.* Here, the forms do not mention much less empower plaintiffs' attorneys to represent them. Therefore, plaintiffs' counsel has no legal standing to bring any motion on behalf of nonparty individuals. *Id.* Each of these defects, renders each purported "consent" form fatally defective.

Because legally sufficient, signed written consents have not been filed, nonparties' claims have not commenced and are time-barred. 29 U.S.C. § 255(a) (the FLSA permits claims for unpaid wages or overtime be brought "two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . ."); *see also Campbell v. City of Los Angeles,* 903 F.3d 1090, 1100 (9th Cir. 2018) *(citing* 29 U.S.C. § 216(b).

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

VI

CONCLUSION

Plaintiffs' repeated violations of the Arbitration Agreement caused a complete lapse under Section 5 of the FAA. The Motion itself establishes this fact and that plaintiffs never had any intention of complying with the Arbitration Agreement. Incredibly, plaintiffs ask this Court to reward them for these breaches by lifting the stay or appointing JAMS. In sum, any delay in the progress of arbitration is exclusively a product of plaintiffs' procedural obstructions, gamesmanship, and refusal to comply with the Arbitration Agreement for over12 months. Because plaintiffs have consistently subverted the FAA, their arbitration agreements, and the Stay Order, and come to the Court with unclean hands, the Court must deny plaintiffs' Motion and grant relief pursuant to Section 5 of the FAA by appointing Judge Gallo.

DATED: September 29, 2026

Respectfully submitted,

FINCH, THORNTON & BAIRD, LLP

By: *<u>/s/ Marlene C. Nowlin</u>*
CHAD T. WISHCHUK
MARLENE C. NOWLIN
Attorneys for Defendants Fresh Harvest, Inc., Farm Labor Association For Growers, Inc., and SMD Logistics, Inc.
Email: mnowlin@ftblaw.com

2695.003/3VG1794.axm

CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document has been filed electronically on this 29th day of September 2026 and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

| | |
|---|---|
| Dawson Morton, Esq.<br>James Knoepp, Esq. (*Admitted Pro Hac Vice*)<br>Law Offices Of Dawson Morton<br>1808 Sixth Street<br>Berkeley, California 94710<br>Telephone: (404) 590-1295<br>Emails: dawson@dawsonmorton.com<br>jim@dawsonmorton.com | ATTORNEYS FOR PLAINTIFFS ANTONIO RUBIO-LEON, ANGEL DE JESUS ROCHA-RIVERA, DIEGO MARTINEZ-JIMENEZ, AND GERARDO LEDESMA-DELGADO |
| Jennifer Schermerhorn, Esq.<br>Scaroni Family of Companies<br>101 E. Main Street<br>Heber, California 92249<br>Telephone: (760) 909-1315<br>Email: jennifer@sfcos.com | ATTORNEYS FOR DEFENDANTS FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., AND SMD LOGISTICS, INC. |

DATED: September 29, 2026

Respectfully submitted,

FINCH, THORNTON & BAIRD, LLP

By: */s/ Marlene C. Nowlin*
CHAD T. WISHCHUK
MARLENE C. NOWLIN
Attorneys for Defendants Fresh Harvest, Inc., Farm Labor Association For Growers, Inc., and SMD Logistics, Inc.
Email: mnowlin@ftblaw.com