# EXHIBIT 1

Dawson Morton
Dawson Morton, Attorney at Law
Cal. SBN 320811
1808 Sixth Street
Berkeley, CA 94710
Ph: 404-590-1295
dawson@dawsonmorton.com

ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ANTONIO RUBIO-LEON, ANGEL DE JESUS ROCHA-RIVERA, DIEGO MARTINEZ-JIMENEZ, GERARDO LEDESMA-DELGADO and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., and SMD LOGISTICS, INC.<br><br>Defendants. | CIVIL ACT. NO.: 5:24-cv-03375<br><br>AMENDED COMPLAINT<br><br>RULE 23 CLASS<br><br>JURY TRIAL DEMANDED |

1. Plaintiffs are truck drivers employed by Defendants to transport crops over public roads to Defendants' clients packing sheds in the growing regions of California, Arizona, and Colorado.

2. Plaintiffs bring this complaint on their own behalf and on behalf of others similarly situated to assert their rights to prevailing wages and equal pay under the terms of their employment contracts, compliance with the terms of their working arrangements, pay for all hours worked at their promised wage rates including California minimum wages and liquidated damages, overtime, reimbursement of necessary expenses, lawful, accurate and complete paystubs, and waiting time penalties. Plaintiffs also assert retaliation claims under California law and their employment contract, assert claims for fraud, and assert Private Attorney General's Act and California Business and Professions Code § 17200 claims.

3. Plaintiffs Antonio Rubio-Leon, Angel de Jesus Rivera-Rocha, Diego Martinez-Jimenez and Gerardo Ledesma-Delgado were all H-2A workers brought into the United States by Defendants as truck drivers. Plaintiffs and others similarly situated were employed subject to the terms of written contracts. However, during Plaintiffs' employment, Defendants violated the written contracts and the regulations which they incorporated. Defendants' violations caused Plaintiffs and others similarly situated economic harm, including substantial lost wages, provided Defendants an unfair economic advantage over their competitors, and violated both state and federal wage and employment laws.

4. Plaintiffs brings this action to vindicate their rights and those of others similarly situated, recover their unpaid wages, penalties, interest and liquidated damages on behalf of themselves and a class of workers similarly situated and to remedy Defendants retaliatory conduct.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to:

a. 28 U.S.C. § 1331 (Federal Question);

b. 29 U.S.C. § 1337 (Interstate Commerce); and

c. 28 U.S.C. § 1367 (Supplemental).

6. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7. **Intradistrict Assignment.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and N.D. Ca. Local Rule 3.2 because a substantial part of the claims arose in the Northern District of California and because the Defendants do business in, or are based in, Monterey County.

## PARTIES

8. Plaintiff Antonio Rubio-Leon worked seasonally for Defendants in 2022 and 2023. Plaintiff Rubio-Leon's visa listed his employer as Fresh Harvest in 2022 and as Farm Labor Association in 2023.

9. Plaintiff Angel de Jesus Rocha-Rivera worked for Defendants pursuant to an H-2A visa in the 2023 season.

Case 5:24-cv-03375-PCP Document 71-5 Filed 09/26/24 Page 4 of 33

10. Plaintiff Diego Martinez-Jimenez worked for Defendants in the 2023 season as a truck driver and in prior seasons as a tractor operator.

11. Plaintiff Gerardo Ledesma-Delgado worked for Defendants as a truck driver in the 2020, 2021 and 2022 seasons. Plaintiff Ledesma-Delgado had a visa listing Fresh Harvest as his employer in 2020 and listing Farm Labor Association on his 2021 and 2022 visas.

12. Defendants petitioned for H-2A visas under the names of Farm Labor Association for Growers or Fresh Harvest but used shared employee id numbers, shared employment paperwork, and shared supervisors.

13. Plaintiffs were employed as truck drivers, a position covered by the H-2A contracts, which promised prevailing wages for this work.

14. Plaintiffs were paid less than similarly situated domestic workers for the same work in violation of the terms of the applicable H-2A contracts.

15. Defendant Fresh Harvest, Inc. is a farm labor contractor licensed by the State of California with license number FLC000187467 and licensed by the U.S. Department of Labor with license number C-09-772971-J-20-R.

16. Defendant Fresh Harvest is an Arizona corporation registered to do business in California.

17. Fresh Harvest has a principal place of business at 101 E. Main St., Heber, California.

18. Fresh Harvest may be served with process through its counsel, Rob Roy of the Ventura County Agricultural Association.

19. Fresh Harvest was informed by the United States Department of Labor on February 21, 2020 that it could not employ truck drivers at agricultural pay rates.

20. Defendant Farm Labor Association for Growers, Inc. is a California corporation it was initially formed March 30, 2020.

21. Defendant Farm Labor Association has a principal place of business at 101 E. Main St., Heber, California.

22. Defendant Fresh Harvest created Farm Labor Associations for Growers, Inc. as a mere formality.

23. Defendant Farm Labor Association is an alter-ego of Defendant Fresh Harvest.

24. Defendant Farm Labor Association has failed to register as a farm labor contractor but engages in farm labor contracting activities.

25. Defendant SMD Logistics, Inc. is an Arizona corporation registered to do business in California.

26. SMD Logistics has a mailing address of 101 E. Main St., Heber, California and its Chief Executive Officer is David Scaroni.

27. Defendant SMD Logistics is the trucking arm of Defendant Fresh Harvest.

28. Defendant SMD Logistics is, upon information and belief, primarily directed from its location at 26710 Encinal Road, Salinas, California.

29. Defendant SMD Logistics operated in concert with Defendants Fresh Harvest and Farm Labor Association.

30. Defendant SMD Logistics employees directed the actions of employees of Defendants Fresh Harvest and Farm Labor Association.

31. Defendant SMD Logistics supplied equipment operated by employees of Defendants Fresh Harvest and Farm Labor Association.

32. Upon information and belief, Defendants SMD Logistics, Fresh Harvest and Farm Labor Association formed one enterprise for employment purposes and constituted joint employers.

33. Upon information and belief, employees of Defendants SMD Logistics, Fresh Harvest and Farm Labor Association directed and assigned work to employees of the others.

34. Plaintiff Rubio-Leon was hired by employees or agents of Defendants Fresh Harvest and SMD Logistics to work pursuant to a visa for Defendant Fresh Harvest in the 2022 season.

35. Plaintiff Ledesma-Delgado was hired by employees or agents of Defendants Fresh Harvest and SMD Logistics to work pursuant to a visa for Defendant Fresh Harvest in the 2020 season.

