# EXHIBIT 26

JENNIFER M. SCHERMERHORN, SBN 225070
EMAIL: jennifer@sfcos.com
**SCARONI FAMILY OF COMPANIES**
101 EAST MAIN STREET
HEBER, CALIFORNIA 92249
TELEPHONE: (760) 592-2258

CHAD T. WISHCHUK, SBN 214779
EMAIL: cwishchuk@ftblaw.com
MARLENE C. NOWLIN, SBN 156457
EMAIL: mnowlin@ftblaw.com
**FINCH, THORNTON & BAIRD, LLP**
ATTORNEYS AT LAW
4747 EXECUTIVE DRIVE – SUITE 700
SAN DIEGO, CALIFORNIA 92121-3107
TELEPHONE: (858) 737-3100
FACSIMILE: (858) 737-3101

Attorneys for Defendants Fresh Harvest, Inc., Farm Labor Association For Growers, Inc., and SMD Logistics, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTONIO RUBIO-LEON, ANGEL DE JESUS ROCHA-RIVERA, DIEGO MARTINEZ-JIMENEZ, GERARDO LEDESMA-DELGADO and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., and SMD LOGISTICS, INC.,<br><br>Defendant. | CASE NO: 5:24-cv-03375-EKL<br><br>DECLARATION OF JENNIFER M. SCHERMERHORN IN SUPPORT OF DEFENDANTS FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., AND SMD LOGISTICS, INC.'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY PAGA REPRESENTATIVE CLAIMS, AND FOR AN IMMEDIATE STAY PENDING THE RULING ON THIS MOTION<br><br>Assigned to:<br>District Judge:<br>Hon. Eumi K. Lee, Courtroom 7<br>Magistrate Judge:<br>Hon. Nathanael M. Cousins, Courtroom 5<br><br>Date: January 8, 2025<br>Time: 10:00 a.m.<br>Dept.: Courtroom 7<br><br>Complaint Filed: June 4, 2024<br>Trial Date: Not Set |

I, Jennifer M. Schermerhorn, declare as follows:

1. I am an attorney admitted to practice before this court and all courts of the State of California and an attorney of record in this case for Defendants Fresh Harvest, Inc. ("Fresh Harvest"), Farm Labor Association for Growers, Inc. ("FLAG"), and SMD Logistics, Inc. ("SMD") ("Defendants"). I am Vice President of Human Resources & General Counsel of Scaroni Family of Companies which includes FLAG, Fresh Harvest, and SMD. I am one of the attorneys primarily responsible for representing Defendants in this action I make this declaration in support of Defendants' Motion To Compel Arbitration, Dismiss Class Claims, And Dismiss Or Stay PAGA Representative Claims ("Motion"). I am a duly authorized custodian of the records and documents attached to this declaration and, unless otherwise stated, have obtained these records from Defendants' files. I am familiar with the manner and procedures by which the records and documents contained in Defendants' files are prepared and maintained. Those documents and records are prepared or maintained by Defendants' agents or employees in the performance of their regular business duties. Those documents and records are made either by persons with knowledge of the matters they record or from information supplied by persons with such knowledge. It is Defendants' regular business practice to maintain such documents and records in the normal course of its business. The documents attached to and referenced in this declaration are business records produced and maintained in this manner. The facts set forth in this declaration are based on my personal knowledge and on my review of Defendants' files, and if called as a witness, I could and would competently testify to them.

2. On April 5, 2024, I began the meet and confer process by sending plaintiffs' counsel, Dawson Morton, copies of the Arbitration Agreement signed by plaintiffs Antonio Rubio-Leon ("Leon"), Angel De Jesus Rocha-Rivera ("Rivera"), Diego Martinez-Jimenez ("Jimenez"), and Gerardo Ledesma-

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

Delgado ("Delgado") ("Arbitration Agreement") along with a letter requesting arbitration of plaintiffs' claims against Defendants on an individual basis, dismissal of putative class claims, and a stipulated stay of PAGA representative claims pending arbitration. Attached to this declaration as Exhibit 1 is a true and correct copy of my letter and enclosed Arbitration Agreement which I emailed to Mr. Morton on April 5, 2024.

3. On April 26, 2024, Mr. Morton responded to my April 5, 2024 letter indicating the Arbitration Agreement appears invalid and unenforceable. To date, Mr. Morton has not provided an explanation or basis for his position. Attached to this declaration as Exhibit 2 is a true and correct copy of Mr. Morton's email I received on April 26, 2024.

4. Defendants were not served with the complaint in this action until July 31, 2024, the date they received plaintiffs' First Amended Complaint ("FAC"). A true and correct copy of the FAC is attached to this declaration as Exhibit 3 (See Docket No. 15.)

5. Thereafter, I experienced a medical condition that required major surgery. I am not yet fully recovered from my recent surgery. On September 6, 2024, Defendants' assistant general counsel withdrew from this case. (See Docket No. 37.) These medical and staffing issues impacted Defendants' ability to comply with deadlines in this case. Therefore, I engaged in meet and confer efforts with Mr. Morton regarding extensions of deadlines during which I reiterated Defendants' position that individual arbitration is required and that the class and PAGA representative action is waived by plaintiffs. An example of my continued meet and confer efforts is attached as Exhibit 4 hereto which is a true and correct copy of my email and enclosed Stipulation to Continue Pending Discovery Deadline to Exchange Initial Disclosures which I emailed to Mr. Morton on September 9, 2024.

/ / / / /



FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

6. On September 10, 2024, Mr. Morton responded to my September 9, 2024 email by stating he does not agree to individual arbitration in this case. Attached to this declaration as Exhibit 5 is a true and correct copy of Mr. Morton's email I received on September 10, 2024.

7. On September 16, 2024, my office associated outside counsel, Chad T. Wishchuk and Marlene C. Nowlin of Finch, Thornton, & Baird, as co-defense counsel in this case. (See Docket Nos. 40 and 41.) Attached to this declaration as Exhibit 6 is a true and correct copy of my email to Mr. Morton which I sent on September 16, 2024, notifying him of Defendants' association of counsel.

8. To date, plaintiffs have failed and refused to honor their obligations under the Arbitration Agreement. No discovery has been completed yet in this case, and initial disclosures have not been exchanged.

9. I reviewed the concurrently filed declarations of Matt Scaroni and translator, Jesús Rosa García ("Translator"). True and correct copies of the Arbitration Agreement signed by plaintiffs in Spanish which I provided to co-defense counsel, Marlene C. Nowlin, are attached to the Scaroni and Translator declarations, as Exhibits 1, 3, 5, and 7.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of September 2024, at Sacramento, California.

/s/ *Jennifer M. Schermerhorn*
JENNIFER M. SCHERMERHORN

2695.003/3RS9499.axm

FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document has been filed electronically on this 24th day of September 2024 and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

| | |
|---|---|
| Dawson Morton, Esq.<br>James Knoepp, Esq. (*Admitted Pro Hac Vice*)<br>Law Offices Of Dawson Morton<br>1808 Sixth Street<br>Berkeley, California 94710<br>Telephone: (404) 590-1295<br>Emails: dawson@dawsonmorton.com<br>jim@dawsonmorton.com | ATTORNEYS FOR PLAINTIFFS ANTONIO RUBIO-LEON, ANGEL DE JESUS ROCHA-RIVERA, DIEGO MARTINEZ-JIMENEZ, AND GERARDO LEDESMA-DELGADO |
| Jennifer Schermerhorn, Esq.<br>Scaroni Family of Companies<br>101 E. Main Street<br>Heber, California 92249<br>Telephone: (760) 909-1315<br>Email: jennifer@sfcos.com | ATTORNEYS FOR DEFENDANTS FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., AND SMD LOGISTICS, INC. |

DATED: September 24, 2024

Respectfully submitted,

FINCH, THORNTON & BAIRD, LLP

By: */s/ Marlene C. Nowlin*
CHAD T. WISHCHUK
MARLENE C. NOWLIN
Attorneys for Defendants Fresh Harvest, Inc., Farm Labor Association For Growers, Inc., and SMD Logistics, Inc.
E-mail: mnowlin@ftblaw.com

# EXHIBIT 1

SFC SCARONI FAMILY of COMPANIES

**Jennifer Schermerhorn <jennifer@sfcos.com>**

# In Re Demand for Arbitration | Rubio-Leon v. FLAG, et al.

**Jennifer Schermerhorn** <jennifer@sfcos.com> Fri, Apr 5, 2024 at 5:39 PM
To: dawson@dawsonmorton.com

Dear Mr. Morton,

Please find attached correspondence from our office.

We look forward to hearing from you.

All the best,

***Jennifer M. Schermerhorn, Esq.***
VP of Human Resources & General Counsel
jennifer@sfcos.com
Mobile +1 (760) 909-1315
Work +1 (760) 592-2258

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

SFC SCARONI FAMILY of COMPANIES www.sfcos.com CELEBRATING 40 Years OF BUSINESS
VALLEY HARVESTING & PACKING - FRESH HARVEST - SMD LOGISTICS
HARVEST TEK - ALPHA SITE LOGISTICS - LATITUDE 42 FARMS

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

**3 attachments**

**4 5 In Re Arbitration.pdf**
231K

Case 5:24-cv-03075-EKL Document 45-8 Filed 09/24/24 Page 9 of 168

**ARBITRATION - ROCHA RIVERA, ANGEL DE JESUS (2).pdf**
321K

**ARBITRATION-RUBIO LEON, ANTONIO.pdf**
309K

**Farm Labor Association for Growers, Inc., Fresh Harvest, Inc., and SMD Logistics, Inc.**
101 E. Main Street, Heber, CA 92249

**April 5, 2024**

VIA EMAIL ONLY
Dawson Morton
1808 Sixth Street
Berkeley CA 94710
dawson@dawsonmorton.com

**Re: Rubio-Leon/Rocha Rivera v. FLAG/FHI/SMD In re Arbitration**

Dear Mr. Morton,

My name is Jennifer Schermehorn, I am General Counsel and represent Farm Labor Association for Growers, Inc., Fresh Harvest, Inc., and SMD Logistics, Inc. We are in receipt of the notice dated March 30, 2024, which includes both class action claims and a claim under the Private Attorneys General Act ("PAGA"). This letter is a demand to your clients Antonio Rubio-Leon and Angel de Jesus Rocha-Rivera that they submit their employment related disputes to binding arbitration pursuant to their agreements entered on May 8, 2023 and April 17, 2023, attached hereto. These agreements are consistent with the policies and practices of the companies, which enter into such agreements with each of its employees.

This letter serves as an effort that your clients enforce arbitration agreements that apply to their claims.

The arbitration agreement contains an enforceable class action waiver to the extent permitted by law. *See* Ex. A at 3. As you are undoubtedly aware, well-established law holds that class action waivers in employment arbitration agreements are enforceable. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018); *see also Franco v. Arakelian Enterprises, Inc.*, 234 Cal. App. 4th 947, 955-57 (2015) (class action waivers obtained as a condition of employment are enforceable under the FAA).

Further, the arbitration agreement contains a waiver for PAGA claims to the extent permitted by law that provides for individual arbitration only. *See* Ex. A at 3-4. As a result, Plaintiff must arbitrate her PAGA cause of action on an individual basis. *See Viking River Cruises v. Moriana*, 142 S. Ct. 1906, 1923-25 (2022). Pursuant to *Adolph v. Uber Technologies, Inc.*, 14 Cal. 4th 1104 (Cal. 2023), the trial should stay any PAGA representative claim pursuant to Code of Civil Procedure section 1281.4 until completion of the individual arbitration because, if the arbitrator determines that Plaintiff did not suffer any Labor Code violations and therefore is not an "aggrieved employee", then the subsequent confirmation of that arbitration award

**Farm Labor Association for Growers, Inc., Fresh Harvest, Inc., and SMD Logistics, Inc.**
101 E. Main Street, Heber, CA 92249

and judgment would mean that Plaintiff "could no longer prosecute [her] non-individual claims due to lack of standing." *Id.* At 1124.

Moreover, the arbitration agreement states that any PAGA representative action that is allowed to proceed in court "will be stayed pending completion of arbitration of any arbitrable claims." Arbitration agreements must be enforced according to their terms. *See Epic Systems*, 138 S. Ct. at 1619; *see also American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) ("consistent with [the FAA's] text, courts must 'rigorously enforce' arbitration agreements according to their terms").

Therefore, your clients should arbitrate all of their claims and stay her PAGA representative claim pending completion of the arbitration. Please confirm that your clients will honor their arbitration agreements by April 26th, 2024.

Thank you for your attention to this matter.

