Dawson Morton
Cal. SBN 320811
James Knoepp
S.C. Bar 102757, *Admitted Pro Hac Vice*
LAW OFFICES OF DAWSON MORTON
1808 Sixth St.
Berkeley, CA 94710
Ph: 404-590-1295
dawson@dawsonmorton.com
jim@dawsonmorton.com

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ANTONIO RUBIO-LEON, et al., and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., and SMD LOGISTICS, INC.,<br><br>Defendants. | CIVIL ACT. NO.: 5:24-cv-3375-EKL<br><br>PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO LIFT ARBITRATION STAY OR, ALTERNATIVELY, ORDER ARBITRATIONS TO PROCEED BEFORE JAMS ADR |

Plaintiffs moved to lift the stay because Defendants refused to participate in arbitrations filed with JAMS. That conduct is inconsistent with their demand for arbitration and this case should now proceed in Court. ECF 66-1 at 4-5. Alternatively, Plaintiffs have moved the Court to order Defendants to participate in the JAMS arbitrations. Defendants' opposition wrongly accuses Plaintiffs' counsel of all manner of misconduct but also confirms that Defendants refused to participate in the filed arbitrations. To excuse their conduct, Defendants incorrectly claim the arbitration agreements have an "arbitrator selection process" that Plaintiffs failed to follow. But the agreements—which were drafted by the Defendants—contain no such provisions related to Plaintiffs' claims. And for Plaintiff Gerardo Ledesma-Delgado, the agreement references a non-applicable Labor Management Relations Act-established process only available to members of labor unions. 29 U.S.C. § 171 (creating Federal Mediation and Conciliation Service to address "certain controversies which arise between parties to collective-bargaining agreements [and which] may be avoided or minimized by making available full and adequate governmental facilities"). For fourteen of the eighteen filed arbitrations, Defendants refused to even produce the arbitration agreements or respond to requests that they be provided—resulting in all of those arbitrations also being closed. Defendants argue that the filed arbitrations were "unauthorized," claim that the Court's stay order barred class members from seeking to arbitrate their claims, claim that the FLSA opt-in Plaintiffs' consent forms were not the "right type" of consent form, and that there was a (non-existent) provision in the agreements that required joint selection of an arbitrator and somehow barred filing with JAMS, the largest arbitration service in the country and one whose rules are specifically mentioned in the agreements. ECF 72 at 6-7.[1] Defendants' actions and their opposition are inconsistent with a desire to engage in arbitration and support lifting the stay and ordering the claims here to proceed in Court. *See Hill v. Xerox Bus. Servs.,* 59 F.4th 457, 460 (9th Cir. 2023).

## I. Defendants' Opposition Brief Greatly Exceeded the Limits Set by this Court.

As an initial matter, Defendants' opposition—which contains 17 pages of argument—should be rejected as exceeding this Court's 10-page limit for opposition briefs. *See Standing Order for*

[1] When citing to Defendants' brief the Plaintiffs have cited to the ECF page number in the header of the document as opposed to the page number in the footer, which do not match.

*Civil Cases Before Judge Eumi K. Lee* at VIII.B. Alternatively, any argument after page 10 (ECF 72 at 15) should be ignored as filed in violation of this Court's standing order. It is simply not possible in a 5-page reply for Plaintiffs to respond to all of the arguments and false accusations contained in a brief that is almost twice the limits set by the Court.

**II. Arbitration Has Been Had and This Court Should Lift the Stay.**

There is no dispute that after seeking an order compelling arbitration, Defendants refused to participate in any of the 18 arbitrations filed by the Plaintiffs, FLSA opt-in Plaintiffs, and putative Rule 23 class members. In fact, as Defendants' exhibits show, they succeeded in having each of the arbitrations closed by refusing to participate or by refusing to provide copies of arbitration agreements despite repeated requests from Plaintiffs' counsel and JAMS to do so. ECF 72-18 (JAMS correspondence closing Plaintiffs' arbitrations); ECF 72-15 (JAMS correspondence requesting agreements for FLSA opt-ins and class members); ECF 72-19 (JAMS correspondence closing arbitrations). Defendants argue this is not a waiver of their right to arbitration because Plaintiffs' JAMS arbitrations did not "comply with the parties' arbitrator selection provisions," ECF 72 at 7, and that "[t]he plain terms of the Arbitration Agreement [sic], which plaintiffs repeatedly violated, required meet and confer discussions to reach mutual agreement to an arbitrator." ECF 72 at 14. Defendants are simply wrong. The arbitration agreements for three of the four named Plaintiffs contain no "plain terms" related to "arbitrator selection provisions" applicable to Plaintiffs' claims. ECF 45-17, 45-19, 45-21.[2] There is also no mention in any of the agreements of an obligation to "meet and confer" to "reach mutual agreement," including no use of the terms "meet and confer" or "mutual agreement." Defendants quote what they claim is an arbitrator selection provision but fail to disclose the entire paragraph of the agreement, which relates only to

