Dawson Morton
Cal. SBN 320811
James Knoepp
S.C. BAR 102757, *Admitted Pro Hac Vice*
LAW OFFICES OF DAWSON MORTON
1808 Sixth St.
Berkeley, CA 94710
Ph: 404-590-1295
dawson@dawsonmorton.com
jim@dawsonmorton.com

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ANTONIO RUBIO-LEON, et al., and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FRESH HARVEST, INC., FARM LABOR ASSOCIATION FOR GROWERS, INC., and SMD LOGISTICS, INC.,<br><br>Defendants. | CIVIL ACT. NO.: 5:24-cv-3375-PCP<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR AN ORDER APPOINTING THE HON. WILLIAM V. GALLO, RET. AS ARBITRATOR PURSUANT TO SECTION 5 OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 5<br><br>DECEMBER 9, 2026 AT 10:00 A.M. IN COURTROOM 7 |

Defendants, not happy with arbitrations filed before JAMS, ask the Court to intervene and pick an arbitrator that Defendants prefer. Neither the arbitration agreements at issue, nor § 5 of the Federal Arbitration Act permit the result that Defendants demand. The Court should decline Defendants' invitation to overlook their refusal to participate in filed arbitrations and should deny Defendants' motion to order arbitrations before retired Magistrate Judge William Gallo.

Plaintiffs, former heavy-tractor trailer truck drivers for Defendants, filed this lawsuit on June 5, 2024, seeking unpaid wages, contractual damages, and PAGA penalties. ECF 1. Defendants filed a Motion to Compel Arbitration on September 25, 2024. ECF 45. The Court granted Defendants' motion, stayed the Plaintiffs' litigation, and ordered the parties to participate in arbitration. ECF 64 at 15. Following this Court's order, Plaintiffs filed individual arbitrations before JAMS. The arbitration agreements do not identify a specific arbitrator, but state that: "[s]uch arbitration shall be conducted in accordance with the rules of the arbitration association or service from which the arbitrator is selected (e.g., American Arbitration Association, JAMS, ARS, etc.)[.]" ECF 45-15, 45-17, 45-19, 45-21.

Plaintiffs selected one of the arbitration services specifically referenced in Defendants' arbitration agreements. Because the arbitration agreement includes a class action waiver, Plaintiffs' counsel filed individual arbitrations for each of the four named plaintiffs and for 14 additional putative class members Plaintiffs' counsel represents, 7 of whom had previously filed FLSA consents to sue in this proceeding. ECF 9, 13, 14, 32. Defendants objected to the filing of the arbitrations with JAMS and also refused to provide the arbitration agreements for the 7 FLSA opt-in Plaintiffs and the other 7 putative class members. ECF 76-18, 76-19, 76-20. This resulted in the closing, at Defendants' insistence, of all 18 arbitrations filed by the Plaintiffs after the Court granted Defendants' motion to compel arbitration. ECF 76-21, 76-22.

**I. <u>Defendants' Conduct in Refusing to Arbitrate Waived Their Right to Arbitration.</u>**

Defendants' motion to appoint an arbitrator should be denied because their actions waived their right to arbitrate. "[W]hen an employer enters into an agreement requiring its employees to arbitrate, it must participate in the process or lose its right to arbitrate." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005). A "party waives its right to compel arbitration when (1) it has

knowledge of the right, and (2) it acts inconsistently[.]" *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023); *see also Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir.1990) (same); *Branch v. Svc-West, LLC*, 2026 LX 492276, at *21 (D.S.C. Aug. 25, 2026) (finding waiver where "a claimant timely invoked an expressly authorized arbitral forum, [and] that forum rejected the proceeding because of the arbitration proponent's noncompliance").[1]