36. Plaintiff Ledesma-Delgado was hired by employees or agents of Defendants Fresh Harvest and SMD Logistics to work pursuant to a visa for Defendant Farm Labor Association in the 2021 and 2022 seasons

37. Plaintiffs Rubio-Leon, Rocha-Rivera and Jimenez-Martinez were hired by employees or agents of Defendants Fresh Harvest and SMD Logistics to work pursuant to a visa for Defendant Farm Labor Association in the 2023 season.

38. Plaintiffs Rubio-Leon, Martinez-Jimenez, and Ledesma-Delgado had previously worked for Defendant Fresh Harvest and the same individuals were used to recruit Plaintiffs regardless of employer listed on the visa.

39. Defendants also employed domestic workers but to hide the non-agricultural nature of the truck driver positions, Defendant SMD Logistics did not directly employ the H-2A workers and solely directly employed domestic truck drivers.

DEFENDANTS' PARTICIPATION IN THE H-2A VISA PROGRAM

40. The H-2A program was created by 8 U.S.C. § 1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.185. An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).

41. Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130 (2010). The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122. The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.121(a)(2).

42. The relevant job orders were filed through the California Employment Development Department office in Salinas, Monterey County, California and through the Colorado Department of Labor and Employment and Arizona Department of Economic Security.

43. The terms and conditions of the job orders, together with the requirements of 20 C.F.R. part 655, constituted employment contracts for domestic workers and for foreign workers on H-2A visas, including Plaintiffs, and all others similarly situated. 20 C.F.R. § 655.103(b) (definition of "work contract").

44. The H-2A program, its implementing regulations, and the applicable job orders here require that foreign workers be paid "the same level of minimum benefits, wages, and working conditions which must be offered to U.S. workers[.]" 20 C.F.R. § 655.122(a).

45. The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.103(b) and contained the promise to "comply with applicable Federal, State and local law and regulations." 20 C.F.R. § 655.135(e).

46. In each applicable season, Defendant Fresh Harvest either directly or operating through its alter-ego Farm Labor Association submitted job orders to the U.S. DOL.

47. The Farm Labor Association job orders were signed by Leticia Ridaura, who also signs the job orders for Defendant Fresh Harvest.

48. On information and belief, the job orders submitted under either the company name Fresh Harvest or Farm Labor Association were prepared by employees of Defendant Fresh Harvest or its affiliated company, AgData Global.

49. In the employment contracts, the Defendants promised that each worker would earn at least the AEWR [Adverse Effect Wage Rate], the prevailing hourly or piece rate wage, or the federal or state minimum wage, whichever is higher, for all hours worked in the payroll period. In 2020 and 2021, the employment contracts also promised overtime pay to truck drivers. In 2022 and 2023, the employment contracts promised to abide by federal and applicable state law with respect to the payment of overtime pay.

50. The vehicles Plaintiffs operated were well in excess of 26 tons Gross Vehicle Weight.

51. Plaintiffs primarily operated heavy-duty trucks on state and federal roads and highways.

52. The applicable prevailing wage category for the position in which Defendants employed Plaintiffs was the Heavy and Tractor-Trailer Truck Drivers.

53. Federal regulations specify that the median wage is appropriately considered the prevailing wage. 20 C.F.R. § 655.10(b)(2).

54. During the relevant time period, the highest applicable mean wage was the wage for the Monterey-Salinas Metropolitan Statistical area.

55. For work in Colorado during the relevant time period, the highest applicable mean wage was the wage for the Eastern and Southern Colorado nonmetropolitan area.

56. For work in Arizona and Southern California during the relevant time period, the highest applicable mean wage was the wage for the El Centro Metropolitan Statistical area.

57. Defendants SMD Logistics, Fresh Harvest and Farm Labor Association sought to avoid paying the prevailing wage to truck drivers by including them within H-2A agricultural job orders for field labor positions or by claiming that the positions were actually employment by an agricultural association rather than by a labor contractor.

58. Defendants knew that the work was non-agricultural in nature for H-2A purposes because Defendants Fresh Harvest, Farm Labor Association and SMD Logistics were not growers of the crops being transported, because there was no actual agricultural association, and because the U.S. Department of Labor had so informed these Defendants that the positions did not qualify for payment of H-2A field worker wages.

59. Plaintiffs' positions and those of others similarly situated were not field labor positions, but instead were Heavy and Tractor-Trailer Truck Driver positions operating tractor-trailers on roads and highways hauling harvested vegetables to Defendants' client's cooler and produce-packing locations.

60. Defendants knew that the wages they were offering were not the appropriate prevailing wages for the work being performed and indeed offered higher wages for truck driving to U.S. workers and to H-2B workers performing the same work.

61. By participating in the H-2A program and importing workers from abroad, the Defendants are bound to abide by certain wage and payroll requirements, including those at 20 C.F.R. §§ 655.120(a), 655.122(a), 655.122(c), 655.122(j), 655.122(k), 655.122(l), and 655.103(b).

62. Upon information and belief, as part of their petition to import foreign workers, Defendant Fresh Harvest entered into contracts with Fresh Express, Taylor Farms and Organic Girl Produce to act as a labor contractor for these producers. The services of the Farm Labor Association truck drivers were included within these contracts.

ALLEGATIONS OF CLASS REPRESENTATIVE

63. Plaintiffs were offered work as truck drivers.

64. Defendants required that Plaintiffs, and others similarly situated, to obtain, at their own cost, Mexican international truck driving licenses which would allow Plaintiffs to operate Defendants' trucks in the U.S. after Defendants provided Plaintiffs with work visas.

65. Defendants also required that Plaintiffs work for Defendants' operations in Mexico prior to coming to the United States.

66. The truck driving positions in Mexico required uncompensated work beyond the scheduled work hours.

67. Defendants did not disclose to the U.S. government that work for them in Mexico was required prior to Plaintiffs' employment in the U.S.

68. The required work in Mexico rewarded Defendants and constituted an unlawful kickback to Defendants for Plaintiffs' recruitment.

69. The performance of uncompensated or undercompensated work in Mexico for Defendants reduced Plaintiffs' first week's earnings in the United States below the amounts legally required.

70. When employed in the U.S., Plaintiffs were employed as over-the-road truck drivers.

71. The paystubs Defendants prepared for truck drivers listed as their principal activity "hauling commodity" or "trucking."

72. Upon information and belief, Defendants had a separate payroll entry for hauling commodity or trucking for H-2A workers that compensated that work at a lower hourly rate than the payroll entry used by Defendants for payments to domestic workers for hauling commodity or trucking.