Very truly yours,

DocuSigned by:
Jennifer Schermerhorn
61022E706C3D44A...

Jennifer M. Schermerhorn
General Counsel

Cc: VIA EMAIL ONLY
Dawson Morton, Esq.(dawson@dawsonmorton.com )

JMS: Enclosure

# F.L.A.G.

## Farm Labor Association for Growers

F.L.A.G. P.O.BOX 104 HEBER, CA 92249 (760) 352-2200

### ACUERDO DE ARBITRAJE OPCIONAL

Todas y cada una de las disputas, controversias o reclamaciones que no se resuelvan de acuerdo con los procedimientos anteriores y que surjan de este manual de empleo o se relacionen con él, su empleo o la terminación de su empleo pueden resolverse mediante arbitraje vinculante ante un árbitro imparcial, a menos que lo prohíba lo contrario o la ley aplicable. Esta disposición puede aplicarse a todas y cada una de las disputas, controversias o reclamaciones, ya sea que el empleado las presente individualmente contra la Compañía y/o contra cualquier empleado, funcionario, presunto agente, director o afiliado de la Compañía con respecto a cualquier asunto que surja de su empleo o la terminación de su empleo (antes de la contratación hasta después de la terminación), que incluye, entre otros, cualquier cumplimiento o incumplimiento de este manual de empleo o cualquier supuesto acuerdo de empleo, y/o cualquier reclamo o controversia que surja de la relación (o la naturaleza de la relación) o el comienzo o terminación de esa relación, incluidos, entre otros, reclamos por violación de un estatuto estatal o federal y/o por incumplimiento de convenio, incumplimiento de un convenio implícito de buena fe y equidad de trato, rescisión indebida, incumplimiento de contrato o imposición intencional de angustia emocional, difamación, violación del derecho a la privacidad, interferencia con ventajas o contratos y relaciones, conspiración u otros reclamos de responsabilidad civil de cualquier tipo. Reclamaciones por discriminación, acoso y/o represalias que surjan bajo el Título VII de la Ley Federal de Derechos Civiles de 1964, en su forma enmendada, Sección 42 U.S.C. secciones 2000(e) et. sec. y la Ley de Equidad en el Empleo y la Vivienda de California, las secciones 12940-12950 del Código de Gobierno de California, inclusive, el Código Laboral de California y la Ley de Discriminación por Edad en el Empleo, 29 U.S.C. artículo 623, están sujetos a las disposiciones de este procedimiento de arbitraje. No obstante, lo anterior, nada en este Acuerdo prohibirá que un Empleado que alegue una conducta que constituya una disputa por acoso sexual o una disputa por agresión sexual, o el representante designado de una clase o en una acción colectiva que alegue dicha conducta, elija participar en el arbitraje o elegir presentar un caso bajo la ley federal, tribal o estatal que se relacione con los reclamos de agresión sexual y acoso sexual. Este Acuerdo de arbitraje se aplica a las reclamaciones aplicables que existen o pueden existir antes de la fecha de este Acuerdo o enmienda a este Acuerdo. Las disposiciones de arbitraje de este Acuerdo proporcionarán el recurso exclusivo y, al leer y firmar este Acuerdo, cada parte renuncia expresamente a cualquier derecho que pueda tener para buscar reparación en cualquier otro foro, incluido un juicio por jurado. Este procedimiento no cubre las reclamaciones de seguro de compensación para trabajadores o beneficios de compensación por desempleo. No se impedirá que el empleado presente un cargo administrativo ante una agencia administrativa estatal o federal apropiada con el fin, entre otros, de satisfacer cualquier requisito de agotamiento de los recursos administrativos antes de invocar este proceso obligatorio; buscar remedios que no sean específicos para las víctimas; para permitir que una agencia administrativa presente su propia demanda en busca de remedios legales que no estén disponibles de otro modo en el procedimiento de arbitraje o según lo exija la ley. Los empleados están expresamente excluidos de presentar o participar en cualquier reclamo conjunto, de clase, representativo o colectivo que aborde sus salarios, horas u otros términos o condiciones de su empleo contra el empleador en cualquier foro, ya sea arbitral o judicial. Esta renuncia incluye reclamos de PAGA en la medida permitida por la ley.

Dicho arbitraje se llevará a cabo de acuerdo con las reglas de la asociación o servicio de arbitraje del que se seleccione al árbitro (por ejemplo, Asociación Estadounidense de Arbitraje, JAMS, ARS, etc.) y se regirá por la Ley Federal de Arbitraje [9 U.S.C. Sección 2, et seq.] Si el empleo existe en California, las Secciones 1280, et seq. del Código de Procedimiento Civil de California. También regirá dicho arbitraje en la medida en que la ley de California no sea contradictoria con la ley federal aplicable ni la anula.

El arbitraje se llevará a cabo en un lugar que las partes acuerden mutuamente. A falta de acuerdo, el árbitro determinará el lugar.

El árbitro deberá proporcionar a cualquiera de las partes suficiente tiempo y acceso a los testigos, la documentación y los registros de las partes para realizar un descubrimiento adecuado antes del inicio del procedimiento.

Cualquier reclamo que cualquiera de las partes tenga contra la otra parte que pueda ser presentado para resolución de conformidad con este párrafo debe ser presentado por escrito por la parte reclamante a la otra de acuerdo con los estatutos de limitación estatales o federales aplicables.

En el caso de que cualquiera de las partes sostenga que las acciones de la otra parte están causando daños por los cuales los daños monetarios serían inadecuados, puede solicitar una orden judicial presentando a la Oficina del Servicio

Federal de Mediación y Conciliación en San Francisco una declaración bajo pena de perjurio estableciendo expone los hechos

que dan lugar a su pretensión. Dicha de ación se entregará a la otra parte personalm e o por Express Mail, Federal Express u otro servicio similar, con acuse de recibo. Si las partes no pueden ponerse de acuerdo sobre un árbitro neutral dentro de los 10 días, el Servicio Federal de Mediación y Conciliación está autorizado a seleccionar un árbitro neutral que deberá celebrar una audiencia dentro de los 10 días de su elección.

La carga de la prueba recaerá en todo momento sobre la parte que solicita la reparación. Al determinar cualquier asunto, el árbitro aplicará todas las leyes estatutarias y consuetudinarias federales, estatales y locales aplicables a la disputa. El arbitraje se llevará a cabo de conformidad con las reglas de arbitraje del Código de Procedimiento Civil de California, a partir de la Sección 1280, y se aplicarán las Reglas de Evidencia de California. El árbitro tendrá la autoridad exclusive para resolver cualquier disputa relacionada con la interpretación, aplicabilidad, exigibilidad o formación del Manual del Empleado y esta disposición.

La Compañía pagará el costo del árbitro neutral y de una transcripción de cualquier procedimiento de arbitraje. Una vez que el Empleado complete todos los requisitos de presentación necesarios para iniciar un arbitraje, el árbitro proporcionará una factura con vencimiento no menor a treinta (30) días por los honorarios y costos. Cada parte sufragará los gastos de los testigos que llame.

Cualquier decisión y laudo u orden del árbitro se hará por escrito y será final y vinculante entre las partes en cuanto a todos los reclamos, que fueron o podrían haber sido presentados en relación con la disputa en la mayor medida permitida por la ley. La decisión del árbitro será final y estará sujeta a revisión judicial sólo según lo dispuesto por la Ley de Arbitraje de California (Código de Procedimiento Civil, Sección 1285, et. seq.).

Si es necesario algún litigio para hacer cumplir los términos de este Acuerdo de arbitraje, o si se inicia alguna acción legal, aunque esté prohibida, con respecto a este Manual de empleo, la parte vencedora tendrá derecho a los honorarios razonables de los abogados además de cualquier otra compensación a que pueda tener derecho.

En el caso de que una o más de las disposiciones contenidas en el presente se considerarán ilegales o inaplicables por cualquier motivo, dicha ilegalidad o inaplicabilidad no afectará a ninguna otra disposición, y los procedimientos establecidos en el presente se interpretarán como si tales disposiciones inaplicables o ilegales disposición no había sido contenida aquí.

He leído, comprendo y acepto los términos de este Acuerdo.

Fecha: 8/5/2022

DocuSigned by:

Por: Matt Scaroni

F354810553C445E...

Representante del empleador

Matt Scaroni, President

Empleador Nombre Impreso, Titulo

Fecha: 05/09/2023

Por:

Antonio

Firma de Empleado

Antonio Rubio Leon

Nombre impreso del empleado

Tijuana B.C Mexico

Ubicación al momento de firmar

# F.L.A.G.

F.L.A.G. P.O.BOX 104 HEBER, CA 92249 (760) 352-2200

## Póliza de Acuerdo de Arbitraje Opcional

**En general:** El Acuerdo de arbitraje opcional de la Compañía se establece en su totalidad en el Manual de la empresa y también se adjunta a su manual, como un documento separado, reconociendo que comprende y acepta los términos del Acuerdo de arbitraje. Este documento explica una serie de disposiciones en el Acuerdo de Arbitraje que se proporciona como una opción para resolver ciertas disputas a todos los empleados.

### Las pólizas detrás del Acuerdo de arbitraje son:

- Incentivar a los empleados para que discutan, reportar e informar de inmediato a la Compañía sobre cualquier inquietud, problema, controversia y/o reclamo que surja de la relación laboral, de modo que puedan ser atendidos de inmediato;
- Establecer comunicación abierta y resolución informal de los problemas;
- Apoyar a una fuerza de trabajo comprometida e informada que acepta la diversidad y desalienta la adversidad;
- Para proteger los derechos individuales y crear un foro abierto para escuchar y abordar quejas y preocupaciones;
- Para eliminar cualquier renuencia a reportar problemas, peligros y/o conducta o preocupaciones de comportamiento,
- Promover el arbitraje y la mediación rápidos, en lugar de un litigio, de los reclamos de los empleados que surjan de su relación laboral o la terminación del empleo.

### El Acuerdo de Arbitraje será:

- Brindar una resolución más rápida de reclamos de empleados, como discriminación laboral, acoso o represalias; cualquier reclamo presentado por el Empleado relacionado con salarios y condiciones de trabajo; incumplimiento del contrato de trabajo o del pacto implícito de buena fe y trato justo; descarga indebida; o mala conducta (ya sea intencional o negligente), incluida la difamación, la tergiversación, el fraude y la imposición de estrés emocional. Pará verificar que el Empleado y la Compañía comprendan y acuerden que renuncian a su derecho a presentar dichos reclamos ante una corte, incluido el derecho a un juicio por un jurado, y para presentar demandas colectivas;
- Permite que el Empleado opte por renunciar al arbitraje y presentar un caso conforme a la ley federal, tribal o estatal en relación con un reclamo de agresión sexual o acoso sexual.
- Para verificar que el Empleado y la Compañía entiendan y acepten que están renunciando a su derecho a presentar dichos reclamos ante un tribunal, incluido el derecho a un juicio por jurado, y a presentar reclamos de demanda colectiva;
- Aceptar que el procedimiento de arbitraje será conducido por un árbitro neutral de acuerdo con las Reglas Nacionales para la Resolución de Disputas Laborales emitidas por la Asociación Estadounidense de Arbitraje. La Compañía pagará los honorarios del árbitro por el procedimiento, así como los cargos por la transcripción de la audiencia.
- El árbitro neutral tendrá la autoridad para otorgar salarios atrasados, intereses y daños aplicables y honorarios de abogados, al igual que si el caso fuera litigado en la corte.
- El empleado sigue teniendo derecho a ser representado por un abogado de su elección ya su propio costo;
- El árbitro emitirá una decisión por escrito y su decisión sólo puede ser apelada de acuerdo con la ley aplicable.

Cada parte del Acuerdo de Arbitraje Opcional entiende que el Acuerdo de Arbitraje Opcional no cambia la relación laboral "a voluntad" entre las partes ni debe interpretarse como que implica la existencia de un contrato de trabajo por un término definido. El empleo "a voluntad" permanece en pleno vigor y efecto. Establece que, en cualquier momento, por cualquier motivo, con o sin causa, o con o sin aviso, el empleado o el empleador puede rescindir el empleo a su propia discreción.

Acuso recibo de este documento en la fecha abajo escrita.