[2] Defendants re-filed the arbitration agreements as part of their opposition at ECF 72-6, but because the agreements were previously filed as ECF 45-15, 45-17, 45-19, and 45-21 the duplicate ECF stamp makes it difficult to read the docket entry on the new filings. Plaintiffs therefore cite to the original filing of the agreements at ECF 45.

claims for injunctive relief filed with the Federal Mediation and Conciliation Service ("FMCS"). ECF 72 at 9. That paragraph, in full, states:

> In the event either party contends that the other party's actions are **causing injury for which monetary damages would be inadequate, it may seek an injunctive order** by submitting to the National Office of the Federal Mediation and Conciliation Service in San Francisco [sic] a declaration under penalty of perjury setting forth the facts giving rise to its claim. Said declaration shall be served upon the other party personally or by Express Mail, Federal Express, or other comparable service, with return receipt requested. If the parties are not able to agree upon a neutral arbitrator within 10 days, the National Office of the Federal Mediation and Conciliation Service is authorized to select a neutral arbitrator who shall hold a hearing within 10 days of his/her selection.

ECF 45-15, 45-17, 45-19, 45-21 (emphasis added). But the Plaintiffs and other workers who filed arbitrations sought monetary damages and did not seek injunctive relief with the FMCS. While this paragraph implies that the parties should agree on an arbitrator within 10 days of an FMCS filing for injunctive relief it has no applicability here to arbitrations seeking monetary damages that were *not* filed with the FMCS. Nor could Plaintiffs have requested arbitrators from the FMCS as its services concern collective bargaining, not wage disputes. 29 C.F.R. § 1403.2(a) (FMCS role is "facilitate . . . the settlement of labor-management disputes through collective bargaining"). An inapplicable injunctive provision simply does not create a "meet and confer" requirement or any type of "arbitrator selection process."

The arbitration agreement of Plaintiff Gerardo Ledesma-Delgado contains an additional paragraph that does not appear in the other agreements. ECF 45-15. That paragraph purports to provide a selection process to choose an arbitrator by obtaining seven arbitrators from the FMCS with each side taking turns eliminating names. *Id.* But that is an illusory process because, as already stated, the FMCS only provides services for unionized workplaces subject to collective bargaining agreements and requires an aggrieved party seeking a list of arbitrators to enter their union affiliation. *See* Ex. 1 to Decl. of D. Morton (Request for Arbitration Panel) (requiring Section 2 "Union" be completed and signed "on behalf of" either the "Union" or the "Employer"); Ex. 2 to Morton Decl. (FMCS User Guide) (instructions requiring submitter complete the "Employer/Union

[] tab: [where they must] Select your affiliation . . . Union, and Union Representative"). This "selection process" is inapplicable as the parties are not arbitrating a collective bargaining dispute.

Defendants did not want to arbitrate with JAMS, presumably because they somehow view it as a "premium forum." ECF 72 at 6. If Defendants were adamant about not having workers file with JAMS then they should have drafted their arbitration agreements to remove JAMS as an arbitration service "from which the arbitrator is selected" and whose rules would apply, or specified in detail how "the arbitrator is selected." The agreements do not provide for a selection process like Defendants claim.[3] Defendants' claim that JAMS is "an undesignated forum," ECF 72 at 14, is also mistaken when its rules are directly referenced in all of the Plaintiffs' arbitration agreements. ECF 45-15, 45-17, 45-19, 45-21. *See, e.g., Freaner v. Valle*, 2011 U.S. Dist. LEXIS 132681, at *15 (S.D. Cal. Nov. 17, 2011) (ordering arbitration to proceed before AAA where "[t]he arbitration agreement does not provide any additional guidance as to how the parties will select an arbitrator; however, the AAA rules, which the parties agreed would govern the arbitration, provide a method for appointment"); *Operation Tech. v. Klg Systel*, 2012 LX 41767, at *7 (C.D. Cal. Aug. 7, 2012) (appointing AAA where "[t]he Agreement does not provide a method of naming or appointing an arbitrator" but referenced AAA rules). In sum, Plaintiffs and other workers properly filed arbitrations and Defendants refused to participate. That constitutes waiver and the arbitrations "have been had." *Freeman v. SmartPay Leasing*, 771 Fed. App'x 926, 935 (11th Cir. 2019).