Here, Defendants refusal to participate in the filed arbitrations is inconsistent with its prior demand that this case be stayed so the parties could arbitrate. ECF 45 at 2. Where a party has engaged in conduct that is inconsistent with a demand for arbitration, the right to continue to demand arbitration is waived. *Lee v. Citigroup Corp. Holdings, Inc*., 691 F. Supp. 3d 1157, 1162 (N.D. Cal. 2023) (finding party's late payment was "delayed action [which] serves as waiver of its right to arbitrate"); *Weber v. X Corp.*, 2024 U.S. Dist. LEXIS 24242, at *13 (E.D. Wash. Jan. 8, 2024) ("a party. . . waive[s] its right to participate . . . by simply refusing to arbitrate."); *Rapaport v. Soffer*, 2011 U.S. Dist. LEXIS 51257, at *4 (D. Nev. May 12, 2011). "A bedrock principle of California contract law is that '[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract[.]'" *Brown*, 430 F.3d at 1010. "Failure to pay arbitration fees . . . or to participate in arbitration can constitute breach [of the arbitration agreement]." *Belyea v. GreenSky, Inc*., 637 F. Supp. 3d 745, 760 (N.D. Cal. 2022). "Courts have consistently held that termination by the [arbitration provider] allows for the cases to return to district court." *Lee*, 691 F. Supp. 3d at 1160. Here, the agreement designated acceptable forums, including JAMS where Plaintiffs filed their arbitrations. When Defendants refused to participate, that closed the arbitrations and constituted a waiver of Defendants' arbitration rights. *Freeman v. SmartPay Leasing*, 771 Fed. App'x 926, 935 (11th Cir. 2019) (affirming lifting of stay because "district court did not err in concluding that the 'stay [was] due to be lifted, because the arbitration underlying the stay 'ha[d] been had in accordance with the terms of the agreement'").

Defendants' refusal to participate in the arbitrations they had sought was inconsistent with their demand for arbitration and the Court should find that Defendants have waived their right to

---

[1] The U.S. Supreme Court has ruled that prejudice is no longer a required factor for the finding of waiver. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022).

arbitration. Defendants claim that Plaintiffs "may not use their delays and breaches," ECF 76 at 11, but it is Defendants who refused to participate in 18 filed arbitrations, it is Defendants who refused to produce arbitration agreements for 14 of the arbitrations, and it is Defendants who have caused the arbitrations to be closed. "If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Accordingly, the "delays and breaches" were Defendants—conduct the Ninth Circuit has found adequate to find arbitration waived. *Brown*, 430 F.3d at 1013; *Sink v. Aden Enters.*, 352 F.3d 1197, 1201 (9th Cir. 2003) (rejecting "reading of the FAA [which] would also allow a party refusing to cooperate with arbitration to indefinitely postpone litigation."). Defendants seek to avoid the application of *Brown* by citing to a California Supreme Court case interpreting a California statutory arbitration payment rule. ECF 76 at 12; *see also Hohenshelt v. Superior Court*, 18 Cal. 5th 310, 323 (2025) (describing that statute in which the "[California] Legislature sought to deter . . . strategic nonpayment of arbitration fees"). The California Supreme Court cannot, and did not, reverse the Ninth Circuit as Defendants claim, and interpretation of California Code of Civil Procedure 1281.98 has no application here. Defendants' refusal to arbitrate was complete. They demanded the arbitrations be closed and refused to proceed. Defendants also attempt to distinguish cases like *Brown* based on their analysis of prejudice. ECF 76 at 12. However, as already noted, prejudice is not part of the waiver analysis. *Morgan*, 596 U.S. at 419 (rejecting "an arbitration-specific waiver rule demanding a showing of prejudice" and noting waiver can be established by "relinquishment or abandonment" without any prejudice).

Defendants' other arguments in their motion provide further evidence of actions inconsistent with their demand to arbitrate. Defendants ask the Court—not an arbitrator—to now determine that the 7 FLSA opt-in Plaintiffs who joined this action did not file "legally sufficient written consents" and that their claims are "time-barred," referring to them as "nonparties." ECF 76 at 13-14. These are arguments on the merits of the claims that could have been raised in the arbitral forum Defendants requested and during arbitrations the 7 FLSA opt-in Plaintiffs filed, but Defendants refused to participate. *See Winthrop v. Ariz. Rangers*, 2026 LX 561114, at *7 (D. Ariz. Sep. 14,