73. Plaintiffs and others similarly situated were promised in the written employment contract, among other things:

a. Pay for all hours worked;

b. Pay at the prevailing hourly wage if it was higher than the state or federal minimum wage or the federally mandated Adverse Effect Wage Rate;

c. Pay that was equal for domestic and foreign workers performing the same work activities;

d. A copy of the work contract;

e. No deductions that would bring wages below the highest applicable wage;

f. That a state or foreign commercial driver's license was not a prehire requirement; and

g. Payment of wages in compliance with state and federal law.

74. On information and belief, Defendants did not pay the legally required prevailing wages to any truck driver.

75. In 2020, Defendants were informed by the U.S. Department of Labor that they needed to compensate Plaintiffs and other similarly employed truck drivers at the prevailing wage rates for truck driving.

76. The prevailing wage rate for truck drivers in 2020 for the Monterey-Salinas MSA was $23.01 beginning in July of 2020.

77. The prevailing wage rate for truck drivers in 2020 for the El Centro MSA was $21.79 beginning in July of 2020.

78. The prevailing wage rate for truck drivers in 2021 for the Monterey-Salinas MSA was $23.90 beginning in July of 2021.

79. The prevailing wage rate for truck drivers in 2021 for the El Centro MSA was $23.07 beginning in July of 2021.

80. The prevailing wage rate for truck drivers in 2021 for the Eastern and Southern Colorado nonmetropolitan area was $22.34 beginning July of 2021.

81. The prevailing wage rate for truck drivers in 2022 for the Monterey-Salinas MSA was $23.66 beginning July of 2022.

82. The prevailing wage rate for drivers in 2022 for the Eastern and Southern Colorado nonmetropolitan area was $23.27 beginning July of 2022.

83. The prevailing wage rate for truck drivers in 2023 for the Monterey-Salinas MSA was $24.55 beginning July of 2023.

Case 5:24-cv-03973-PCP    Document 1-3    Filed 07/02/24    Page 11 of 33

84. Defendants knew the requirement to pay workers in corresponding employment the same wage rates for the same work.

85. Defendant Fresh Harvest marketed to prospective clients that the association member agreement was a "mere formality in order to apply for truck drivers through an authorized entity and through the H-2A contract." On information and belief, there were no actual members of the Farm Labor Association and it was entirely run and operated by members of the Scaroni family exactly as if it was part of Defendants Fresh Harvest and SMD Logistics.

86. As part of a scheme designed to avoid the payment of legally required wages, the members of Farm Labor Association shifted seasonally and, upon information and belief, the clients of Fresh Harvest were simply labeled members when they sought to hire truck drivers at H-2A agricultural worker wage rates.

87. Defendants' failure to pay workers in corresponding employment equally was a product of Defendants' scheme to avoid complying with their contractual and regulatory obligations.

88. Plaintiffs and others similarly situated were required to complete log books of their daily truck operating activities.

89. The Occupational Code for the work performed by Plaintiffs and others operating trucks for Defendants was 53-3032.00.

90. Defendant SMD Logistics offered employment for the work Plaintiffs performed at the hourly wage of $19.90 per hour to domestic workers during 2020.

91. Defendants, for work in California, paid Plaintiffs Rubio-Leon, Rocha-Rivera, and Martinez-Jimenez, and others similarly situated $18.65 per hour in 2023, the then current Adverse Effect Wage Rate for California.

92. As a result of their practice of failing to record all hours worked and failure to pay prevailing or equal wages, Defendants, without justification, did not pay wages in keeping with California wage statutes or the employment contract, and paid wages below those required by California law, the contract, and the parties' working arrangement.

93. Defendants' paystubs violated California statutory paystub requirements by failing to list the correct hourly rate and the total wages earned.

94. At all times relevant to this action, Plaintiffs and others similarly situated were not provided thirty (30) minute duty-free unpaid meal periods.

95. Defendants required that Plaintiffs and others similarly situated report meal periods that Plaintiffs and others similarly situated did not receive.

96. Defendants required that Plaintiffs report rest breaks that Defendants knew or should have known were not taken and which were not duty-free.

97. Defendant SMD Logistics required that Plaintiffs and others similarly situated complete its timesheets and log books for their time operating trucks for Defendants Fresh Harvest and Farm Labor Association.

98. Upon information and belief, Defendant SMD Logistics employees directed the work of Plaintiffs and others similarly situated even though the paystubs listed their employer as either Fresh Harvest or Farm Labor Association.

99. Supervisors of Defendant SMD Logistics had the power to hire and fire employees of Defendants Farm Labor Association and Fresh Harvest.

100. SMD Logistics also issued employment paperwork to Plaintiffs.

101. Supervisors of Defendant SMD Logistics exercised their power to hire and fire employees of Defendants Farm Labor Association and Fresh Harvest.

**CLASS ACTION ALLEGATIONS**

102. **Proposed Class.** Plaintiffs brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

All individuals employed by Defendants between June 5, 2020 and the date of judgment in this matter at work sites in California, Arizona or Colorado in a truck driver or tractor-trailer driver position.

103. There is a well-defined community of interest in the litigation and the class is ascertainable.

104. **Numerosity:** The Plaintiff Class is so numerous such that the individual joinder of all members is impractical. While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs believe that the class consists of more than 40 individual employees. The names and addresses of the Class Members are available from Defendants. Notice can be provided to the Class

Members via mail, Facebook, WhatsApp, radio and postings using techniques and a form of notice similar to those customarily used in agricultural class action lawsuits of this nature.

105. **Typicality:** Plaintiffs' claims are typical of the claims of each class they seek to represent in that they arise from Defendants' failure to conform their wage and hour practices to the requirements of federal law, the H-2A contract and H-2A program regulations, the prevailing wage requirements contractually offered, and the overtime contractually promised, resulting in injury to Plaintiffs and the other putative class members.

106. **Common Questions Predominate**: The questions raised by this Complaint are of common or general interest to the members of the Plaintiff Class, who have a well-defined community of interest in the questions of law and fact raised in this action. Common questions of law and fact exist as to all members of the Plaintiff Class and predominate over any questions that affect only individual members of the Class. The common questions of law and fact applicable to the classes include, but are not limited to:

a. Whether the Defendants paid the median prevailing wage, as determined by U.S. Department of Labor data, for the position of Heavy and Tractor-Trailer Truck Driver;

b. Whether the Defendants' pay practices, including those of failing to record compensable waiting and on-call time, violated the H-2A contract and program regulations, state law, the California Labor Code, and the Wage Order;

c. Whether the Defendants paid the wages promised in the employment contract, as required by H-2A program regulations, and applicable state law;

d. Whether the Defendants recorded and compensated the Plaintiff Class for all hours of work as required by the employment contracts or by California Labor Code §§ 1182.11-1182.13, and 1197, and California Wage Orders;

e. Whether the Defendants failed to pay all members of the Plaintiff Class their full wages when due in violation of applicable law;

f. Whether, through the unlawful conduct herein alleged, the Defendants violated Cal. Business and Professions Code § 17200 et seq.;

g. Whether the Defendants are liable as joint employers for the actions perpetrated against the Plaintiff Class;

h. Whether Defendants retaliated against Plaintiffs and other truck drivers;

i. What relief is necessary to remedy Defendants' unfair and unlawful conduct as herein alleged; and,

j. Other common questions of law and fact.