Antonio Rubio Leon
Nombre del Empleado

H14839
Número de Empleado

Antonio
Firma Del Empleado

05/08/2023
Fecha

T. Juana B.C Mexico
Ubicación al momento de firmar

# F.L.A.G.

## Farm Labor Association for Growers

F.L.A.G. P.O.BOX 104 HEBER, CA 92249 (760) 352-2200

## ACUERDO DE ARBITRAJE OPCIONAL

Todas y cada una de las disputas, controversias o reclamaciones que no se resuelvan de acuerdo con los procedimientos anteriores y que surjan de este manual de empleo o se relacionen con él, su empleo o la terminación de su empleo pueden resolverse mediante arbitraje vinculante ante un árbitro imparcial, a menos que lo prohíba lo contrario o la ley aplicable. Esta disposición puede aplicarse a todas y cada una de las disputas, controversias o reclamaciones, ya sea que el empleado las presente individualmente contra la Compañía y/o contra cualquier empleado, funcionario, presunto agente, director o afiliado de la Compañía con respecto a cualquier asunto que surja de su empleo o la terminación de su empleo (antes de la contratación hasta después de la terminación), que incluye, entre otros, cualquier cumplimiento o incumplimiento de este manual de empleo o cualquier supuesto acuerdo de empleo, y/o cualquier reclamo o controversia que surja de la relación (o la naturaleza de la relación) o el comienzo o terminación de esa relación, incluidos, entre otros, reclamos por violación de un estatuto estatal o federal y/o por incumplimiento de convenio, incumplimiento de un convenio implícito de buena fe y equidad de trato, rescisión indebida, incumplimiento de contrato o imposición intencional de angustia emocional, difamación, violación del derecho a la privacidad, interferencia con ventajas o contratos y relaciones, conspiración u otros reclamos de responsabilidad civil de cualquier tipo. Reclamaciones por discriminación, acoso y/o represalias que surjan bajo el Título VII de la Ley Federal de Derechos Civiles de 1964, en su forma enmendada, Sección 42 U.S.C. secciones 2000(e) et. sec. y la Ley de Equidad en el Empleo y la Vivienda de California, las secciones 12940-12950 del Código de Gobierno de California, inclusive, el Código Laboral de California y la Ley de Discriminación por Edad en el Empleo, 29 U.S.C. artículo 623, están sujetos a las disposiciones de este procedimiento de arbitraje. No obstante, lo anterior, nada en este Acuerdo prohibirá que un Empleado que alegue una conducta que constituya una disputa por acoso sexual o una disputa por agresión sexual, o el representante designado de una clase o en una acción colectiva que alegue dicha conducta, elija participar en el arbitraje o elegir presentar un caso bajo la ley federal, tribal o estatal que se relacione con los reclamos de agresión sexual y acoso sexual. Este Acuerdo de arbitraje se aplica a las reclamaciones aplicables que existen o pueden existir antes de la fecha de este Acuerdo o enmienda a este Acuerdo. Las disposiciones de arbitraje de este Acuerdo proporcionarán el recurso exclusivo y, al leer y firmar este Acuerdo, cada parte renuncia expresamente a cualquier derecho que pueda tener para buscar reparación en cualquier otro foro, incluido un juicio por jurado. Este procedimiento no cubre las reclamaciones de seguro de compensación para trabajadores o beneficios de compensación por desempleo. No se impedirá que el empleado presente un cargo administrativo ante una agencia administrativa estatal o federal apropiada con el fin, entre otros, de satisfacer cualquier requisito de agotamiento de los recursos administrativos antes de invocar este proceso obligatorio; buscar remedios que no sean específicos para las víctimas; para permitir que una agencia administrativa presente su propia demanda en busca de remedios legales que no estén disponibles de otro modo en el procedimiento de arbitraje o según lo exija la ley. Los empleados están expresamente excluidos de presentar o participar en cualquier reclamo conjunto, de clase, representativo o colectivo que aborde sus salarios, horas u otros términos o condiciones de su empleo contra el empleador en cualquier foro, ya sea arbitral o judicial. Esta renuncia incluye reclamos de PAGA en la medida permitida por la ley.

Dicho arbitraje se llevará a cabo de acuerdo con las reglas de la asociación o servicio de arbitraje del que se seleccione al árbitro (por ejemplo, Asociación Estadounidense de Arbitraje, JAMS, ARS, etc.) y se regirá por la Ley Federal de Arbitraje [9 U.S.C. Sección 2, et seq.] Si el empleo existe en California, las Secciones 1280, et seq. del Código de Procedimiento Civil de California. También regirá dicho arbitraje en la medida en que la ley de California no sea contradictoria con la ley federal aplicable ni la anula.

El arbitraje se llevará a cabo en un lugar que las partes acuerden mutuamente. A falta de acuerdo, el árbitro determinará el lugar.

El árbitro deberá proporcionar a cualquiera de las partes suficiente tiempo y acceso a los testigos, la documentación y los registros de las partes para realizar un descubrimiento adecuado antes del inicio del procedimiento.

Cualquier reclamo que cualquiera de las partes tenga contra la otra parte que pueda ser presentado para resolución de conformidad con este párrafo debe ser presentado por escrito por la parte reclamante a la otra de acuerdo con los estatutos de limitación estatales o federales aplicables.

En el caso de que cualquiera de las partes sostenga que las acciones de la otra parte están causando daños por los cuales los daños monetarios serian inadecuados, puede solicitar una orden judicial presentando a la Oficina del Servicio

Federal de Mediación y Conciliación en San Francisco una declaración bajo pena de perjurio estableciendo expone los hechos

que dan lugar a su pretensión. Dicha d[illegible]ación se entregará a la otra parte personalmente o por Express Mail, Federal Express u otro servicio similar, con acuse de recibo. Si las partes no pueden ponerse de acuerdo sobre un árbitro neutral dentro de los 10 días, el Servicio Federal de Mediación y Conciliación está autorizado a seleccionar un árbitro neutral que deberá celebrar una audiencia dentro de los 10 días de su elección.

La carga de la prueba recaerá en todo momento sobre la parte que solicita la reparación. Al determinar cualquier asunto, el árbitro aplicará todas las leyes estatutarias y consuetudinarias federales, estatales y locales aplicables a la disputa. El arbitraje se llevará a cabo de conformidad con las reglas de arbitraje del Código de Procedimiento Civil de California, a partir de la Sección 1280, y se aplicarán las Reglas de Evidencia de California. El árbitro tendrá la autoridad exclusive para resolver cualquier disputa relacionada con la interpretación, aplicabilidad, exigibilidad o formación del Manual del Empleado y esta disposición.

La Compañía pagará el costo del árbitro neutral y de una transcripción de cualquier procedimiento de arbitraje. Una vez que el Empleado complete todos los requisitos de presentación necesarios para iniciar un arbitraje, el árbitro proporcionará una factura con vencimiento no menor a treinta (30) días por los honorarios y costos. Cada parte sufragará los gastos de los testigos que llame.

Cualquier decisión y laudo u orden del árbitro se hará por escrito y será final y vinculante entre las partes en cuanto a todos los reclamos, que fueron o podrían haber sido presentados en relación con la disputa en la mayor medida permitida por la ley. La decisión del árbitro será final y estará sujeta a revisión judicial sólo según lo dispuesto por la Ley de Arbitraje de California (Código de Procedimiento Civil, Sección 1285, et. seq.).

Si es necesario algún litigio para hacer cumplir los términos de este Acuerdo de arbitraje, o si se inicia alguna acción legal, aunque esté prohibida, con respecto a este Manual de empleo, la parte vencedora tendrá derecho a los honorarios razonables de los abogados además de cualquier otra compensación a que pueda tener derecho.

En el caso de que una o más de las disposiciones contenidas en el presente se considerarán ilegales o inaplicables por cualquier motivo, dicha ilegalidad o inaplicabilidad no afectará a ninguna otra disposición, y los procedimientos establecidos en el presente se interpretarán como si tales disposiciones inaplicables o ilegales disposición no había sido contenida aquí.

He leído, comprendo y acepto los términos de este Acuerdo.

Fecha: 8/5/2022

Por: DocuSigned by: Matt Scaroni

F95401D55C0C40E...

Representante del empleador

Matt Scaroni, President

Empleador Nombre Impreso, Titulo

Fecha: 04/17/2023

Por: Angel Rocha

Firma de Empleado

Angel de Jesús Rocha Rivera

Nombre impreso del empleado

Tijuana, B.C., México

Ubicación al momento de firmar

# F.L.A.G.

F.L.A.G. P.O.BOX 104 HEBER, CA 92249 (760) 352-2200

## Póliza de Acuerdo de Arbitraje Opcional

**En general:** El Acuerdo de arbitraje opcional de la Compañía se establece en su totalidad en el Manual de la empresa y también se adjunta a su manual, como un documento separado, reconociendo que comprende y acepta los términos del Acuerdo de arbitraje. Este documento explica una serie de disposiciones en el Acuerdo de Arbitraje que se proporciona como una opción para resolver ciertas disputas a todos los empleados.

### Las pólizas detrás del Acuerdo de arbitraje son:

- Incentivar a los empleados para que discutan, reportar e informar de inmediato a la Compañía sobre cualquier inquietud, problema, controversia y/o reclamo que surja de la relación laboral, de modo que puedan ser atendidos de inmediato;
- Establecer comunicación abierta y resolución informal de los problemas;
- Apoyar a una fuerza de trabajo comprometida e informada que acepta la diversidad y desalienta la adversidad;
- Para proteger los derechos individuales y crear un foro abierto para escuchar y abordar quejas y preocupaciones;
- Para eliminar cualquier renuencia a reportar problemas, peligros y/o conducta o preocupaciones de comportamiento,
- Promover el arbitraje y la mediación rápidos, en lugar de un litigio, de los reclamos de los empleados que surjan de su relación laboral o la terminación del empleo.

### El Acuerdo de Arbitraje será:

- Brindar una resolución más rápida de reclamos de empleados, como discriminación laboral, acoso o represalias; cualquier reclamo presentado por el Empleado relacionado con salarios y condiciones de trabajo; incumplimiento del contrato de trabajo o del pacto implícito de buena fe y trato justo; descarga indebida; o mala conducta (ya sea intencional o negligente), incluida la difamación, la tergiversación, el fraude y la imposición de estrés emocional. Pará verificar que el Empleado y la Compañía comprendan y acuerden que renuncian a su derecho a presentar dichos reclamos ante una corte, incluido el derecho a un juicio por un jurado, y para presentar demandas colectivas;
- Permite que el Empleado opte por renunciar al arbitraje y presentar un caso conforme a la ley federal, tribal o estatal en relación con un reclamo de agresión sexual o acoso sexual.
- Para verificar que el Empleado y la Compañía entiendan y acepten que están renunciando a su derecho a presentar dichos reclamos ante un tribunal, incluido el derecho a un juicio por jurado, y a presentar reclamos de demanda colectiva;
- Aceptar que el procedimiento de arbitraje será conducido por un árbitro neutral de acuerdo con las Reglas Nacionales para la Resolución de Disputas Laborales emitidas por la Asociación Estadounidense de Arbitraje. La Compañía pagará los honorarios del árbitro por el procedimiento, así como los cargos por la transcripción de la audiencia.
- El árbitro neutral tendrá la autoridad para otorgar salarios atrasados, intereses y daños aplicables y honorarios de abogados, al igual que si el caso fuera litigado en la corte.
- El empleado sigue teniendo derecho a ser representado por un abogado de su elección ya su propio costo;
- El árbitro emitirá una decisión por escrito y su decisión sólo puede ser apelada de acuerdo con la ley aplicable.

Cada parte del Acuerdo de Arbitraje Opcional entiende que el Acuerdo de Arbitraje Opcional no cambia la relación laboral "a voluntad" entre las partes ni debe interpretarse como que implica la existencia de un contrato de trabajo por un término definido. El empleo "a voluntad" permanece en pleno vigor y efecto. Establece que, en cualquier momento, por cualquier motivo, con o sin causa, o con o sin aviso, el empleado o el empleador puede rescindir el empleo a su propia discreción.

Acuso recibo de este documento en la fecha abajo escrita.

Angel de Jesús Rocha Rivera
Nombre del Empleado

H14947
Número de Empleado

Angel Rocha
Firma Del Empleado

04/17/2023
Fecha

Tijuana, B.C., México
Ubicación al momento de firmar

# EXHIBIT 2

SFC SCARONI FAMILY of COMPANIES

**Jennifer Schermerhorn <jennifer@sfcos.com>**

# In Re Demand for Arbitration | Rubio-Leon v. FLAG, et al.

**Dawson Morton** <dawson@dawsonmorton.com> Fri, Apr 26, 2024 at 10:47 AM
To: Jennifer Schermerhorn <jennifer@sfcos.com>

Hi Jennifer:

Thanks for your email. It seems we disagree on what constitutes a valid arbitration agreement. The agreement you forwarded appears plainly invalid and unenforceable. I am happy to discuss it with you in the hopes that we might resolve claims without the expense of litigation. However, I should note that my past experience with your employer suggests that they prefer to litigate disputes.