**III. Defendants Remaining Arguments Do Not Explain the Failure to Participate in Arbitration and are Not Relevant to this Motion.**

Defendants have done nothing but delay the merits of Plaintiffs' and other workers' claims. Now, in responding to a motion to lift the stay or appoint JAMS, Defendants raise irrelevant challenges to the FLSA consent forms. That argument can be addressed after the Court decides

[3] Defendants claim that Plaintiffs did not provide names of arbitrators until August of 2026. But Plaintiffs filed 18 arbitrations with JAMS, which has a process to provide 5 names of arbitrators to the parties from which to select. JAMS Empl. R. 15 (*available at*: https://www.jamsadr.com/rules-employment). Plaintiffs informed Defendants of this process in urging them to reconsider their refusal to arbitrate. ECF No. 72-21 (email from D. Morton of Jan. 7, 2026).

whether the claims should proceed here or return to an arbitral forum where Defendants would not previously participate.[4] Although there are no statutory requirements for FLSA consent forms, Defendants claim that the "consent forms are fatally defective." ECF 72 at 21. Yet a simple statement of a desire to bring FLSA litigation is sufficient. *Montalvo v. Tower Life Bldg.*, 426 F.2d 1135, 1148 (5th Cir. 1970) (rejecting challenge to consent form and affirming adequacy of "a typewritten statement setting out the request that 'legal action be taken to secure my claim for me due me under the Fair Labor Standards Act'"). Defendants claim that a FLSA consent must mention "[a] case name, number, or caption [and that] [b]lank check forms like these cannot transform a stranger into a party[.]" ECF 72 at 22. The statute does not have such a requirement. 29 U.S.C.S. § 256(b) (requiring only "written consent [] filed in the court"). Courts in the Ninth Circuit have repeatedly rejected attempts to invalidate consent forms. *Houck v. Maricopa Cty.*, 2023 LX 199615, at *7 (D. Ariz. Oct. 25, 2023) (rejecting signature requirement); *Litvinova v. City & Cty. of S.F.*, 2019 LX 64261, at *6 (N.D. Cal. July 12, 2019) (rejecting date requirement); *Banks v. Pyramid Consulting, Inc.*, 2018 U.S. Dist. LEXIS 124718, at *14 (S.D. Cal. July 25, 2018) (accepting consent forms previously filed in different proceeding). Even Defendants own Ninth Circuit citations do not support their position that consent forms must contain certain litigation details. Defendants' citations note that "the district court in a collective action plays no such gatekeeping role." *Campbell v. City of L.A.*, 903 F.3d 1090, 1101 (9th Cir. 2018). Defendants also claim that FLSA opt-ins "have no standing" and are not part of this action. ECF 72 at 11. Defendants did not ask and the Court did not order that consent forms filed in this action be dismissed. ECF 45 at 2 and ECF 64. "After a plaintiff opts into the collective action, there is no distinction between the original and opt-in plaintiffs." *Reloj v. Gov't Emps. Ins. Co*., 2026 LX 75046, at *6 (S.D. Cal. Jan. 20, 2026) (citation omitted). Defendants' unsupported arguments are just further examples that they simply do not want to litigate these claims, as they demonstrated by refusing to participate in the arbitrations they moved to compel.

DATED: October 16, 2026

[4] Defendants also appear to argue that Plaintiffs' motion should be denied because they believe the FLSA opt-in Plaintiffs' claims are time barred. But, again, that is a merits issue that can be addressed after it is determined in which forum the claims may proceed.

*s/ D. Morton*

DAWSON MORTON
ATTORNEY FOR PLAINTIFFS