2026) ("[Q]uestions including the statute of limitations and exhaustion of prerequisites necessary to arbitration are questions of procedure—not arbitrability—normally reserved for the arbitrator."). Defendants did not ask, and the Court did not order, that consent forms filed in this action be dismissed. ECF 45 at 2 and ECF 64. "After a plaintiff opts into the collective action, there is no distinction between the original and opt-in plaintiffs." *Reloj v. Gov't Emps. Ins. Co.*, 2026 LX 75046, at *6 (S.D. Cal. Jan. 20, 2026) (citation omitted). Defendants claim that a FLSA consent must mention "[a] case name, number, or caption [and that] [b]lank check forms like these cannot transform a legal stranger into a party[.]" ECF 76 at 14. The statute does not have such a requirement. 29 U.S.C. § 256(b) (requiring only "written consent"). A simple statement of a desire to bring FLSA litigation is sufficient. *Montalvo v. Tower Life Bldg.*, 426 F.2d 1135, 1148 (5th Cir. 1970) (rejecting challenge to consent form and affirming adequacy of "a typewritten statement setting out the request that 'legal action be taken'"). Courts in the Ninth Circuit have repeatedly rejected attempts to invalidate consent forms. *Houck v. Maricopa Cty.*, 2023 LX 199615, at *7 (D. Ariz. Oct. 25, 2023) (rejecting signature requirement); *Litvinova v. City & Cty. of S.F.*, 2019 LX 64261, at *6 (N.D. Cal. July 12, 2019) (rejecting date requirement); *Banks v. Pyramid Consulting, Inc.*, 2018 U.S. Dist. LEXIS 124718, at *14 (S.D. Cal. July 25, 2018) (accepting consent forms from different proceeding). Of course, if this Court lifts the stay, then those issues can be briefed and resolved in this proceeding—which Defendants seem to desire by raising them in their motion. Defendants' unsupported arguments, and their desire to have the Court and not an arbitrator rid themselves of the FLSA opt-in Plaintiffs' claims, are just further examples of actions inconsistent with a demand to arbitrate.

Plaintiffs, Opt-ins, and others properly filed arbitrations. Defendants refused to participate. That constitutes waiver and the arbitrations "have been had." *Freeman*, 771 Fed. App'x at 935.

## II. Plaintiffs Properly Filed Arbitrations With JAMS.

Defendants' motion to appoint an arbitrator claims it was impermissible for Plaintiffs—in response to the Court's grant of Defendants' motion to order Plaintiffs to arbitration—to file those arbitrations with JAMS. Defendants' motion asks the Court to reward their conduct of engaging in a shell game in which no forum is proper to adjudicate Plaintiffs' employment dispute unless it is of Defendants' choosing. After moving to compel Plaintiffs to arbitration, Defendants then refused to participate in the 18 arbitrations because they did not like the arbitration association selected by Plaintiffs—JAMS—claiming now that it is a "premium forum." ECF 76 at 5; *see, e.g.*, *Dollison v. Antero Res. Corp.*, 2025 LX 334832, at *5 (W.D. Pa. Aug. 27, 2025) (rejecting § 5 petition where "Petitioners want to back out of the ongoing AAA proceedings and compel Respondents to arbitrate using some other, non-AAA procedure"). To excuse their conduct, and as the principal basis for asking the Court to now appoint their preferred arbitrator not mentioned in any of the agreements, Defendants incorrectly and repeatedly claim the arbitration agreements have an "arbitrator selection process," ECF 76 at 5, 7, 9, that required the parties to "meet and confer" to "mutually select an arbitrator as required by their Arbitration Agreement." ECF 76 at 2, 5, 7, 8. Defendants do not cite to or quote anything from the agreements that state what they contend, instead citing to arguments in emails sent by counsel as though it is evidence that such provisions existed in the agreements. ECF 76 at 7. But the agreements—which were drafted by the Defendants—contain no "arbitrator selection process" that Plaintiffs failed to follow and no "plain terms" that "required meet and confer discussions to reach mutual agreement to an arbitrator," as Defendants assert without citation to any record evidence. ECF 76 at 8; *see* ECF 45-15, 45-17, 45-19, and 45-21. Here, Defendants' arbitration agreements did not specify an arbitrator, nor did it establish any requirements for how an arbitrator must be selected. *See, e.g.*, ECF No. 45-19 at 2 (providing only that the arbitration shall be conducted in accordance with "the rules of the arbitration association or service" and listing "American Arbitration Association, JAMS, ARS"). Any vagueness in the selection process is due to Defendants' drafting of the agreement and should be interpreted against Defendants. Cal. Civ. Code § 1654 ("the language of a contract should be interpreted most strongly against the party who caused the uncertainty"). In fact, there is no mention in any of the agreements of the terms "meet

and confer" or "mutual agreement." ECF 45-15, 45-17, 45-19, and 45-21. Defendants quote what they claim is an arbitrator selection provision but their quotation selectively use ellipses to hide that the paragraph relates only to claims for injunctive relief filed with the Federal Mediation and Conciliation Service. ECF 76 at 6. That paragraph, in full, states:

> In the event either party contends that the other party's actions are **causing injury for which monetary damages would be inadequate, it may seek an injunctive order** by submitting to the National Office of the Federal Mediation and Conciliation Service in San Francisco [sic] a declaration under penalty of perjury setting forth the facts giving rise to its claim. Said declaration shall be served upon the other party personally or by Express Mail, Federal Express, or other comparable service, with return receipt requested. If the parties are not able to agree upon a neutral arbitrator within 10 days, the National Office of the Federal Mediation and Conciliation Service is authorized to select a neutral arbitrator who shall hold a hearing within 10 days of his/her selection.

ECF 45-15, 45-17, 45-19, 45-21 (emphasis added). But the Plaintiffs and other workers who filed arbitrations sought monetary damages, not injunctive relief with the FMCS. While this paragraph implies that the parties should agree on an arbitrator within 10 days of an FMCS filing for injunctive relief it has no applicability here to arbitrations seeking monetary damages *not* filed with the FMCS. Nor could Plaintiffs have requested arbitrators from the FMCS as its services concern collective bargaining, not wage disputes. 29 C.F.R. § 1403.2(a) (FMCS role is "facilitate . . . the settlement of labor-management disputes through collective bargaining"). An inapplicable injunctive provision simply does not create a "meet and confer" requirement or any type of "arbitrator selection process."

The agreement of Plaintiff Gerardo Ledesma-Delgado contains an additional paragraph that does not appear in the other agreements. ECF 45-15. That paragraph purports to provide a selection process to choose an arbitrator by obtaining seven arbitrators from the FMCS with each side taking turns eliminating names. *Id.* But this procedure is illusory because the FMCS only provides services for unionized workplaces subject to collective bargaining agreements and requires an aggrieved party seeking a list of arbitrators to enter their union affiliation. *See* Ex. 1 to Decl. of D. Morton (Request for Arbitration Panel) (requiring Section 2 "Union" be completed and signed "on behalf of" either the "Union" or the "Employer"); Ex. 2 to Morton Decl. (FMCS User Guide) (instructions requiring submitter complete the "Employer/Union [] tab: [where they must] Select your affiliation . . . Union, and Union Representative"). This "selection process" is inapplicable as the parties are not

arbitrating a collective bargaining dispute. *See* 29 U.S.C. § 171 (creating FMCS to address "certain controversies which arise between parties to collective-bargaining agreements").

The Court should not reward Defendants' refusal to participate in the arbitrations filed with JAMS. Defendants' conduct in refusing to participate and then demanding a different arbitrator be appointed is specific conduct that the FAA does not empower this Court to take. *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1362 (11th Cir. 2023) (affirming that "defendants weren't entitled to a substitute arbitrator under Section 5" where they caused dismissal of the previously filed arbitrations); *AVIC Int'l US, Inc. v. Tang Energy Grp., Ltd.*, 2015 U.S. Dist. LEXIS 13968, at *11 (N.D. Tex. Feb. 5, 2015) ("Under the FAA, courts have no authority to remove an arbitrator prior to an arbitration award being made."). Defendants contend there was a "selection process break[] down," ECF 76 at 8, but this is nothing of the sort. Defendants simply refused to arbitrate in what they call a "premium" forum, do not want to arbitrate claims for additional workers, and regret that the arbitration agreement referenced JAMS.[2] *Branch*, 2026 LX 492276, at *21 (finding waiver and no § 5 lapse where "a claimant timely invoked an expressly authorized arbitral forum, that forum rejected the proceeding because of the arbitration proponent's noncompliance"). If Defendants were adamant about not having workers file with JAMS then they should have drafted their arbitration agreements to remove JAMS as an arbitration service "from which the arbitrator is selected" and whose rules would apply, or specified in detail how "the arbitrator is selected." Defendants' assertion that JAMS is "an undesignated forum," ECF 76 at 9, 10, is also mistaken when its rules are directly referenced in all of the Plaintiffs' arbitration agreements.[3] ECF 45-15, 45-17, 45-19, 45-21. *See, e.g., Freaner v. Valle*, 2011 U.S. Dist. LEXIS 132681, at *15 (S.D. Cal. Nov. 17, 2011) (ordering arbitration to proceed before AAA where "[t]he

---

[2] JAMS is "[t]he world's largest private alternative dispute" provider. *Sanchez v. Food*, 2022 U.S. Dist. LEXIS 224234, at *2 (D. Nev. Dec. 13, 2022). It also has specific, well-established, rules for employment arbitrations. Ex. 4 to Morton Decl.