107. **Adequacy of Plaintiffs as Class Representatives.** Plaintiffs Rubio-Leon, Rocha-Rivera, Martinez-Jimenez and Ledesma-Delgado can adequately and fairly represent the interests of the Plaintiff Class as defined above because their individual interests are consistent with, not antagonistic to, the interests of the class. Further, Plaintiffs have no actual or potential conflict with any member of the class.

108. **Adequacy of Counsel for the Class.** Counsel for Plaintiffs possesses the requisite resources and ability to prosecute this case as a class action and is an experienced labor and employment attorney who has successfully litigated other cases involving similar issues.

109. **Propriety of Class Action Mechanism.** Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members of each Class. Defendants have implemented a scheme that is generally applicable to the Plaintiff Class, making it appropriate to issue relief, including injunctive relief and corresponding declaratory relief with respect to the Plaintiff Class. In particular, the violations of law perpetrated against all Class Members in this case revolve around the application and interpretation of the H-2A contract, overtime pay, and the interpretation of prevailing wage requirements. Similarly, the Defendants' liability as joint employers is based on actions taken with regard to the Plaintiff Class as a whole.

110. The Plaintiff Class has been injured and is entitled to recover from Defendants for wrongful conduct and injuries. Class treatment will allow those similarly-situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Further, the prosecution of separate actions against Defendants by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of

conduct for Defendants. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

**FIRST CLAIM FOR RELIEF – FAIR LABOR STANDARDS ACT**

Violation of the Fair Labor Standards Act ("FLSA") Minimum Wage

(29 U.S.C. §§ 206 *et seq.*)

111. Plaintiffs incorporate paragraphs 8-101, and 102-110 of this Complaint by reference as though fully set forth herein.

112. Plaintiff Rubio-Leon and Ledesma-Delgado assert this claim for the 2022 season pursuant to 29 U.S.C. § 206(a).

113. Plaintiffs Rubio-Leon, Rocha-Rivera and Martinez-Jimenez asserts this claim for the 2023 season.

114. This count is brought as a collective action pursuant to 29 U.S.C. § 216(b) against Defendants Fresh Harvest, Farm Labor Association for Growers, and SMD Logistics.

115. Defendants required Plaintiffs to obtain, at their own cost, truck driving licenses for use internationally.

116. Plaintiffs, in order to satisfy Defendants' prehire requirements for truck drivers, incurred costs in Mexico to qualify for and obtain the international driver's license which Defendants required.

117. Plaintiffs incurred license fees, medical exam fees, and training fees.

118. These license costs, including associated medical exam fees, incurred by Plaintiffs exceeded $600 dollars and when deducted from Plaintiffs' first week's wages reduced their earning below the applicable federal minimum wage.

119. The license fees and associated exam costs were expenses necessitated by Defendants and were for Defendants' primary benefit.

120. Plaintiffs also were required to provide Defendants placement fees by performing work for Defendants in Mexico without adequate and legal compensation.

121. The placement fees provided through Plaintiffs' labor also reduced Plaintiffs' first-week earnings below the applicable federal minimum wage.

122. Because of these unreimbursed expenses and placement fees, Plaintiffs did not receive their first week's wages free and clear as required by the Fair Labor Standards Act.

123. Defendants paid Plaintiffs through electronic payment cards which charged administrative fees for access to Plaintiffs' wages.

124. These fees further reduced Plaintiffs' wages by charging Plaintiffs fees deducted from their wages to access cash or transfer their wages to family members.

125. The violations of the FLSA resulted from the costs, fees and placement expenses described above which Plaintiffs and others similarly situated incurred primarily for the benefit or convenience of Defendants prior to their first week of work. When these expenses were subtracted from the Plaintiffs' and others similarly situated first week's pay, as required by law, their earnings fell below the required minimum hourly wage for the workweek.

126. Defendants' violations as set forth in this Count were willful within the meaning of the FLSA as Defendants had knowledge of their FLSA obligations, including the obligation to reimburse costs incurred for their benefit, and Defendants failed to comply with those obligations.

127. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and similarly situated opt-in plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations without earning an average of the applicable minimum wage for all hours worked.

128. Plaintiffs also seek their reasonable attorneys' fees and cost of court pursuant to 29 U.S.C. § 216(b).

## **<u>SECOND CLAIM FOR RELIEF</u>**

California Minimum Wage

129. Pursuant to Rule 23(b)(3), all Plaintiffs brings this as a class claim and allege that Defendants' actions violated their rights and the rights of other similarly situated individuals to receive the minimum wage required by California Law.

130. As described above in paragraph 63 through 93, Defendants did not pay the minimum promised wages to Plaintiffs and the Plaintiff Class.

Case 5:24-cv-03973-PCP Document 21-5 Filed 07/02/24 Page 16 of 32

131. Because Plaintiffs and others similarly situated had been promised a higher minimum wage, namely the prevailing wage for their job activity, this claim asserts a minimum wage claim based on the higher hourly minimum promised Plaintiffs and others similarly situated.

132. As a result of Defendants' failure to comply with the aforementioned portions of the California Labor Code, Plaintiffs and members of the Plaintiff Class have been deprived of wages due them in amounts to be proven at trial and are also owed liquidated damages for violations of their right to the required minimum wage.

133. Pursuant to Cal. Labor Code § 1194(a), Plaintiffs seek to recover the unpaid balance for all uncompensated hours, and reasonable attorneys' fees and costs. Pursuant to Cal. Labor § 1194.2, Plaintiffs also seek to recover liquidated damages.

## **THIRD CLAIM FOR RELIEF**

Failure to Pay Overtime Wages

(California Labor Code § 1194 and Contract)

134. Plaintiffs incorporate the allegations in paragraphs 8 to 110.

135. Plaintiffs brings this claim pursuant to California Labor Code § 1194 and California contract law on behalf of themselves and a class of other workers, pursuant to Federal Rule 23(b)(3), and allege that Defendants have violated California overtime requirements and their promise to pay overtime by failing to accurately record and pay overtime wages for work performed.

136. Defendants contractually promised through the applicable H-2A job orders, which formed written employment contracts, that overtime wages would be paid to truck drivers as detailed above in paragraph 49.