Also, just to keep you abreast, we plan to assert client employer liability as well. I will copy you on the letter concerning claims pursuant to 2810.3.

You can reach me by email or at 404-590-1295 should you wish to discuss the matter further.

Dawson Morton
dawson@dawsonmorton.com
404-590-1295

[Quoted text hidden]
[Quoted text hidden]
<4 5 In Re Arbitration.pdf><ARBITRATION - ROCHA RIVERA, ANGEL DE JESUS (2).pdf><ARBITRATION-RUBIO LEON, ANTONIO.pdf>

# EXHIBIT

Dawson Morton
Dawson Morton, Attorney at Law
Cal. SBN 320811
1808 Sixth Street
Berkeley, CA 94710
Ph: 404-590-1295
dawson@dawsonmorton.com

ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ANTONIO RUBIO-LEON, ANGEL DE JESUS ROCHA-RIVERA, DIEGO MARTINEZ-JIMENEZ, GERARDO LEDESMA-DELGADO and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., and SMD LOGISTICS, INC.<br><br>Defendants. | CIVIL ACT. NO.: 5:24-cv-03375<br><br>AMENDED COMPLAINT<br><br>RULE 23 CLASS<br><br>JURY TRIAL DEMANDED |

1. Plaintiffs are truck drivers employed by Defendants to transport crops over public roads to Defendants' clients packing sheds in the growing regions of California, Arizona, and Colorado.

2. Plaintiffs bring this complaint on their own behalf and on behalf of others similarly situated to assert their rights to prevailing wages and equal pay under the terms of their employment contracts, compliance with the terms of their working arrangements, pay for all hours worked at their promised wage rates including California minimum wages and liquidated damages, overtime, reimbursement of necessary expenses, lawful, accurate and complete paystubs, and waiting time penalties. Plaintiffs also assert retaliation claims under California law and their employment contract, assert claims for fraud, and assert Private Attorney General's Act and California Business and Professions Code § 17200 claims.

3. Plaintiffs Antonio Rubio-Leon, Angel de Jesus Rivera-Rocha, Diego Martinez-Jimenez and Gerardo Ledesma-Delgado were all H-2A workers brought into the United States by Defendants as truck drivers. Plaintiffs and others similarly situated were employed subject to the terms of written contracts. However, during Plaintiffs' employment, Defendants violated the written contracts and the regulations which they incorporated. Defendants' violations caused Plaintiffs and others similarly situated economic harm, including substantial lost wages, provided Defendants an unfair economic advantage over their competitors, and violated both state and federal wage and employment laws.

4. Plaintiffs brings this action to vindicate their rights and those of others similarly situated, recover their unpaid wages, penalties, interest and liquidated damages on behalf of themselves and a class of workers similarly situated and to remedy Defendants retaliatory conduct.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to:

a. 28 U.S.C. § 1331 (Federal Question);

b. 29 U.S.C. § 1337 (Interstate Commerce); and

c. 28 U.S.C. § 1367 (Supplemental).

6. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7. **Intradistrict Assignment.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and N.D. Ca. Local Rule 3.2 because a substantial part of the claims arose in the Northern District of California and because the Defendants do business in, or are based in, Monterey County.

## PARTIES

8. Plaintiff Antonio Rubio-Leon worked seasonally for Defendants in 2022 and 2023. Plaintiff Rubio-Leon's visa listed his employer as Fresh Harvest in 2022 and as Farm Labor Association in 2023.

9. Plaintiff Angel de Jesus Rocha-Rivera worked for Defendants pursuant to an H-2A visa in the 2023 season.

10. Plaintiff Diego Martinez-Jimenez worked for Defendants in the 2023 season as a truck driver and in prior seasons as a tractor operator.

11. Plaintiff Gerardo Ledesma-Delgado worked for Defendants as a truck driver in the 2020, 2021 and 2022 seasons. Plaintiff Ledesma-Delgado had a visa listing Fresh Harvest as his employer in 2020 and listing Farm Labor Association on his 2021 and 2022 visas.

12. Defendants petitioned for H-2A visas under the names of Farm Labor Association for Growers or Fresh Harvest but used shared employee id numbers, shared employment paperwork, and shared supervisors.

13. Plaintiffs were employed as truck drivers, a position covered by the H-2A contracts, which promised prevailing wages for this work.

14. Plaintiffs were paid less than similarly situated domestic workers for the same work in violation of the terms of the applicable H-2A contracts.

15. Defendant Fresh Harvest, Inc. is a farm labor contractor licensed by the State of California with license number FLC000187467 and licensed by the U.S. Department of Labor with license number C-09-772971-J-20-R.

16. Defendant Fresh Harvest is an Arizona corporation registered to do business in California.

17. Fresh Harvest has a principal place of business at 101 E. Main St., Heber, California.

18. Fresh Harvest may be served with process through its counsel, Rob Roy of the Ventura County Agricultural Association.

19. Fresh Harvest was informed by the United States Department of Labor on February 21, 2020 that it could not employ truck drivers at agricultural pay rates.

20. Defendant Farm Labor Association for Growers, Inc. is a California corporation it was initially formed March 30, 2020.

21. Defendant Farm Labor Association has a principal place of business at 101 E. Main St., Heber, California.

22. Defendant Fresh Harvest created Farm Labor Associations for Growers, Inc. as a mere formality.

23. Defendant Farm Labor Association is an alter-ego of Defendant Fresh Harvest.

24. Defendant Farm Labor Association has failed to register as a farm labor contractor but engages in farm labor contracting activities.

25. Defendant SMD Logistics, Inc. is an Arizona corporation registered to do business in California.

26. SMD Logistics has a mailing address of 101 E. Main St., Heber, California and its Chief Executive Officer is David Scaroni.

27. Defendant SMD Logistics is the trucking arm of Defendant Fresh Harvest.

28. Defendant SMD Logistics is, upon information and belief, primarily directed from its location at 26710 Encinal Road, Salinas, California.

29. Defendant SMD Logistics operated in concert with Defendants Fresh Harvest and Farm Labor Association.

30. Defendant SMD Logistics employees directed the actions of employees of Defendants Fresh Harvest and Farm Labor Association.

31. Defendant SMD Logistics supplied equipment operated by employees of Defendants Fresh Harvest and Farm Labor Association.

32. Upon information and belief, Defendants SMD Logistics, Fresh Harvest and Farm Labor Association formed one enterprise for employment purposes and constituted joint employers.

33. Upon information and belief, employees of Defendants SMD Logistics, Fresh Harvest and Farm Labor Association directed and assigned work to employees of the others.

34. Plaintiff Rubio-Leon was hired by employees or agents of Defendants Fresh Harvest and SMD Logistics to work pursuant to a visa for Defendant Fresh Harvest in the 2022 season.

35. Plaintiff Ledesma-Delgado was hired by employees or agents of Defendants Fresh Harvest and SMD Logistics to work pursuant to a visa for Defendant Fresh Harvest in the 2020 season.

36. Plaintiff Ledesma-Delgado was hired by employees or agents of Defendants Fresh Harvest and SMD Logistics to work pursuant to a visa for Defendant Farm Labor Association in the 2021 and 2022 seasons

37. Plaintiffs Rubio-Leon, Rocha-Rivera and Jimenez-Martinez were hired by employees or agents of Defendants Fresh Harvest and SMD Logistics to work pursuant to a visa for Defendant Farm Labor Association in the 2023 season.

38. Plaintiffs Rubio-Leon, Martinez-Jimenez, and Ledesma-Delgado had previously worked for Defendant Fresh Harvest and the same individuals were used to recruit Plaintiffs regardless of employer listed on the visa.

39. Defendants also employed domestic workers but to hide the non-agricultural nature of the truck driver positions, Defendant SMD Logistics did not directly employ the H-2A workers and solely directly employed domestic truck drivers.

DEFENDANTS' PARTICIPATION IN THE H-2A VISA PROGRAM

40. The H-2A program was created by 8 U.S.C. § 1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.185. An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).

41. Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130 (2010). The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122. The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.121(a)(2).

42. The relevant job orders were filed through the California Employment Development Department office in Salinas, Monterey County, California and through the Colorado Department of Labor and Employment and Arizona Department of Economic Security.

43. The terms and conditions of the job orders, together with the requirements of 20 C.F.R. part 655, constituted employment contracts for domestic workers and for foreign workers on H-2A visas, including Plaintiffs, and all others similarly situated. 20 C.F.R. § 655.103(b) (definition of "work contract").

44. The H-2A program, its implementing regulations, and the applicable job orders here require that foreign workers be paid "the same level of minimum benefits, wages, and working conditions which must be offered to U.S. workers[.]" 20 C.F.R. § 655.122(a).

45. The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.103(b) and contained the promise to "comply with applicable Federal, State and local law and regulations." 20 C.F.R. § 655.135(e).

46. In each applicable season, Defendant Fresh Harvest either directly or operating through its alter-ego Farm Labor Association submitted job orders to the U.S. DOL.

47. The Farm Labor Association job orders were signed by Leticia Ridaura, who also signs the job orders for Defendant Fresh Harvest.

48. On information and belief, the job orders submitted under either the company name Fresh Harvest or Farm Labor Association were prepared by employees of Defendant Fresh Harvest or its affiliated company, AgData Global.

49. In the employment contracts, the Defendants promised that each worker would earn at least the AEWR [Adverse Effect Wage Rate], the prevailing hourly or piece rate wage, or the federal or state minimum wage, whichever is higher, for all hours worked in the payroll period. In 2020 and 2021, the employment contracts also promised overtime pay to truck drivers. In 2022 and 2023, the employment contracts promised to abide by federal and applicable state law with respect to the payment of overtime pay.

50. The vehicles Plaintiffs operated were well in excess of 26 tons Gross Vehicle Weight.

51. Plaintiffs primarily operated heavy-duty trucks on state and federal roads and highways.

52. The applicable prevailing wage category for the position in which Defendants employed Plaintiffs was the Heavy and Tractor-Trailer Truck Drivers.

53. Federal regulations specify that the median wage is appropriately considered the prevailing wage. 20 C.F.R. § 655.10(b)(2).

54. During the relevant time period, the highest applicable mean wage was the wage for the Monterey-Salinas Metropolitan Statistical area.

55. For work in Colorado during the relevant time period, the highest applicable mean wage was the wage for the Eastern and Southern Colorado nonmetropolitan area.

56. For work in Arizona and Southern California during the relevant time period, the highest applicable mean wage was the wage for the El Centro Metropolitan Statistical area.

57. Defendants SMD Logistics, Fresh Harvest and Farm Labor Association sought to avoid paying the prevailing wage to truck drivers by including them within H-2A agricultural job orders for field labor positions or by claiming that the positions were actually employment by an agricultural association rather than by a labor contractor.

58. Defendants knew that the work was non-agricultural in nature for H-2A purposes because Defendants Fresh Harvest, Farm Labor Association and SMD Logistics were not growers of the crops being transported, because there was no actual agricultural association, and because the U.S. Department of Labor had so informed these Defendants that the positions did not qualify for payment of H-2A field worker wages.

59. Plaintiffs' positions and those of others similarly situated were not field labor positions, but instead were Heavy and Tractor-Trailer Truck Driver positions operating tractor-trailers on roads and highways hauling harvested vegetables to Defendants' client's cooler and produce-packing locations.

60. Defendants knew that the wages they were offering were not the appropriate prevailing wages for the work being performed and indeed offered higher wages for truck driving to U.S. workers and to H-2B workers performing the same work.

61. By participating in the H-2A program and importing workers from abroad, the Defendants are bound to abide by certain wage and payroll requirements, including those at 20 C.F.R. §§ 655.120(a), 655.122(a), 655.122(c), 655.122(j), 655.122(k), 655.122(l), and 655.103(b).

62. Upon information and belief, as part of their petition to import foreign workers, Defendant Fresh Harvest entered into contracts with Fresh Express, Taylor Farms and Organic Girl Produce to act as a labor contractor for these producers. The services of the Farm Labor Association truck drivers were included within these contracts.

ALLEGATIONS OF CLASS REPRESENTATIVE

63. Plaintiffs were offered work as truck drivers.

64. Defendants required that Plaintiffs, and others similarly situated, to obtain, at their own cost, Mexican international truck driving licenses which would allow Plaintiffs to operate Defendants' trucks in the U.S. after Defendants provided Plaintiffs with work visas.