[3] Defendants claim that Plaintiffs did not provide names of arbitrators until August of 2026. But Plaintiffs filed 18 arbitrations with JAMS, which has a process to provide at least 5 names of arbitrators from which to select. JAMS Empl. R. 15 (Ex. 4). Plaintiffs informed Defendants of this process, urging them to reconsider their refusal to arbitrate. ECF 76-24 (D. Morton email 1/7/2026).

arbitration agreement does not provide any additional guidance as to how the parties will select an arbitrator; however, the AAA rules, which the parties agreed would govern the arbitration, provide a method for appointment"); *Operation Tech. v. Klg Systel*, 2012 LX 41767, at *7 (C.D. Cal. Aug. 7, 2012) (appointing AAA where "[t]he Agreement does not provide a method of naming or appointing an arbitrator" but referenced AAA rules).

Defendants claim that JAMS, mentioned in all of the available arbitration agreements, was "an undesignated forum" and would somehow preclude "selecting a qualified arbitrator," which Defendants claim caused a "complete lapse." ECF 76 at 9. Refusal to participate does not cause a lapse. *AVIC Int'l.*, 2015 U.S. Dist. LEXIS 13968, at *10 (noting 'lapse' does not "include a party's refusal to participate in arbitration."); *Branch*, 2026 LX 492276, at *18. It is Defendants complete refusal to participate in 18 filed arbitrations that led to the current situation. Defendants realized after compelling arbitration that they did not want to arbitrate, or at least not in the forum where arbitrations were filed. Other courts have compared this conduct to a shell game. "As in the old shell game, plaintiff's forum will always be under the other shell, unless the court calls a halt." *Heisman v. Wyndham Vac. Resorts, Inc.*, 2021 U.S. Dist. LEXIS 55369, at *8-9 (D.N.J. Mar. 22, 2021). Defendants should not be rewarded with a renewed arbitrations because they refused to participate in all arbitrations filed. *Id.* at *8 ("Courts have found that a party acted inconsistently with the right to arbitrate when that party refused to follow arbitration rules or otherwise participate in arbitration, thus preventing the arbitration from taking place.") (citations omitted).

Defendants claim that Plaintiffs' filing of arbitrations before a firm mentioned in the arbitration agreements created a "stalemate," relying on *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance*, 814 F.2d 1324 (9th Cir. 1987). ECF 76 at 9-10. Defendants comparison of this case to *Pacific Re* is inapplicable as this case, unlike *Pacific Re*, lacks an arbitrator selection provision. This is not a case where the parties agreed or stipulated to conferring about which arbitrator should preside. *Cf. Hugs & Kisses, Inc. v. Aguirre*, 220 F.3d 890, 892 (8th Cir. 2000) (quoting terms of an arbitration stipulation which provided: "The parties shall negotiate in a good faith effort to reach an agreement on (a) the arbitrator who shall preside over their arbitration[.]"). Here, Defendants withheld participation in the arbitrations they demanded and now ask the Court to allow different

arbitrations before Defendants' requested arbitrator rather than finding arbitration waived or ordering Defendants participation in existing, but closed, arbitrations. The Court should not reward Defendants conduct.

**III. <u>If any Arbitrator is Appointed the Parties Should be Returned to JAMS and the Already-Filed Arbitrations.</u>**

Although, Plaintiffs believe that Defendants have waived their right to arbitration and the arbitrations "have been had," if the Court were to appoint an arbitrator then the appointment of JAMS as the arbitration service is appropriate as they are listed as one of the possible arbitrators whose rules would apply. ECF 45-15, 45-17, 45-19, 45-21; *see Hollingsworth v. Sanofi-Aventis US*, 2025 LX 515271, at *12 (D. Or. Nov. 24, 2025) (appointing JAMS to arbitrate where "the Agreement mandates that the 'Parties shall follow the JAMS Employment Arbitration Rules'"). The previously filed arbitrations can be re-opened and, through JAMS's selection rules, the parties can select an arbitrator. *Therabody, Inc. v. Dominion Sourcing*, 2023 LX 154773, at *4-5 (C.D. Cal. Oct. 20, 2023) (ordering "the parties to submit their dispute to the American Arbitration Association . . . and shall appoint a single arbitrator pursuant to AAA's Arbitrator Select service").