137. Defendants failed to pay Plaintiffs and the Plaintiff Class overtime wages in the amount of one and a half times the legally required regular rate for all overtime hours worked in each workday as required by California Labor Code § 1194, California Wage Orders and the contractual promises.

138. Specifically, Defendants SMD Logistics, Fresh Harvest and Fresh Foods failed to accurately record and compensate their truck drivers at the legally required prevailing wage for all compensable hours, as detailed in paragraphs 74 through 92.

139. Plaintiffs and the other class members did not receive the legally required premium pay for all overtime hours worked as a result of the underreporting of hours and the underpayment of Plaintiffs' regular rate.

140. As a direct and proximate result of the acts and/or omissions of the Defendants, Plaintiffs and the class have been deprived of overtime wages due and are entitled to recover their unpaid wages.

141. Plaintiffs and the class seek the relief described below, including damages in the amount equal to unpaid overtime hours (at the premium rate of 150% of the prevailing hourly wage), pre- and post-judgment interest, and attorney's fees and costs pursuant to Cal. Labor Code § 1194.

**FOURTH CLAIM FOR RELIEF**

Failure to Reimburse Business Expenses

(Cal. Lab. Code § 2802 – Rule 23 Class Count)

142. Plaintiffs incorporate paragraphs 8-93, 94-101, and 102-110 of this Complaint by reference as though fully set forth herein.

143. Plaintiffs bring this Fifth Claim against Defendant Fresh Harvest, SMD Logistics and Farm Labor Association of Growers pursuant to California Labor Code § 2802 to enforce the cost-shifting provisions of the California Labor Code and the contractual promise to provide it. This count is brought as a Rule 23 class claim for the 2023 season.

144. Defendants, through the filing of job orders which covered the employment of Plaintiffs and other similarly situated workers, promised to comply with all "Federal and State . . . employment-related laws" which at the time of the submission of the job orders at issue included a promise to provide rest breaks in compliance with California law as detailed in this Count.

145. Applicable Wage Orders impose an affirmative obligation on employers to permit and authorize employees to take required uninterrupted rest breaks at a rate of no less than ten (10) minutes for each four (4) hour work period, or major fraction thereof, that must be in the middle of each work period insofar as is practicable.

146. California Labor Code § 226.7 and Section 12(C) of the California Wage Orders require employers to pay non-exempt employees an additional hour of premium wages at the employee's regular rate of compensation on each workday that the employee is not provided with a rest break.

147. Defendants did not authorize and did not permit Plaintiffs and others similarly situated to take uninterrupted rest breaks of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, and failed to pay premium wages in lieu of providing lawful rest breaks on such workdays.

148. At all times relevant to this action, Defendants have maintained policies and practices with respect to employee scheduling and rest breaks that have failed to authorize and/or reasonably permit Plaintiffs and the Class from being relieved of all duties for an uninterrupted rest break of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, and which fail to pay them premium wages on workdays in which they are not provided lawful rest breaks.

149. As a result of Defendants' rest break practices, Plaintiffs and the Class are entitled to receive premium wage compensation in an amount equal to one hour of additional wages at the applicable contractual rate of pay for each workday that Defendants failed to provide Plaintiffs lawful rest breaks pursuant to their contractual promise and Labor Code § 226.7.

150. As such, Plaintiffs seek, on behalf of themselves and others similarly situated, premium wages, interest thereon, and an award of reasonable costs.

**FIFTH CLAIM FOR RELIEF**

Breach of Employment Contract

(Common Law - Rule 23 Class Count)

151. Plaintiffs incorporate paragraphs 8-110 of this Complaint by reference as though fully set forth herein.

152. This Count sets forth a claim against all Defendants.

153. Plaintiffs bring this Sixth Claim against all Defendants for Defendants' breach of the H-2A employment contracts.

154. This count is brought as a Rule 23 class claim for Defendants failure to pay the higher of the contractually promised wage rate, the prevailing wage, or the state or federal minimum wage for all

compensable hours worked under the terms of the H-2A order for Plaintiffs, H-2A truck drivers employed by Defendants, and those domestic workers in corresponding employment.

155. At all times relevant to this action, Plaintiffs and others similarly situated, including H-2A visa-holding truck drivers and domestic truck drivers employed by Defendants, were employed under the terms and conditions contained in the H-2A job orders described in paragraphs 41 to 62.

156. These uniform employment contracts promised Plaintiffs and others similarly situated the applicable prevailing wage.

157. The uniform employment contracts also promised overtime wages as detailed above in paragraph 49.

158. The uniform employment contracts also promised that Defendants would comply with the H-2A program regulations, including the regulatory promise to not retaliate against H-2A workers as detailed in 20 C.F.R. § 655.135(h).

159. The uniform employment contracts further promised that Defendants would not require any free labor, wage concession, or in-kind or monetary payment as a recruitment fee as detailed in governing regulation, 20 C.F.R. § 655.135(j).

160. The prevailing wage applicable for truck driving was in excess of $20 per hour during all applicable time periods.

161. Defendants also contractually promised to pay domestic and foreign worker equally.

162. Defendants also contractually promised to not require in-kind payments or collections of fees as a condition of recruitment for foreign workers.

163. Defendants did not provide the same wages and employment benefits to foreign and domestic truck drivers.

164. Plaintiffs and others similarly situated performed on their relevant employment contracts.

165. Defendants failed to pay all compensable hours worked at the contractually-promised wage rates.

166. Defendants' breach of the uniform employment contracts occurred in part because Defendants failed to pay the contractually promised prevailing hourly compensation.

167. Defendants' breach of the uniform employment contracts also occurred in part because Defendants failed to pay overtime wages owed.

168. Defendants also breached the uniform employment contracts by requiring Plaintiffs and other similarly situated H-2A workers, as a condition of obtaining an H-2A visa to work for Defendants, to perform work that was uncompensated or inadequately compensated in Mexico for Defendants' related corporate entity.

169. Defendants also threatened and discriminated against Plaintiffs and others similarly situated because they had exercised their rights afforded them under the H-2A program including complaining about Defendants failure to pay prevailing wages for truck driving.

170. As a direct and proximate result of Defendants' actions as described above Plaintiffs and the Class have been deprived of contractually promised wages and benefits due, have lost employment, and are entitled to recover the amounts due.

**SIXTH CLAIM FOR RELIEF**

Failure to Furnish Accurate Itemized Wage Statements

(Cal. Lab. Code § 226 – Rule 23 Class Count)

171. Plaintiffs incorporate paragraphs 8 through 110 of this Complaint by reference as though fully set forth herein.

172. Plaintiffs Rubio-Leon, Rocha-Rivera, Martinez-Jimenez bring Count Six against Defendants Fresh Harvest, SMD Logistics and Fresh Foods pursuant to California Labor Code § 226 to enforce the wage statement provisions of the California Labor Code.