65. Defendants also required that Plaintiffs work for Defendants' operations in Mexico prior to coming to the United States.

66. The truck driving positions in Mexico required uncompensated work beyond the scheduled work hours.

67. Defendants did not disclose to the U.S. government that work for them in Mexico was required prior to Plaintiffs' employment in the U.S.

68. The required work in Mexico rewarded Defendants and constituted an unlawful kickback to Defendants for Plaintiffs' recruitment.

69. The performance of uncompensated or undercompensated work in Mexico for Defendants reduced Plaintiffs' first week's earnings in the United States below the amounts legally required.

70. When employed in the U.S., Plaintiffs were employed as over-the-road truck drivers.

71. The paystubs Defendants prepared for truck drivers listed as their principal activity "hauling commodity" or "trucking."

72. Upon information and belief, Defendants had a separate payroll entry for hauling commodity or trucking for H-2A workers that compensated that work at a lower hourly rate than the payroll entry used by Defendants for payments to domestic workers for hauling commodity or trucking.

73. Plaintiffs and others similarly situated were promised in the written employment contract, among other things:

a. Pay for all hours worked;

b. Pay at the prevailing hourly wage if it was higher than the state or federal minimum wage or the federally mandated Adverse Effect Wage Rate;

c. Pay that was equal for domestic and foreign workers performing the same work activities;

d. A copy of the work contract;

e. No deductions that would bring wages below the highest applicable wage;

f. That a state or foreign commercial driver's license was not a prehire requirement; and

g. Payment of wages in compliance with state and federal law.

74. On information and belief, Defendants did not pay the legally required prevailing wages to any truck driver.

75. In 2020, Defendants were informed by the U.S. Department of Labor that they needed to compensate Plaintiffs and other similarly employed truck drivers at the prevailing wage rates for truck driving.

76. The prevailing wage rate for truck drivers in 2020 for the Monterey-Salinas MSA was $23.01 beginning in July of 2020.

77. The prevailing wage rate for truck drivers in 2020 for the El Centro MSA was $21.79 beginning in July of 2020.

78. The prevailing wage rate for truck drivers in 2021 for the Monterey-Salinas MSA was $23.90 beginning in July of 2021.

79. The prevailing wage rate for truck drivers in 2021 for the El Centro MSA was $23.07 beginning in July of 2021.

80. The prevailing wage rate for truck drivers in 2021 for the Eastern and Southern Colorado nonmetropolitan area was $22.34 beginning July of 2021.

81. The prevailing wage rate for truck drivers in 2022 for the Monterey-Salinas MSA was $23.66 beginning July of 2022.

82. The prevailing wage rate for drivers in 2022 for the Eastern and Southern Colorado nonmetropolitan area was $23.27 beginning July of 2022.

83. The prevailing wage rate for truck drivers in 2023 for the Monterey-Salinas MSA was $24.55 beginning July of 2023.

84. Defendants knew the requirement to pay workers in corresponding employment the same wage rates for the same work.

85. Defendant Fresh Harvest marketed to prospective clients that the association member agreement was a "mere formality in order to apply for truck drivers through an authorized entity and through the H-2A contract." On information and belief, there were no actual members of the Farm Labor Association and it was entirely run and operated by members of the Scaroni family exactly as if it was part of Defendants Fresh Harvest and SMD Logistics.

86. As part of a scheme designed to avoid the payment of legally required wages, the members of Farm Labor Association shifted seasonally and, upon information and belief, the clients of Fresh Harvest were simply labeled members when they sought to hire truck drivers at H-2A agricultural worker wage rates.

87. Defendants' failure to pay workers in corresponding employment equally was a product of Defendants' scheme to avoid complying with their contractual and regulatory obligations.

88. Plaintiffs and others similarly situated were required to complete log books of their daily truck operating activities.

89. The Occupational Code for the work performed by Plaintiffs and others operating trucks for Defendants was 53-3032.00.

90. Defendant SMD Logistics offered employment for the work Plaintiffs performed at the hourly wage of $19.90 per hour to domestic workers during 2020.

91. Defendants, for work in California, paid Plaintiffs Rubio-Leon, Rocha-Rivera, and Martinez-Jimenez, and others similarly situated $18.65 per hour in 2023, the then current Adverse Effect Wage Rate for California.

92. As a result of their practice of failing to record all hours worked and failure to pay prevailing or equal wages, Defendants, without justification, did not pay wages in keeping with California wage statutes or the employment contract, and paid wages below those required by California law, the contract, and the parties' working arrangement.

93. Defendants' paystubs violated California statutory paystub requirements by failing to list the correct hourly rate and the total wages earned.

94. At all times relevant to this action, Plaintiffs and others similarly situated were not provided thirty (30) minute duty-free unpaid meal periods.

95. Defendants required that Plaintiffs and others similarly situated report meal periods that Plaintiffs and others similarly situated did not receive.

96. Defendants required that Plaintiffs report rest breaks that Defendants knew or should have known were not taken and which were not duty-free.

97. Defendant SMD Logistics required that Plaintiffs and others similarly situated complete its timesheets and log books for their time operating trucks for Defendants Fresh Harvest and Farm Labor Association.

98. Upon information and belief, Defendant SMD Logistics employees directed the work of Plaintiffs and others similarly situated even though the paystubs listed their employer as either Fresh Harvest or Farm Labor Association.

99. Supervisors of Defendant SMD Logistics had the power to hire and fire employees of Defendants Farm Labor Association and Fresh Harvest.

100. SMD Logistics also issued employment paperwork to Plaintiffs.

101. Supervisors of Defendant SMD Logistics exercised their power to hire and fire employees of Defendants Farm Labor Association and Fresh Harvest.

## CLASS ACTION ALLEGATIONS

102. **Proposed Class.** Plaintiffs brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

All individuals employed by Defendants between June 5, 2020 and the date of judgment in this matter at work sites in California, Arizona or Colorado in a truck driver or tractor-trailer driver position.

103. There is a well-defined community of interest in the litigation and the class is ascertainable.

104. **Numerosity:** The Plaintiff Class is so numerous such that the individual joinder of all members is impractical. While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs believe that the class consists of more than 40 individual employees. The names and addresses of the Class Members are available from Defendants. Notice can be provided to the Class

Members via mail, Facebook, WhatsApp, radio and postings using techniques and a form of notice similar to those customarily used in agricultural class action lawsuits of this nature.

105. **Typicality:** Plaintiffs' claims are typical of the claims of each class they seek to represent in that they arise from Defendants' failure to conform their wage and hour practices to the requirements of federal law, the H-2A contract and H-2A program regulations, the prevailing wage requirements contractually offered, and the overtime contractually promised, resulting in injury to Plaintiffs and the other putative class members.

106. **Common Questions Predominate**: The questions raised by this Complaint are of common or general interest to the members of the Plaintiff Class, who have a well-defined community of interest in the questions of law and fact raised in this action. Common questions of law and fact exist as to all members of the Plaintiff Class and predominate over any questions that affect only individual members of the Class. The common questions of law and fact applicable to the classes include, but are not limited to:

a. Whether the Defendants paid the median prevailing wage, as determined by U.S. Department of Labor data, for the position of Heavy and Tractor-Trailer Truck Driver;

b. Whether the Defendants' pay practices, including those of failing to record compensable waiting and on-call time, violated the H-2A contract and program regulations, state law, the California Labor Code, and the Wage Order;

c. Whether the Defendants paid the wages promised in the employment contract, as required by H-2A program regulations, and applicable state law;

d. Whether the Defendants recorded and compensated the Plaintiff Class for all hours of work as required by the employment contracts or by California Labor Code §§ 1182.11-1182.13, and 1197, and California Wage Orders;

e. Whether the Defendants failed to pay all members of the Plaintiff Class their full wages when due in violation of applicable law;

f. Whether, through the unlawful conduct herein alleged, the Defendants violated Cal. Business and Professions Code § 17200 et seq.;

g. Whether the Defendants are liable as joint employers for the actions perpetrated against the Plaintiff Class;

h. Whether Defendants retaliated against Plaintiffs and other truck drivers;

i. What relief is necessary to remedy Defendants' unfair and unlawful conduct as herein alleged; and,

j. Other common questions of law and fact.

107. **Adequacy of Plaintiffs as Class Representatives.** Plaintiffs Rubio-Leon, Rocha-Rivera, Martinez-Jimenez and Ledesma-Delgado can adequately and fairly represent the interests of the Plaintiff Class as defined above because their individual interests are consistent with, not antagonistic to, the interests of the class. Further, Plaintiffs have no actual or potential conflict with any member of the class.

108. **Adequacy of Counsel for the Class.** Counsel for Plaintiffs possesses the requisite resources and ability to prosecute this case as a class action and is an experienced labor and employment attorney who has successfully litigated other cases involving similar issues.

109. **Propriety of Class Action Mechanism.** Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members of each Class. Defendants have implemented a scheme that is generally applicable to the Plaintiff Class, making it appropriate to issue relief, including injunctive relief and corresponding declaratory relief with respect to the Plaintiff Class. In particular, the violations of law perpetrated against all Class Members in this case revolve around the application and interpretation of the H-2A contract, overtime pay, and the interpretation of prevailing wage requirements. Similarly, the Defendants' liability as joint employers is based on actions taken with regard to the Plaintiff Class as a whole.

110. The Plaintiff Class has been injured and is entitled to recover from Defendants for wrongful conduct and injuries. Class treatment will allow those similarly-situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Further, the prosecution of separate actions against Defendants by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of

conduct for Defendants. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

**FIRST CLAIM FOR RELIEF – FAIR LABOR STANDARDS ACT**

Violation of the Fair Labor Standards Act ("FLSA") Minimum Wage
(29 U.S.C. §§ 206 *et seq.*)

111. Plaintiffs incorporate paragraphs 8-101, and 102-110 of this Complaint by reference as though fully set forth herein.

112. Plaintiff Rubio-Leon and Ledesma-Delgado assert this claim for the 2022 season pursuant to 29 U.S.C. § 206(a).

113. Plaintiffs Rubio-Leon, Rocha-Rivera and Martinez-Jimenez asserts this claim for the 2023 season.

114. This count is brought as a collective action pursuant to 29 U.S.C. § 216(b) against Defendants Fresh Harvest, Farm Labor Association for Growers, and SMD Logistics.

115. Defendants required Plaintiffs to obtain, at their own cost, truck driving licenses for use internationally.

116. Plaintiffs, in order to satisfy Defendants' prehire requirements for truck drivers, incurred costs in Mexico to qualify for and obtain the international driver's license which Defendants required.

117. Plaintiffs incurred license fees, medical exam fees, and training fees.

118. These license costs, including associated medical exam fees, incurred by Plaintiffs exceeded $600 dollars and when deducted from Plaintiffs' first week's wages reduced their earning below the applicable federal minimum wage.

119. The license fees and associated exam costs were expenses necessitated by Defendants and were for Defendants' primary benefit.

120. Plaintiffs also were required to provide Defendants placement fees by performing work for Defendants in Mexico without adequate and legal compensation.

121. The placement fees provided through Plaintiffs' labor also reduced Plaintiffs' first-week earnings below the applicable federal minimum wage.

122. Because of these unreimbursed expenses and placement fees, Plaintiffs did not receive their first week's wages free and clear as required by the Fair Labor Standards Act.

123. Defendants paid Plaintiffs through electronic payment cards which charged administrative fees for access to Plaintiffs' wages.

124. These fees further reduced Plaintiffs' wages by charging Plaintiffs fees deducted from their wages to access cash or transfer their wages to family members.

125. The violations of the FLSA resulted from the costs, fees and placement expenses described above which Plaintiffs and others similarly situated incurred primarily for the benefit or convenience of Defendants prior to their first week of work. When these expenses were subtracted from the Plaintiffs' and others similarly situated first week's pay, as required by law, their earnings fell below the required minimum hourly wage for the workweek.

126. Defendants' violations as set forth in this Count were willful within the meaning of the FLSA as Defendants had knowledge of their FLSA obligations, including the obligation to reimburse costs incurred for their benefit, and Defendants failed to comply with those obligations.

127. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and similarly situated opt-in plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations without earning an average of the applicable minimum wage for all hours worked.

128. Plaintiffs also seek their reasonable attorneys' fees and cost of court pursuant to 29 U.S.C. § 216(b).

## **SECOND CLAIM FOR RELIEF**

California Minimum Wage

129. Pursuant to Rule 23(b)(3), all Plaintiffs brings this as a class claim and allege that Defendants' actions violated their rights and the rights of other similarly situated individuals to receive the minimum wage required by California Law.