Instead, Defendants ask for the appointment of retired Magistrate Judge Gallo. He is not employed at JAMS, AAA, or ADR—the three organizations mentioned in the agreements. ECF 45-15, 45-17, 45-19, 45-21. Judge Gallo is employed at Judicate West, an entity that is not mentioned in the agreements and that has no rules specific to employment arbitrations, unlike JAMS which has detailed rules governing employment arbitrations. *See* Ex. 4 to Morton Decl. (JAMS employment-specific arbitration rules); Ex. 5 to Morton Decl. (Judicate West providing only general "commercial arbitration" rules). There is no evidence that the appointment of Judge Gallo would be superior to the appointment of JAMS as the arbitration service, which would include using JAMS' arbitrator selection process that provides a list of at least 5 arbitrators from which the parties may choose for each arbitration. *See* Ex. 4 to Morton Decl., JAMS Empl. R. 15. Defendants aver that Judge Gallo has special expertise with respect to the agricultural industry and the issues in this case, but the only evidence provided is Defense counsel's own statements of their observations during a case in which Judge Gallo presided over a "mandatory settlement conference in prior litigation

involving the agricultural industry." ECF 76-1 ¶ 5. Defendants' counsel does not list the case, but presumably counsel is referring to a prior case involving one of the same Defendants as this case. *Olivo v. Fresh Harvest, Inc.*, 2019 U.S. Dist. LEXIS 205499, at *4 (S.D. Cal. Nov. 25, 2019) (noting that "the parties settled with the assistance of Magistrate Judge Gallo"). Judge Gallo's professional biography does not list any special expertise with the agricultural industry or with issues involving "agriculture, transportation, and wage and hour claims" as Defendants state. ECF 76 at 11; ECF 76-3. A LEXIS search for Judge Gallo and "farmwork!" returns only one match—the *Olivo v. Fresh Harvest* opinion cited above. Morton Decl. ¶ 7. Replacing "farmwork" with "agricult!" returns only one additional case involving the enforcement of an administrative subpoena by the Department of Labor with respect to an automobile accident resulting in "the death of a seasonal agricultural worker." *Acosta v. JY Harvesting, Inc,*, 2017 U.S. Dist. LEXIS 127442, at *2 (S.D. Cal. Aug. 10, 2017); Morton Decl. ¶ 7. JAMS is the largest ADR provider with a wide roster of qualified arbitrators. Ex. 6 to Morton Decl. While Plaintiffs maintain that arbitration has been waived and no arbitrator or arbitration service should be appointed, returning the parties to the already-filed JAMS arbitrations is more consistent with the parties' agreement than appointing Judge Gallo and Judicate West.

In fact, the appointment of Judge Gallo and Judicate West would be inconsistent with and contrary to provisions in the arbitration agreements, which provide that Defendants will pay the expenses associated with the arbitrations. ECF 45-15, 45-17, 45-19, 45-21 ("The Company shall pay the cost of the neutral arbitrator[.]"). Such provisions are required by California law with respect to employment arbitration agreements. *Armendariz v. Found. Health Psych. Servs., Inc.*, 24 Cal. 4th 83, 110-11 (2000). But Judicate West's fee schedule would require the Plaintiffs, FLSA opt-in Plaintiffs, and putative class members to *each* pay a non-refundable filing fee of $500, advance an additional $1,500 because there are three parties, and pay an additional $550 in case management fees. *See* Morton Decl. ¶ 9 and Ex. 7. By contrast, Plaintiffs were not required to pay any fees to file arbitrations with JAMS and JAMS limits any case management fees charged to employees to $400. *See* Morton Decl. ¶¶ 10-11 and Ex. 8.

DATED: November 12, 2026

*s/ D. Morton*
DAWSON MORTON
ATTORNEY FOR PLAINTIFFS