173. This count is brought as a Rule 23 class claim.

174. At all times relevant to this action, the wage statements provided by Defendants to Plaintiffs and the Class failed to contain the information required by California Labor Code §§ 226 and 226.2.

175. Defendants furnished wage statements that lacked the following information:

a. Accurate total hours worked;

b. Hourly rates in effect during the pay period;

c. All deductions from wages;

d. Name and address of the entity that secured the services of Defendants during the pay period; and

e. Accurate gross and net wages earned.

176. By failing to pay Plaintiffs and others similarly situated the promised minimum wages owed, overtime wages owed, and by failing to list deductions taken to access wages, Defendants have furnished Plaintiffs and others similarly situated with itemized wage statements that do not accurately reflect, among other things, gross and net wages earned, all deductions, and the applicable hourly wage rates.

177. At all times relevant to this action, Defendants have furnished Plaintiffs and others similarly situated with inaccurate itemized wage statements during pay periods in which Plaintiffs and others similarly situated were compensated at wages rates that were not the prevailing wage rate promised and owed to truck drivers.

178. At all times relevant to this action, Defendants' failure to provide accurate itemized wage statements has been knowing and intentional, in that Defendants have had the ability to provide accurate itemized wage statements, but have instead knowingly and intentionally provided inaccurate wage statements as a result of policies and practices that failed to keep accurate records of all hours worked, the total amount of minimum and premium wages owed, all applicable rates of pay, all deductions taken from wages, and the name and address of the entity to whom Defendants Fresh Harvest, SMD Logistics and Farm Labor Association had contracted to provide their services.

179. At all times relevant to this action, Plaintiffs and the Class have suffered injuries due to Defendants' failure to provide accurate itemized wage statements in that, among other things, their legal rights to receive accurate itemized wage statements have been violated, they have been misled about the amounts of wages they should have earned, they have had to spend additional time reviewing and analyzing their pay records, they have been prevented from immediately challenging allegedly unlawful pay practices, they have needed or will need to reconstruct time and pay records and perform mathematical computations to determine the amounts of wages they have legally earned or the legally applicable rates of pay, and/or have had inaccurate information about their wages and deductions submitted to government agencies.

180. Pursuant to California Labor Code § 226(e), Plaintiffs seeks to recover, on behalf of themselves and the Class, the greater of actual damages or $50 for the initial pay period in which a violation occurred, the greater of actual damages or $100 for each violation in a subsequent pay period, up to the greater of actual damages or an aggregate $4,000 penalty per Class Member, as well as awards of reasonable attorneys' fees and costs, all in amounts subject to proof.

181. Plaintiffs also seek an injunction to require Defendants compliance with their wage statement obligations and to bar Defendants from further such violations.

**SEVENTH CLAIM FOR RELIEF**

California's Unfair Competition Law ("UCL")

(Cal. Bus. & Prof. Code §§ 17200 *et seq.* – Rule 23 Class Count)

182. Plaintiffs incorporate paragraphs 8 through 101 and 102 through 110 of this Complaint by reference as though fully set forth herein.

183. Plaintiffs hereby bring this Seventh Claim against Defendants pursuant to California Business & Professions Code §§ 17200 *et seq.* to enforce the provisions prohibiting unlawful and/or unfair business practices of the California Business & Professions Code.

184. California Business and Professions Code §§ 17200 *et seq.* defines "unfair competition" to include any unlawful business practice.

185. Plaintiffs sue on behalf of themselves and others similarly situated pursuant to California Business and Professions Code §§ 17200 *et seq.*

186. Plaintiffs and others similarly situated suffered injury-in-fact and have lost money as a result of Defendants' unfair competition alleged herein.

187. Plaintiffs and others similarly situated were not paid minimum and overtime wages as required by the California Labor Code; Plaintiffs and others similarly situated were not indemnified for necessary business expenditures, in violation of California Labor Code § 2802; and Plaintiffs and others similarly situated were not provided accurate itemized wage statements in violation of California Labor Code § 226.

188. Pursuant to California Business and Professions Code § 17203, Plaintiffs seek, on behalf of themselves and others similarly situated, restitution of all moneys and property, including, but not

limited to, earned minimum and premium wages that Defendants either acquired, and/or may have acquired, from them by means of unfair competition in amounts subject to proof at trial.

189. On information and belief, at all times relevant to this action, Defendants have either acquired, or may have acquired, money or property in the form of earned minimum wages and premium wages from Plaintiffs and members of the Class by means of unfair competition as a result of Defendants' unlawful failure to pay them those wages, and related failures to maintain accurate records, indemnify for necessary business expenditures, or timely pay final wages at resignation or termination, in violation of the requirements of the California Labor Code. Defendants, by the acts or omissions alleged of herein, have injured and are injuring the interests of the general public in that other employers who have been or currently are employing truck drivers and attempting to do so in honest compliance with applicable wage and hour laws, including the laws violated by Defendants, are at an unfair competitive disadvantage as a result of Defendants' conduct.

190. As such, Plaintiffs seek, on behalf of themselves and others similarly situated, an injunction restraining Defendants from maintaining and enforcing the unfair and/or unlawful practices and policies that have resulted in the violations complained of herein, restitution of Plaintiffs and the Class' wages, and the economic value of benefits unlawfully denied them by Defendants.

191. In addition, because Plaintiffs are enforcing important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5, they seek payment of attorneys' fees and costs.

## <u>EIGHTH CLAIM FOR RELIEF</u>

Waiting Time Penalties for Failure to Pay All Wages Due

(Cal. Labor Code § 203)

192. Plaintiffs incorporate by reference the allegations in paragraphs 1 to 110.

193. This count sets forth a claim against all Defendants.

194. Pursuant to Cal. Labor Code § 203, Plaintiffs bring this claim on behalf of themselves and the class, pursuant to Rule 23(b)(3), for all Defendants' failure to pay all outstanding wages due upon separation from employment.

195. When seasonal employment comes to an end, California law requires an employer

immediately pay all wages owed, which in no event can be a period greater than 72 hours.

196. When a worker is terminated, California law requires an employer immediately pay all wages owed, which cannot be later than 24 hours from the time of termination.

197. Where an employer fails to comply with Cal. Labor Code §§ 201, the affected employee is entitled to receive a penalty in the amount of one day's wages for every day that their employer willfully denies this final payment of wages, up to a maximum of 30 days.