130. As described above in paragraph 63 through 93, Defendants did not pay the minimum promised wages to Plaintiffs and the Plaintiff Class.

131. Because Plaintiffs and others similarly situated had been promised a higher minimum wage, namely the prevailing wage for their job activity, this claim asserts a minimum wage claim based on the higher hourly minimum promised Plaintiffs and others similarly situated.

132. As a result of Defendants' failure to comply with the aforementioned portions of the California Labor Code, Plaintiffs and members of the Plaintiff Class have been deprived of wages due them in amounts to be proven at trial and are also owed liquidated damages for violations of their right to the required minimum wage.

133. Pursuant to Cal. Labor Code § 1194(a), Plaintiffs seek to recover the unpaid balance for all uncompensated hours, and reasonable attorneys' fees and costs. Pursuant to Cal. Labor § 1194.2, Plaintiffs also seek to recover liquidated damages.

**THIRD CLAIM FOR RELIEF**

Failure to Pay Overtime Wages

(California Labor Code § 1194 and Contract)

134. Plaintiffs incorporate the allegations in paragraphs 8 to 110.

135. Plaintiffs brings this claim pursuant to California Labor Code § 1194 and California contract law on behalf of themselves and a class of other workers, pursuant to Federal Rule 23(b)(3), and allege that Defendants have violated California overtime requirements and their promise to pay overtime by failing to accurately record and pay overtime wages for work performed.

136. Defendants contractually promised through the applicable H-2A job orders, which formed written employment contracts, that overtime wages would be paid to truck drivers as detailed above in paragraph 49.

137. Defendants failed to pay Plaintiffs and the Plaintiff Class overtime wages in the amount of one and a half times the legally required regular rate for all overtime hours worked in each workday as required by California Labor Code § 1194, California Wage Orders and the contractual promises.

138. Specifically, Defendants SMD Logistics, Fresh Harvest and Fresh Foods failed to accurately record and compensate their truck drivers at the legally required prevailing wage for all compensable hours, as detailed in paragraphs 74 through 92.

139. Plaintiffs and the other class members did not receive the legally required premium pay for all overtime hours worked as a result of the underreporting of hours and the underpayment of Plaintiffs' regular rate.

140. As a direct and proximate result of the acts and/or omissions of the Defendants, Plaintiffs and the class have been deprived of overtime wages due and are entitled to recover their unpaid wages.

141. Plaintiffs and the class seek the relief described below, including damages in the amount equal to unpaid overtime hours (at the premium rate of 150% of the prevailing hourly wage), pre- and post-judgment interest, and attorney's fees and costs pursuant to Cal. Labor Code § 1194.

## FOURTH CLAIM FOR RELIEF

Failure to Reimburse Business Expenses

(Cal. Lab. Code § 2802 – Rule 23 Class Count)

142. Plaintiffs incorporate paragraphs 8-93, 94-101, and 102-110 of this Complaint by reference as though fully set forth herein.

143. Plaintiffs bring this Fifth Claim against Defendant Fresh Harvest, SMD Logistics and Farm Labor Association of Growers pursuant to California Labor Code § 2802 to enforce the cost-shifting provisions of the California Labor Code and the contractual promise to provide it. This count is brought as a Rule 23 class claim for the 2023 season.

144. Defendants, through the filing of job orders which covered the employment of Plaintiffs and other similarly situated workers, promised to comply with all "Federal and State . . . employment-related laws" which at the time of the submission of the job orders at issue included a promise to provide rest breaks in compliance with California law as detailed in this Count.

145. Applicable Wage Orders impose an affirmative obligation on employers to permit and authorize employees to take required uninterrupted rest breaks at a rate of no less than ten (10) minutes for each four (4) hour work period, or major fraction thereof, that must be in the middle of each work period insofar as is practicable.

146. California Labor Code § 226.7 and Section 12(C) of the California Wage Orders require employers to pay non-exempt employees an additional hour of premium wages at the employee's regular rate of compensation on each workday that the employee is not provided with a rest break.

147. Defendants did not authorize and did not permit Plaintiffs and others similarly situated to take uninterrupted rest breaks of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, and failed to pay premium wages in lieu of providing lawful rest breaks on such workdays.

148. At all times relevant to this action, Defendants have maintained policies and practices with respect to employee scheduling and rest breaks that have failed to authorize and/or reasonably permit Plaintiffs and the Class from being relieved of all duties for an uninterrupted rest break of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, and which fail to pay them premium wages on workdays in which they are not provided lawful rest breaks.

149. As a result of Defendants' rest break practices, Plaintiffs and the Class are entitled to receive premium wage compensation in an amount equal to one hour of additional wages at the applicable contractual rate of pay for each workday that Defendants failed to provide Plaintiffs lawful rest breaks pursuant to their contractual promise and Labor Code § 226.7.

150. As such, Plaintiffs seek, on behalf of themselves and others similarly situated, premium wages, interest thereon, and an award of reasonable costs.

**FIFTH CLAIM FOR RELIEF**

Breach of Employment Contract

(Common Law - Rule 23 Class Count)

151. Plaintiffs incorporate paragraphs 8-110 of this Complaint by reference as though fully set forth herein.

152. This Count sets forth a claim against all Defendants.

153. Plaintiffs bring this Sixth Claim against all Defendants for Defendants' breach of the H-2A employment contracts.

154. This count is brought as a Rule 23 class claim for Defendants failure to pay the higher of the contractually promised wage rate, the prevailing wage, or the state or federal minimum wage for all

compensable hours worked under the terms of the H-2A order for Plaintiffs, H-2A truck drivers employed by Defendants, and those domestic workers in corresponding employment.

155. At all times relevant to this action, Plaintiffs and others similarly situated, including H-2A visa-holding truck drivers and domestic truck drivers employed by Defendants, were employed under the terms and conditions contained in the H-2A job orders described in paragraphs 41 to 62.

156. These uniform employment contracts promised Plaintiffs and others similarly situated the applicable prevailing wage.

157. The uniform employment contracts also promised overtime wages as detailed above in paragraph 49.

158. The uniform employment contracts also promised that Defendants would comply with the H-2A program regulations, including the regulatory promise to not retaliate against H-2A workers as detailed in 20 C.F.R. § 655.135(h).

159. The uniform employment contracts further promised that Defendants would not require any free labor, wage concession, or in-kind or monetary payment as a recruitment fee as detailed in governing regulation, 20 C.F.R. § 655.135(j).

160. The prevailing wage applicable for truck driving was in excess of $20 per hour during all applicable time periods.

161. Defendants also contractually promised to pay domestic and foreign worker equally.

162. Defendants also contractually promised to not require in-kind payments or collections of fees as a condition of recruitment for foreign workers.

163. Defendants did not provide the same wages and employment benefits to foreign and domestic truck drivers.

164. Plaintiffs and others similarly situated performed on their relevant employment contracts.

165. Defendants failed to pay all compensable hours worked at the contractually-promised wage rates.

166. Defendants' breach of the uniform employment contracts occurred in part because Defendants failed to pay the contractually promised prevailing hourly compensation.

167. Defendants' breach of the uniform employment contracts also occurred in part because Defendants failed to pay overtime wages owed.

168. Defendants also breached the uniform employment contracts by requiring Plaintiffs and other similarly situated H-2A workers, as a condition of obtaining an H-2A visa to work for Defendants, to perform work that was uncompensated or inadequately compensated in Mexico for Defendants' related corporate entity.

169. Defendants also threatened and discriminated against Plaintiffs and others similarly situated because they had exercised their rights afforded them under the H-2A program including complaining about Defendants failure to pay prevailing wages for truck driving.

170. As a direct and proximate result of Defendants' actions as described above Plaintiffs and the Class have been deprived of contractually promised wages and benefits due, have lost employment, and are entitled to recover the amounts due.

**SIXTH CLAIM FOR RELIEF**

Failure to Furnish Accurate Itemized Wage Statements

(Cal. Lab. Code § 226 – Rule 23 Class Count)

171. Plaintiffs incorporate paragraphs 8 through 110 of this Complaint by reference as though fully set forth herein.

172. Plaintiffs Rubio-Leon, Rocha-Rivera, Martinez-Jimenez bring Count Six against Defendants Fresh Harvest, SMD Logistics and Fresh Foods pursuant to California Labor Code § 226 to enforce the wage statement provisions of the California Labor Code.

173. This count is brought as a Rule 23 class claim.

174. At all times relevant to this action, the wage statements provided by Defendants to Plaintiffs and the Class failed to contain the information required by California Labor Code §§ 226 and 226.2.

175. Defendants furnished wage statements that lacked the following information:

a. Accurate total hours worked;

b. Hourly rates in effect during the pay period;

c. All deductions from wages;

d. Name and address of the entity that secured the services of Defendants during the pay period; and

e. Accurate gross and net wages earned.

176. By failing to pay Plaintiffs and others similarly situated the promised minimum wages owed, overtime wages owed, and by failing to list deductions taken to access wages, Defendants have furnished Plaintiffs and others similarly situated with itemized wage statements that do not accurately reflect, among other things, gross and net wages earned, all deductions, and the applicable hourly wage rates.

177. At all times relevant to this action, Defendants have furnished Plaintiffs and others similarly situated with inaccurate itemized wage statements during pay periods in which Plaintiffs and others similarly situated were compensated at wages rates that were not the prevailing wage rate promised and owed to truck drivers.

178. At all times relevant to this action, Defendants' failure to provide accurate itemized wage statements has been knowing and intentional, in that Defendants have had the ability to provide accurate itemized wage statements, but have instead knowingly and intentionally provided inaccurate wage statements as a result of policies and practices that failed to keep accurate records of all hours worked, the total amount of minimum and premium wages owed, all applicable rates of pay, all deductions taken from wages, and the name and address of the entity to whom Defendants Fresh Harvest, SMD Logistics and Farm Labor Association had contracted to provide their services.

179. At all times relevant to this action, Plaintiffs and the Class have suffered injuries due to Defendants' failure to provide accurate itemized wage statements in that, among other things, their legal rights to receive accurate itemized wage statements have been violated, they have been misled about the amounts of wages they should have earned, they have had to spend additional time reviewing and analyzing their pay records, they have been prevented from immediately challenging allegedly unlawful pay practices, they have needed or will need to reconstruct time and pay records and perform mathematical computations to determine the amounts of wages they have legally earned or the legally applicable rates of pay, and/or have had inaccurate information about their wages and deductions submitted to government agencies.

180. Pursuant to California Labor Code § 226(e), Plaintiffs seeks to recover, on behalf of themselves and the Class, the greater of actual damages or $50 for the initial pay period in which a violation occurred, the greater of actual damages or $100 for each violation in a subsequent pay period, up to the greater of actual damages or an aggregate $4,000 penalty per Class Member, as well as awards of reasonable attorneys' fees and costs, all in amounts subject to proof.

181. Plaintiffs also seek an injunction to require Defendants compliance with their wage statement obligations and to bar Defendants from further such violations.

**SEVENTH CLAIM FOR RELIEF**

California's Unfair Competition Law ("UCL")

(Cal. Bus. & Prof. Code §§ 17200 *et seq.* – Rule 23 Class Count)

182. Plaintiffs incorporate paragraphs 8 through 101 and 102 through 110 of this Complaint by reference as though fully set forth herein.

183. Plaintiffs hereby bring this Seventh Claim against Defendants pursuant to California Business & Professions Code §§ 17200 *et seq.* to enforce the provisions prohibiting unlawful and/or unfair business practices of the California Business & Professions Code.

184. California Business and Professions Code §§ 17200 *et seq.* defines "unfair competition" to include any unlawful business practice.

185. Plaintiffs sue on behalf of themselves and others similarly situated pursuant to California Business and Professions Code §§ 17200 *et seq.*

186. Plaintiffs and others similarly situated suffered injury-in-fact and have lost money as a result of Defendants' unfair competition alleged herein.

187. Plaintiffs and others similarly situated were not paid minimum and overtime wages as required by the California Labor Code; Plaintiffs and others similarly situated were not indemnified for necessary business expenditures, in violation of California Labor Code § 2802; and Plaintiffs and others similarly situated were not provided accurate itemized wage statements in violation of California Labor Code § 226.

188. Pursuant to California Business and Professions Code § 17203, Plaintiffs seek, on behalf of themselves and others similarly situated, restitution of all moneys and property, including, but not

limited to, earned minimum and premium wages that Defendants either acquired, and/or may have acquired, from them by means of unfair competition in amounts subject to proof at trial.