198. The Defendants did not pay Plaintiffs or similarly situated class members all their wages owed, including payment for all hours worked, minimum wages, overtime premium pay, and their contractually promised wages.

199. Plaintiffs and others similarly situated did not receive these wages in their last paycheck upon the seasonal end of their employment, nor upon their involuntary termination, with the Defendants.

200. By failing to compensate Plaintiffs, and similarly situated members of the Plaintiff Class who have quit, been discharged, or whose employment has seasonally ended during the relevant statutory period as required by the California Labor Code and the applicable wage order, Defendants have willfully failed to make timely payment of the full wages due to their former employees in violation of Cal. Labor Code § 201.

201. Pursuant to Cal. Labor Code § 203, Plaintiffs and members of the Plaintiff Class who have quit, been discharged, or whose employment has seasonally ended are entitled to waiting time penalties of up to 30 days' wages per person.

## NINTH CLAIM FOR RELIEF

Civil Penalties under the Private Attorneys' General Act

(Cal. Labor Code § 2698)

202. This Count asserts a violation of the California Private Attorneys' General Act ("PAGA").

203. Plaintiffs Rubio-Leon and Rocha-Rivera bring this Ninth Claim against Defendants pursuant to California Labor Code § 2698 *et seq.* to enforce California's Private Attorney Generals' Act. This count is brought as a representative PAGA claim.

204. PAGA permits individuals to recover civil penalties on behalf of themselves and other current or former employees for violations of California's Labor Code pursuant to § 2699(a).

205. On March 30, 2024, Plaintiffs gave written notice of the facts and theories regarding Defendants' violations of the various provisions of the California Labor Code protecting truck drivers, like Plaintiffs, as alleged in this complaint to the LWDA via online filing and to Defendants by certified mail.

206. An amended PAGA notice, which included details of the alleged retaliatory actions, was provided to the LWDA via online filing and to the Defendants by certified mail on May 3, 2024.

207. Plaintiffs are aggrieved employees as defined in California Labor Code section 2699(a). They bring this cause of action on behalf themselves, the State of California, and other former aggrieved truck drivers employed by Defendants as hourly commercial drivers, excluding bus drivers, who operated over-the-road highway vehicles in excess of 26,000 gross vehicle weight in California with respect to the violations Plaintiffs and aggrieved employees experienced as alleged in this complaint.

208. Plaintiffs have complied with the pre-filing requirements set forth in California Labor Code § 2699.3 by giving written notice to the LWDA and the employer(s)—by certified mail with return receipt requested—of the alleged California Labor Code and Wage Order violations and the specific facts and theories in support thereof.

209. As described in this complaint and in Plaintiffs' LWDA notice, Plaintiffs allege that Defendants violated the following provisions of the California Labor Code with respect to their employment of Plaintiffs and similarly aggrieved truck drivers: sections 1197 and 1197.1 for failing to compensate for all hours worked; sections 204, 1194, 1194.2 and 1198 for failure to pay overtime wages; sections 226.7 for failing to comply with the meal period and rest break requirements, and failing to pay premium wages in lieu of unprovided meal period and/or rest breaks; sections 226 and 226.3 for providing inaccurate wage statements; section 2800 and 2802 for failure to reimburse business expenses; and sections 201, 202 and 203 for failing to timely pay all wages owed to former employees.

Case 5:24-cv-03973-EKL Document 71-5 Filed 07/22/24 Page 27 of 33

210. As a consequence of the actions described in this Complaint, Defendants have violated the rights of Plaintiffs and the rights of others employed by Defendants as hourly commercial drivers, excluding bus drivers, who operated over-the-road highway vehicles in excess of 26,000 gross vehicle weight in California. Defendants are therefore liable for PAGA penalties for violations of the California Labor Code as described in this Complaint.

211. Defendants are liable for civil penalties for their failure to compensate for all hours worked, pursuant to California Labor Code §§ 1197 and 1197.1.

212. Defendants are liable for civil penalties for violating the meal period and rest break requirements of California Labor Code § 226.7.

213. Defendants are liable for civil penalties for failing to provide accurate wage statements pursuant to California Labor Code §§ 226 and 226.3.

214. PAGA permits Plaintiffs to recover civil penalties on behalf of themselves, the State of California and other current or former aggrieved employees, plus attorneys' fees, interest, and costs for violations of the Labor Code. Cal. Labor Code §§ 2699 *et seq.*

215. As such, Plaintiffs seek civil penalties, interest thereon, and awards of reasonable costs and attorney's fees on behalf of themselves, the State of California and others employed by Defendants as hourly commercial drivers for the applicable PAGA statutory period from the present going back to December 10, 2022.

**TENTH CLAIM FOR RELIEF**

Retaliation Under California Law

(Cal. Labor Code § 98.6)

216. Plaintiffs Rubio-Leon, Rocha-Rivera and Jimenez-Martinez assert this count for Defendants' retaliation in violation of California Labor Code § 98.6.

217. During the 2023 season, Plaintiffs asserted their rights to be lawfully paid for time worked.

218. Defendants held a meeting with all H-2A truck drivers in which they instructed that drivers were causing problems and that there would be no work in the coming season because of the problems.

219. Defendants also held a private meeting with Plaintiffs Rubio-Leon, Rocha-Rivera, and Martinez-Jimenez in which they asked them to release their claims and informed them that there would be no further work for them if they refused.

220. The private meeting with Plaintiffs occurred at the office of SMD Logistics in Salinas California on October 27, 2023.

221. This meeting was within 90 days of those Plaintiffs' protected activity.

222. At the meeting on October 27, 2023, Plaintiffs Rubio-Leon, Rocha-Rivera, and Martinez-Jimenez were threatened with adverse actions including termination, replacement with southern Mexicans, and the loss of future employment.

223. Defendants in fact did deny Plaintiffs Rubio-Leon, Rocha-Rivera, and Martinez-Jimenez and others similarly situated future employment by refusing to list them for visas or hire them at Defendants location in Mexico and subsequently refusing to rehire them for U.S. employment.

224. Defendants actions were in violation of California Labor Code § 98.6.

225. Plaintiffs seek civil money penalties and lost wages and benefits for Defendants' retaliatory conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and relief as follows:

a) That the Court assume supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367;

b) That the Court certify the class and subclasses defined herein;

c) For an order appointing Plaintiffs as class representatives, and Plaintiffs' Counsel as class counsel;

d) Under Count One:

1. Declare that Defendants have willfully violated the FLSA as specified in Count I above:

2. Declare this action to be a maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216 and allow employees to opt into this action;

3. Grant judgment against Defendants Fresh Harvest, Farm Labor Association for

Growers, and SMD Logistics, jointly and severally, and in favor of each plaintiff and opt-in plaintiff in the amount of their respective unpaid wages plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b); and

4. Award Plaintiffs their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

e) Under Count Two:

1. Grant judgment against Defendants, jointly and severally during their respective years as employers, and in favor of Plaintiffs and the Class, for violations of California Labor Code §§ 1182.11-1182.13, and 1197, such that:

i. Plaintiffs and the Class receive the full unpaid balance of their wages owed, as well as liquidated damages in the amount of their wage loss, during the Class Period for the violation of their right to minimum wages pursuant to California Labor Code §§ 1194, 1194.2 and 1197.

ii. Plaintiffs receive appropriate injunctive relief, including an order requiring Defendants to comply with California's minimum wage requirements.