189. On information and belief, at all times relevant to this action, Defendants have either acquired, or may have acquired, money or property in the form of earned minimum wages and premium wages from Plaintiffs and members of the Class by means of unfair competition as a result of Defendants' unlawful failure to pay them those wages, and related failures to maintain accurate records, indemnify for necessary business expenditures, or timely pay final wages at resignation or termination, in violation of the requirements of the California Labor Code. Defendants, by the acts or omissions alleged of herein, have injured and are injuring the interests of the general public in that other employers who have been or currently are employing truck drivers and attempting to do so in honest compliance with applicable wage and hour laws, including the laws violated by Defendants, are at an unfair competitive disadvantage as a result of Defendants' conduct.

190. As such, Plaintiffs seek, on behalf of themselves and others similarly situated, an injunction restraining Defendants from maintaining and enforcing the unfair and/or unlawful practices and policies that have resulted in the violations complained of herein, restitution of Plaintiffs and the Class' wages, and the economic value of benefits unlawfully denied them by Defendants.

191. In addition, because Plaintiffs are enforcing important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5, they seek payment of attorneys' fees and costs.

## **EIGHTH CLAIM FOR RELIEF**

Waiting Time Penalties for Failure to Pay All Wages Due

(Cal. Labor Code § 203)

192. Plaintiffs incorporate by reference the allegations in paragraphs 1 to 110.

193. This count sets forth a claim against all Defendants.

194. Pursuant to Cal. Labor Code § 203, Plaintiffs bring this claim on behalf of themselves and the class, pursuant to Rule 23(b)(3), for all Defendants' failure to pay all outstanding wages due upon separation from employment.

195. When seasonal employment comes to an end, California law requires an employer

immediately pay all wages owed, which in no event can be a period greater than 72 hours.

196. When a worker is terminated, California law requires an employer immediately pay all wages owed, which cannot be later than 24 hours from the time of termination.

197. Where an employer fails to comply with Cal. Labor Code §§ 201, the affected employee is entitled to receive a penalty in the amount of one day's wages for every day that their employer willfully denies this final payment of wages, up to a maximum of 30 days.

198. The Defendants did not pay Plaintiffs or similarly situated class members all their wages owed, including payment for all hours worked, minimum wages, overtime premium pay, and their contractually promised wages.

199. Plaintiffs and others similarly situated did not receive these wages in their last paycheck upon the seasonal end of their employment, nor upon their involuntary termination, with the Defendants.

200. By failing to compensate Plaintiffs, and similarly situated members of the Plaintiff Class who have quit, been discharged, or whose employment has seasonally ended during the relevant statutory period as required by the California Labor Code and the applicable wage order, Defendants have willfully failed to make timely payment of the full wages due to their former employees in violation of Cal. Labor Code § 201.

201. Pursuant to Cal. Labor Code § 203, Plaintiffs and members of the Plaintiff Class who have quit, been discharged, or whose employment has seasonally ended are entitled to waiting time penalties of up to 30 days' wages per person.

## **NINTH CLAIM FOR RELIEF**

Civil Penalties under the Private Attorneys' General Act

(Cal. Labor Code § 2698)

202. This Count asserts a violation of the California Private Attorneys' General Act ("PAGA").

203. Plaintiffs Rubio-Leon and Rocha-Rivera bring this Ninth Claim against Defendants pursuant to California Labor Code § 2698 *et seq.* to enforce California's Private Attorney Generals' Act. This count is brought as a representative PAGA claim.

204. PAGA permits individuals to recover civil penalties on behalf of themselves and other current or former employees for violations of California's Labor Code pursuant to § 2699(a).

205. On March 30, 2024, Plaintiffs gave written notice of the facts and theories regarding Defendants' violations of the various provisions of the California Labor Code protecting truck drivers, like Plaintiffs, as alleged in this complaint to the LWDA via online filing and to Defendants by certified mail.

206. An amended PAGA notice, which included details of the alleged retaliatory actions, was provided to the LWDA via online filing and to the Defendants by certified mail on May 3, 2024.

207. Plaintiffs are aggrieved employees as defined in California Labor Code section 2699(a). They bring this cause of action on behalf themselves, the State of California, and other former aggrieved truck drivers employed by Defendants as hourly commercial drivers, excluding bus drivers, who operated over-the-road highway vehicles in excess of 26,000 gross vehicle weight in California with respect to the violations Plaintiffs and aggrieved employees experienced as alleged in this complaint.

208. Plaintiffs have complied with the pre-filing requirements set forth in California Labor Code § 2699.3 by giving written notice to the LWDA and the employer(s)—by certified mail with return receipt requested—of the alleged California Labor Code and Wage Order violations and the specific facts and theories in support thereof.

209. As described in this complaint and in Plaintiffs' LWDA notice, Plaintiffs allege that Defendants violated the following provisions of the California Labor Code with respect to their employment of Plaintiffs and similarly aggrieved truck drivers: sections 1197 and 1197.1 for failing to compensate for all hours worked; sections 204, 1194, 1194.2 and 1198 for failure to pay overtime wages; sections 226.7 for failing to comply with the meal period and rest break requirements, and failing to pay premium wages in lieu of unprovided meal period and/or rest breaks; sections 226 and 226.3 for providing inaccurate wage statements; section 2800 and 2802 for failure to reimburse business expenses; and sections 201, 202 and 203 for failing to timely pay all wages owed to former employees.

210. As a consequence of the actions described in this Complaint, Defendants have violated the rights of Plaintiffs and the rights of others employed by Defendants as hourly commercial drivers, excluding bus drivers, who operated over-the-road highway vehicles in excess of 26,000 gross vehicle weight in California. Defendants are therefore liable for PAGA penalties for violations of the California Labor Code as described in this Complaint.

211. Defendants are liable for civil penalties for their failure to compensate for all hours worked, pursuant to California Labor Code §§ 1197 and 1197.1.

212. Defendants are liable for civil penalties for violating the meal period and rest break requirements of California Labor Code § 226.7.

213. Defendants are liable for civil penalties for failing to provide accurate wage statements pursuant to California Labor Code §§ 226 and 226.3.

214. PAGA permits Plaintiffs to recover civil penalties on behalf of themselves, the State of California and other current or former aggrieved employees, plus attorneys' fees, interest, and costs for violations of the Labor Code. Cal. Labor Code §§ 2699 *et seq.*

215. As such, Plaintiffs seek civil penalties, interest thereon, and awards of reasonable costs and attorney's fees on behalf of themselves, the State of California and others employed by Defendants as hourly commercial drivers for the applicable PAGA statutory period from the present going back to December 10, 2022.

## **<u>TENTH CLAIM FOR RELIEF</u>**

Retaliation Under California Law

(Cal. Labor Code § 98.6)

216. Plaintiffs Rubio-Leon, Rocha-Rivera and Jimenez-Martinez assert this count for Defendants' retaliation in violation of California Labor Code § 98.6.

217. During the 2023 season, Plaintiffs asserted their rights to be lawfully paid for time worked.

218. Defendants held a meeting with all H-2A truck drivers in which they instructed that drivers were causing problems and that there would be no work in the coming season because of the problems.

219. Defendants also held a private meeting with Plaintiffs Rubio-Leon, Rocha-Rivera, and Martinez-Jimenez in which they asked them to release their claims and informed them that there would be no further work for them if they refused.

220. The private meeting with Plaintiffs occurred at the office of SMD Logistics in Salinas California on October 27, 2023.

221. This meeting was within 90 days of those Plaintiffs' protected activity.

222. At the meeting on October 27, 2023, Plaintiffs Rubio-Leon, Rocha-Rivera, and Martinez-Jimenez were threatened with adverse actions including termination, replacement with southern Mexicans, and the loss of future employment.

223. Defendants in fact did deny Plaintiffs Rubio-Leon, Rocha-Rivera, and Martinez-Jimenez and others similarly situated future employment by refusing to list them for visas or hire them at Defendants location in Mexico and subsequently refusing to rehire them for U.S. employment.

224. Defendants actions were in violation of California Labor Code § 98.6.

225. Plaintiffs seek civil money penalties and lost wages and benefits for Defendants' retaliatory conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and relief as follows:

a) That the Court assume supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367;

b) That the Court certify the class and subclasses defined herein;

c) For an order appointing Plaintiffs as class representatives, and Plaintiffs' Counsel as class counsel;

d) Under Count One:

1. Declare that Defendants have willfully violated the FLSA as specified in Count I above:

2. Declare this action to be a maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216 and allow employees to opt into this action;

3. Grant judgment against Defendants Fresh Harvest, Farm Labor Association for

Growers, and SMD Logistics, jointly and severally, and in favor of each plaintiff and opt-in plaintiff in the amount of their respective unpaid wages plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b); and

4. Award Plaintiffs their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

e) Under Count Two:

1. Grant judgment against Defendants, jointly and severally during their respective years as employers, and in favor of Plaintiffs and the Class, for violations of California Labor Code §§ 1182.11-1182.13, and 1197, such that:

i. Plaintiffs and the Class receive the full unpaid balance of their wages owed, as well as liquidated damages in the amount of their wage loss, during the Class Period for the violation of their right to minimum wages pursuant to California Labor Code §§ 1194, 1194.2 and 1197.

ii. Plaintiffs receive appropriate injunctive relief, including an order requiring Defendants to comply with California's minimum wage requirements.

2. Award Plaintiffs and the Class attorneys' fees and costs pursuant to California Labor Code § 1194(a).

f) Under Count Three:

1. Grant judgment against Defendants, jointly and severally, and in favor of Plaintiff and the Class, for violations of California Labor Code § 1194 such that:

i. Plaintiffs and the Class receive the full unpaid balance of their premium wages owed during the Class Period.

ii. Plaintiffs receive appropriate injunctive relief, including an order requiring Defendants to comply with California's overtime requirements.

2. Award Plaintiffs and the Class attorneys' fees and costs pursuant to California Labor Code § 1194(a).

g) Under Count Four:

1. Grant judgment against Defendants Fresh Harvest, SMD Logistics and Farm Labor Association, jointly and severally, and in favor of Plaintiff and the California sub-class, for

violations of California Labor Code § 2802 and the applicable employment contracts such that:

i) Find that Plaintiffs incurred expenses due to their obedience to the directions of Defendants;

ii) Award Plaintiffs and the California sub-class the full amount of such expenditures during the Class Period, including the costs Plaintiffs incurred in Mexico at Defendants' direction;

iii) Award Plaintiffs and the California sub-class interest from the date the employee incurred the expenditure or loss; and

iv) Award Plaintiffs' their reasonable costs and attorneys' fees pursuant to Cal Labor Code § 2802(c);

h) Under Count Five:

1. Grant judgment against Defendants, jointly and severally, and in favor of Plaintiffs and the Class, for breach of contract such that:

i) Find Defendants breached the contracts as detailed in Plaintiffs' complaint;

ii) Find that Defendants failed to pay H-2A worker drivers the prevailing wage for truck driving, nor wages equal to those paid domestic drivers;

iii) Order that Plaintiffs and the Class receive the wages they were entitled to under the applicable contracts for each hour they worked.

i) Under Count Six:

1. Grant judgment against Defendants Fresh Harvest, SMD Logistics, and Farm Labor Association, jointly and severally, and in favor of Plaintiffs Rubio-Leon, Rocha-Rivera and Martinez-Jimenez, and the Class, for violation of California Labor Code § 226 such that:

i) Plaintiffs and the Class receive the greater of their actual damages or $50 for the initial pay period in which a wage statement violation occurred, the greater of actual damages or $100 for each wage statement violation in a subsequent pay period, up to the greater of actual damages or an aggregate $4,000 penalty.

ii) Plaintiffs receive appropriate injunctive relief, including an order requiring

Defendants to comply with California's wage statement requirements; and

2. Award Plaintiffs attorneys' fees and costs pursuant to California Labor Code §§ 226(e) and 226(h).

j) Under Count Seven:

1. Grant judgment against Defendants, jointly and severally, and in favor of Plaintiff and the Class, for violations of California Business & Professions Code §§ 17200 *et seq.* such that:

i) Plaintiffs and the Class receive all wages that they were unlawfully deprived of due to Defendants' unfair business practices.

ii) Plaintiffs and the Class recover wages as equitable relief for a period that extends the statute of limitations or recovery period for wages to four (4) years.

2. For declaratory judgment that the actions, conduct, and practices of Defendants complained of herein constitute unfair business practices under California Business & Professions Code §§ 17200 *et seq.*

3. For an injunction and order permanently restraining and enjoining Defendants from engaging in and continuing the unlawful and/or unfair policies and practices complained of herein.