2. Award Plaintiffs and the Class attorneys' fees and costs pursuant to California Labor Code § 1194(a).

f) Under Count Three:

1. Grant judgment against Defendants, jointly and severally, and in favor of Plaintiff and the Class, for violations of California Labor Code § 1194 such that:

i. Plaintiffs and the Class receive the full unpaid balance of their premium wages owed during the Class Period.

ii. Plaintiffs receive appropriate injunctive relief, including an order requiring Defendants to comply with California's overtime requirements.

2. Award Plaintiffs and the Class attorneys' fees and costs pursuant to California Labor Code § 1194(a).

g) Under Count Four:

1. Grant judgment against Defendants Fresh Harvest, SMD Logistics and Farm Labor Association, jointly and severally, and in favor of Plaintiff and the California sub-class, for

violations of California Labor Code § 2802 and the applicable employment contracts such that:

i) Find that Plaintiffs incurred expenses due to their obedience to the directions of Defendants;

ii) Award Plaintiffs and the California sub-class the full amount of such expenditures during the Class Period, including the costs Plaintiffs incurred in Mexico at Defendants' direction;

iii) Award Plaintiffs and the California sub-class interest from the date the employee incurred the expenditure or loss; and

iv) Award Plaintiffs' their reasonable costs and attorneys' fees pursuant to Cal Labor Code § 2802(c);

h) Under Count Five:

1. Grant judgment against Defendants, jointly and severally, and in favor of Plaintiffs and the Class, for breach of contract such that:

i) Find Defendants breached the contracts as detailed in Plaintiffs' complaint;

ii) Find that Defendants failed to pay H-2A worker drivers the prevailing wage for truck driving, nor wages equal to those paid domestic drivers;

iii) Order that Plaintiffs and the Class receive the wages they were entitled to under the applicable contracts for each hour they worked.

i) Under Count Six:

1. Grant judgment against Defendants Fresh Harvest, SMD Logistics, and Farm Labor Association, jointly and severally, and in favor of Plaintiffs Rubio-Leon, Rocha-Rivera and Martinez-Jimenez, and the Class, for violation of California Labor Code § 226 such that:

i) Plaintiffs and the Class receive the greater of their actual damages or $50 for the initial pay period in which a wage statement violation occurred, the greater of actual damages or $100 for each wage statement violation in a subsequent pay period, up to the greater of actual damages or an aggregate $4,000 penalty.

ii) Plaintiffs receive appropriate injunctive relief, including an order requiring

Defendants to comply with California's wage statement requirements; and

2. Award Plaintiffs attorneys' fees and costs pursuant to California Labor Code §§ 226(e) and 226(h).

j) Under Count Seven:

1. Grant judgment against Defendants, jointly and severally, and in favor of Plaintiff and the Class, for violations of California Business & Professions Code §§ 17200 *et seq.* such that:

i) Plaintiffs and the Class receive all wages that they were unlawfully deprived of due to Defendants' unfair business practices.

ii) Plaintiffs and the Class recover wages as equitable relief for a period that extends the statute of limitations or recovery period for wages to four (4) years.

2. For declaratory judgment that the actions, conduct, and practices of Defendants complained of herein constitute unfair business practices under California Business & Professions Code §§ 17200 *et seq.*

3. For an injunction and order permanently restraining and enjoining Defendants from engaging in and continuing the unlawful and/or unfair policies and practices complained of herein.

4. Award attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5, as the Plaintiff is enforcing an important right affecting the public interest.

k) Under Count Eight:

1. Grant judgement against Defendants, jointly and severally, and in favor of Plaintiffs and the Plaintiff Class for failure to pay all outstanding wages due upon separation from employment in violation of Cal. Labor Code § 203; and
2. Award Plaintiffs and the Plaintiff Class the amount of one day's wages, up to a maximum of 30 day's wages, per employee who was terminated or left their employment with Defendants without timely receiving all outstanding wages due to them on each such termination or separation of employment; and

l) Under Count Nine, grant judgment against Defendants, jointly and severally and in favor of

Plaintiffs Rubio-Leon and Rocha-Rivera and the similarly aggrieved truck drivers, for violations of California Labor Code §§ 2699 *et seq.* such that:

i) Plaintiffs and the similarly situated receive civil penalties payable to the State of California, Plaintiffs, and other aggrieved truck drivers employed by Defendants as hourly commercial drivers in California for each violation of the California Labor Code as described in this Complaint, including, penalties under California Labor Code §§ 201-203, 204, 226, 226.3, 1194, 1194.2, 1197, 1197.1, 1198, 2699(f) and 2698 *et seq.*

1. Find that Plaintiffs are aggrieved employees within the meaning of California Labor Code §§ 2699 *et seq.*;

2. Award Plaintiffs attorneys' fees and costs pursuant to California Labor Code § 2699(g).

m) Under Count Ten, grant judgment against Defendants, jointly and severally and in favor of Plaintiffs Rubio-Leon, Rocha-Rivera, and Martinez-Jimenez for violation of California Labor Code § 98.6:

i. Award Plaintiffs liquidated damages in the amount of $10,000 each,

ii. Award Plaintiffs their lost wages and benefits as shall be proven,

iii. Award such other relief as the Court deems just.

n) Awarding Plaintiffs and the Class pre-judgment interest of ten percent (10%) on the unpaid wages and compensation owed to Plaintiff and the Class under California Civil Code §§ 3287(a) and 3289(b), California Labor Code §§ 218.6, 1194 and 2802(b), and/or any other applicable provision providing for interest;

o) Granting declaratory relief as appropriate;

p) Casting all costs upon Defendants; and

q) Awarding any such other and further relief, at law or in equity, as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

226. Plaintiffs demands trial by jury on claims so triable.

DATED: July 26, 2024

By: /s/ Dawson Morton

DAWSON MORTON, ATTORNEY
1808 Sixth Street
Berkeley, CA 94710
Ph: 404-590-1295
dawson@dawsonmorton.com

Attorney for Plaintiffs