4. Award attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5, as the Plaintiff is enforcing an important right affecting the public interest.

k) Under Count Eight:

1. Grant judgement against Defendants, jointly and severally, and in favor of Plaintiffs and the Plaintiff Class for failure to pay all outstanding wages due upon separation from employment in violation of Cal. Labor Code § 203; and
2. Award Plaintiffs and the Plaintiff Class the amount of one day's wages, up to a maximum of 30 day's wages, per employee who was terminated or left their employment with Defendants without timely receiving all outstanding wages due to them on each such termination or separation of employment; and

l) Under Count Nine, grant judgment against Defendants, jointly and severally and in favor of

Plaintiffs Rubio-Leon and Rocha-Rivera and the similarly aggrieved truck drivers, for violations of California Labor Code §§ 2699 *et seq.* such that:

i) Plaintiffs and the similarly situated receive civil penalties payable to the State of California, Plaintiffs, and other aggrieved truck drivers employed by Defendants as hourly commercial drivers in California for each violation of the California Labor Code as described in this Complaint, including, penalties under California Labor Code §§ 201-203, 204, 226, 226.3, 1194, 1194.2, 1197, 1197.1, 1198, 2699(f) and 2698 *et seq.*

1. Find that Plaintiffs are aggrieved employees within the meaning of California Labor Code §§ 2699 *et seq.*;

2. Award Plaintiffs attorneys' fees and costs pursuant to California Labor Code § 2699(g).

m) Under Count Ten, grant judgment against Defendants, jointly and severally and in favor of Plaintiffs Rubio-Leon, Rocha-Rivera, and Martinez-Jimenez for violation of California Labor Code § 98.6:

i. Award Plaintiffs liquidated damages in the amount of $10,000 each,

ii. Award Plaintiffs their lost wages and benefits as shall be proven,

iii. Award such other relief as the Court deems just.

n) Awarding Plaintiffs and the Class pre-judgment interest of ten percent (10%) on the unpaid wages and compensation owed to Plaintiff and the Class under California Civil Code §§ 3287(a) and 3289(b), California Labor Code §§ 218.6, 1194 and 2802(b), and/or any other applicable provision providing for interest;

o) Granting declaratory relief as appropriate;

p) Casting all costs upon Defendants; and

q) Awarding any such other and further relief, at law or in equity, as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

226. Plaintiffs demands trial by jury on claims so triable.

DATED: July 26, 2024

By: /s/ Dawson Morton

DAWSON MORTON, ATTORNEY
1808 Sixth Street
Berkeley, CA 94710
Ph: 404-590-1295
dawson@dawsonmorton.com

Attorney for Plaintiffs

# EXHIBIT

---------- Forwarded message ---------
From: **Jennifer Schermerhorn** jennifer@sfcos.com
Date: Mon, Sep 9, 2024, 7:16 PM
Subject: Rubio-Leon v. FLAG
To: Dawson Morton dawson@dawsonmorton.com

Hi Dawson, please find attached stipulation.

Thank you for your consideration.

All the best,

Dawson Morton
Cal. S N 320 11
James noepp
S.C. ar 102 5 , *Admitted Pro Hac Vice*
W O C S O D WSON MO ON
1 0 Sixth St.
erkeley, C 94 10
Ph: 404-590-1295
dawson@dawsonmorton.com
im@dawsonmorton.com

Jennifer Schermerhorn S N 2250 0
Scaroni amily of Companies
101 . Main St.
Heber, C 92249
Jennifer@sfcos.com

ttorneys for D ND N S
SH H S , NC., M O SSOC ON
OW S., NC. and SMD O S CS, NC.
O N S O P N S ND H P OPOS D C SS

N H N D S S D S C CO
O H NO H N D S C O C O N
S N JOS D S ON

N ON O O- ON, et al., and others similarly situated,

Plaintiffs,

vs.

SH H S , NC., M O SSOC ON O OW S, NC., and SMD O S CS, NC.,

Defendants.

C C . NO.: 5:24-cv-33 5-

**JOINT STIPULATION TO continue pending discovery DEADLINE TO EXCHANGE INITIAL DISCLOSURES**

23 C SS

O H CO , ND P S ND H O N S O CO D:

Case 5:24-cv-03073-EKL Document 22 Filed 09/24/24 Page 4 of 6

Pursuant to ocal ule -2, Plaintiffs and Defendants submit this Joint Stipulation to continue the deadline for exchanging nitial Disclosures by from September 12, 2024, to October 1, 2024.

WH S, the Court had previously ordered September 12, 2024 as the deadline for exchanging initial disclosures pursuant to the parties oint stipulation, C 34.

WH S, this is the second extension re uested by the parties.

WH S, no Case Management Conference or hearing dates have been set, the parties have not held their ule 2 f conference, and the parties have stipulated to an additional extension of time to prepare and exchange initial disclosures for the reasons listed below.

WH S, on September , 2024, Defendants assistant general counsel withdrew from this case and is no longer employed by Defendants.

WH S, Defendants n House eneral Counsel, Jennifer Schermerhorn, is now Defendants sole representative, C 3 .

WH S, Ms. Schermerhorn is not fully recovered from recent surgery and is unable to complete initial disclosures by the September 12, 2024 deadline.

WH S, Defendants are in the process of associating outside counsel, inch, hornton, aird, as defense counsel in this action.

WH S, Defendants met and conferred with plaintiffs counsel, Dawson Morton, regarding the above issues, the possibility of individual arbitration may be re uired, and that the class and P representative action may be waived by plaintiffs.

WH S considering the above issues, and without waiving defenses to arbitration and waiver of class and P representative actions, the parties stipulate that the September 12, 2024 deadline for exchanging nitial Disclosures should be further extended approximately two weeks to October 1, 2024.

H O H P S H S P ND , through their respective

counsel, that the September 12, 2024 initial disclosure deadline is extended to October 1, 2024.

S SO S P D, H O H CO NS O CO D.

Dated: September_06, 2024

By: ______________________________
Dawson Morton

Attorneys for Plaintiffs

Dated: September 06, 2024

SCARONI FAMILY OF COMPANIES

By: ______________________________
Jennifer Schermerhorn

Attorneys for Defendants

Case 5:24-cv-03073-EKL Document 24-10 Filed 09/24/24 Page 6 of 6

**[PROPOSED] ORDER**

Having read and considered the parties Stipulation Continue Pending Discovery Deadline o xchange nitial Disclosures, S O D D that the nitial Disclosure Deadline is extended from September 12, 2024 to October 1, 2024.

DATED: ______________________ By: ______________________________
HONORABLE JUDGE EUMI K. LEE
JUDGE, U.S. DISTRICT COURT

# EXHIBIT

Case 5:24-cv-03073-EKL Document 24-21 Filed 09/24/24 Page 6 of 7

---------- Forwarded message ---------
From: **on Mor on** dawson@dawsonmorton.com
Date: Tue, Sep 10, 2024 at 10:47 AM
Subject: Re: Rubio-Leon v. FLAG
To: Jennifer Schermerhorn jennifer@sfcos.com

Hi Jennifer:

I didn t know you d recently had surgery I m happy to agree to additional time. But this draft is full of representations that aren t true. Who is writing these things

We already had a 26f conference, I don t agree that individual arbitration may be required; I find the inclusion of these misstatements troubling.

I ve edited your earlier draft that did not include the above representations.

It proposes 15 days until Sept 27.

If this draft is agreeable you can file with my permission.

Dawson Morton
dawson@dawsonmorton.com
404-590-1295

On Sep 9, 2024, at 7:16 PM, Jennifer Schermerhorn jennifer@sfcos.com wrote:

Case 5:24-cv-03073-EKL Document 24-11 Filed 09/24/24 Page 3 of 7

Hi Dawson, please find attached stipulation.

Thank you for your consideration.

All the best,
DRAFT - CLEAN - JT Stip EOT on Initial Disclosures (MCN).docx

Dawson Morton
Cal. SBN 320811
James Knoepp
S.C. Bar 102757, *Admitted Pro Hac Vice*
LAW OFFICES OF DAWSON MORTON
1808 Sixth St.
Berkeley, CA 94710
Ph: 404-590-1295
dawson@dawsonmorton.com
jim@dawsonmorton.com

Jennifer Schermerhorn (SBN 225070)
Scaroni Family of Companies
101 E. Main St.
Heber, CA 92249
Jennifer@sfcos.com

Attorneys for DEFENDANTS
FRESH HARVEST, INC., FARM LABOR ASSOCIATION
GROWERS., INC. and SMD LOGISTICS, INC.

ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ANTONIO RUBIO-LEON, et al., and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., and SMD LOGISTICS, INC.,<br><br>Defendants. | CIVIL ACT. NO.: 5:24-cv-3375-ELK<br><br>**J S**<br>**S**<br>**S S S**<br><br>RULE 23 CLASS<br><br>JURY TRIAL DEMANDED |

TO THE COURT, AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Local Rule 6-2, Plaintiffs and Defendants submit this Joint Stipulation to continue the pending discovery deadline for exchanging Initial Disclosures by 15 days from September 12, 2024, to September 27, 2024.

WHEREAS, this is the second extension requested by the parties;

WHEREAS, the Defendants counsel needs more time as they just filed a notice of change in counsel because the assistant general counsel withdrew representation and is no longer employed by Defendants and the sole representative is their In House General Counsel, ECF 37.

WHEREAS the parties met and conferred with email exchanges on September 06 and September 10, 2024;

WHEREAS, the Court had previously ordered pursuant to the parties joint stipulation September 12, 2024 as the date for exchanging initial disclosures, ECF 34;

WHEREAS, no Case Management Conference or hearing dates have been set and the parties desire a bit of additional time to prepare and exchange initial disclosures;

THE PARTIES HEREBY STIPULATE AND AGREE, through their respective counsel, that the initial disclosure date set by Initial Case Management Order be amended and the parties agree that they will exchange initial disclosures on or before September 27, 2024.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: September 10, 2024

By:______________________________
Dawson Morton
Attorneys for Plaintiffs

Dated: September 10, 2024

SCARONI FAMILY OF COMPANIES

By:______________________________
Jennifer Schermerhorn
Attorneys for Defendants

Case 5:24-cv-03373-EKL Document 74-1 Filed 09/24/24 Page 7 of 68

**S**

PURSUANT TO STIPULATION, IT IS SO ORDERED that Initial Disclosure Deadline previously set by stipulation is extended to September 27, 2024.

DATED: ____________________ By: ____________________

HONORABLE JUDGE EUMI K. LEE
JUDGE, U.S. DISTRICT COURT

# EXHIBIT

Case 5:24-cv-03033-EKL Document 72-12 Filed 09/24/24 Page 67 of 68

**From:** Jennifer Schermerhorn
**To:** Dawson Morton
**Cc:** Jim Knoepp; Chad T. Wishchuk; Marlene C. Nowlin; Ada Meraz
**Subject:** Re: oint status report
**Date:** Monday, September 16, 2024 12:2 :4 PM

---

Hi Dawson,

hank you following up. My recuperation from my surgery has slowed me down more than had expected. am removing Juan as he is no longer with us. am adding Chad and Marlene to our communication as they both ust associated in as counsel because am unable to manage all of the responsibilities and duties of my role as well as this litigation matter. Please include them in going forward. understand that yes, we should be able to get this on file today as Marlene and Chad are working on this as we speak because my attentions and priorities are focused elsewhere for most of today.

will let them coordinate the on this.

ll the best,

***Jennifer M. Schermerhorn, Esq.***
P of Human esources eneral Counsel
ennifer@sfcos.com
Mobile 1 0 909-1315
Work 1 0 592-225
This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system mana er. This messa e contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosin , copyin , distributin or takin any action in reliance on the contents of this information is strictly prohibited.

On Mon, Sep 1 , 2024 at 12:02 PM Dawson Morton <dawson@dawsonmorton.com> wrote:

> Hi Jennifer
>
> wanted to make sure you had seen this as its due to be filed today.
>
> et me know if its a deadline you can t make as we should then submit a stipulation.
>
> Dawson Morton
> dawson@dawsonmorton.com
> 404-590-1295
>
> On Sep 13, 2024, at 5:4 PM, Dawson Morton <dawson@dawsonmorton.com> wrote:
>
> ttached is Plaintiffs draft of the oint status report. believe this needs to be filed on Monday. Please let me know any modification or insertions you have on Monday morning.
>
> hanks.

Case 25-24-03075-EKL Document 42-8 Filed 09/24/24 Page 3 of 3

<2 f report and CMC Statement.docx>

Dawson Morton
dawson@dawsonmorton.com
404-590-1295